# EXHIBIT 1

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

VIFOR (INTERNATIONAL) AG and
AMERICAN REGENT, INC.,

        Plaintiffs,

    v.

APOTEX INC. and APOTEX CORP.,

        Defendants.

Civil Action No.

## COMPLAINT FOR PATENT INFRINGEMENT

Plaintiffs Vifor (International) AG ("Vifor") and American Regent, Inc. ("American Regent") (collectively, "Plaintiffs"), by their attorneys, through this Complaint, hereby allege as follows:

## NATURE OF THE ACTION

1.      This is an action for patent infringement arising under the patent laws of the United States, Title 35, United States Code, against Apotex Inc. and Apotex Corp. (collectively, "Apotex" or "Defendant").  This action relates to Abbreviated New Drug Application ("ANDA") No. 219993, filed by Apotex with the U.S. Food and Drug Administration ("FDA") for approval to market a generic version of Plaintiffs' Injectafer®, ferric carboxymaltose injection (100 mg Iron/2 mL; 750 mg Iron/15 mL; 1 g Iron /20 mL) ("Apotex's ANDA Products") prior to the expiration of United States Patent Nos. 7,612,109 ("the '109 patent"); 7,754,702 ("the '702 patent"); 8,895,612 ("the '612 patent"); 11,364,260 ("the '260 patent"); 11,433,091 ("the '091 patent"); and 11,478,502 ("the '502 patent").  The '109, '702, '612, '260, '091, and '502 patents are listed in the FDA's Approved Drug Products with Therapeutic Equivalence Evaluations

("Orange Book") for Injectafer®.

## THE PARTIES

2.        Plaintiff Vifor is a company organized and existing under the laws of Switzerland, having a principal place of business at Rechenstraβe 37, CH-9001, St. Gallen, Switzerland.

3.        Vifor is engaged in the business of creating, developing, and bringing to market revolutionary drug products, including treatments for iron deficiency anemia.

4.        Plaintiff American Regent is a corporation organized and existing under the laws of the State of New York, with a principal place of business at 5 Ramsey Road, Shirley, New York 11967.  American Regent was formerly known as "Luitpold Pharmaceuticals, Inc.," until January 2, 2019, when its New York Certificate of Incorporation was amended to change the name of the corporation to "American Regent, Inc."

5.        Vifor and American Regent developed Injectafer®.  American Regent licenses Injectafer® from Vifor, and American Regent markets, distributes, and sells injectable pharmaceutical drug products, including Injectafer®, in this judicial district and throughout the United States.

6.        On information and belief, Apotex Inc. is a corporation organized and existing under the laws of Canada, having its principal place of business at 150 Signet Drive, North York, Toronto, M9L 1T9.  On information and belief, Apotex Inc. develops, manufactures, and/or distributes generic drug products for marketing, sale, and/or use throughout the United States, including in this judicial district.

7.        On information and belief, Apotex Corp. is a corporation organized and existing under the laws of Delaware, having its principal place of business at 2400 North Commerce Parkway, Weston, Florida 33326.  On information and belief, Apotex Corp. is a subsidiary of Apotex Inc. and the U.S. Agent for the Apotex ANDA. On information and belief, Apotex Corp.

- 2 -

develops, manufactures, and/or distributes generic drug products for marketing, sale, and/or use throughout the United States, including in this judicial district.

## JURISDICTION AND VENUE

8.      This action arises under the patent laws of the United States, 35 U.S.C. §§ 100, e*t seq.*, and this Court has jurisdiction over the subject matter of this action under 28 U.S.C. §§ 1331, 1338(a), 2201, and 2202.

9.      On information and belief, this Court has personal jurisdiction over Apotex Inc., under the Delaware state long arm statute and consistent with due process of law because Apotex Inc. regularly does or solicits business in Delaware, engages in other persistent courses of conduct in Delaware, and/or derives substantial revenue from services or things used or consumed in Delaware, demonstrating that Apotex Inc. has systematic and continuous contacts with this judicial district.  On information and belief, Apotex Inc. purposefully has conducted and continues to conduct business in this judicial district by manufacturing, importing, marketing, and distributing pharmaceutical products, including generic drug products, either alone or through its parent corporation, subsidiaries, and/or affiliates, throughout the United States, including in this judicial district.  Further, Apotex plans to sell its ANDA product in the State of Delaware, which provides an independent basis for personal jurisdiction here.

10.      Apotex Inc. has previously availed itself of the legal protections of the State of Delaware by, among other things,  admitting to jurisdiction in this judicial district, and/or pursuing counterclaims it this judicial district.  *See, e.g.*, *Bristol-Myers Squibb Company et al v. Apotex Inc.,* C.A. No. 24-00818 (Del.) (Apotex Inc. did not contest personal jurisdiction and asserted counterclaims); *Eagle Pharmaceuticals, Inc. v. Apotex Inc. et al.*, C.A. No. 24-00064 (Del.); *Gilead Sciences, Inc. v. Apotex Inc. et al*., C.A. No. 23-00774 (Del.); *Mitsubishi Tanabe Pharma Corporation v. Apotex Inc. et al*., C.A. No. 24-00549 (Del.); *AstraZeneca AB v. Apotex*

- 3 -

*Inc. et al.*, C.A. No. 24-00551 (Del.); *Pfizer Inc. et al v. Apotex Inc. et al.,* C.A. No. 24-00621 (Del.).

11.     On information and belief, this Court has personal jurisdiction over Apotex Corp., under the Delaware state long arm statute and consistent with due process of law because Apotex Corp. regularly does or solicits business in Delaware, engages in other persistent courses of conduct in Delaware, and/or derives substantial revenue from services or things used or consumed in Delaware, demonstrating that Apotex Corp. has systematic and continuous contacts with this judicial district . On information and belief, Apotex Corp. purposefully has conducted and continues to conduct business in this judicial district by manufacturing, importing, marketing, and distributing pharmaceutical products, including generic drug products, either alone or through its parent corporation, subsidiaries, and/or affiliates, throughout the United States, including in this judicial district. Further, Apotex plans to sell its ANDA product in the State of Delaware, which provides an independent basis for personal jurisdiction here.

12.     Apotex Corp. has previously availed itself of the legal protections of the State of Delaware by, among other things, selecting the State of Delaware as the place of incorporation for Apotex Corp., admitting to jurisdiction in this judicial district, and/or pursuing counterclaims it this judicial district. *See, e.g.*, *Eagle Pharmaceuticals, Inc. v. Apotex Inc. et al.*, C.A. No. 24-64 (Del.) (Apotex Corp. did not contest personal jurisdiction and asserted counterclaims); *Gilead Sciences, Inc. v. Apotex Inc. et al.*, C.A. No. 23-774 (Del.); *Mitsubishi Tanabe Pharma Corporation v. Apotex Inc. et al.*, C.A. No. 24-549 (Del.); *AstraZeneca AB v. Apotex Inc. et al.*, C.A. No. 24-551 (Del.); *Pfizer Inc. et al v. Apotex Inc. et al.,* C.A. No. 24-621 (Del.).

13.     On information and belief, if ANDA No. 219993 is approved, Apotex's ANDA Products will be marketed, distributed, offered for sale, and/or sold in Delaware; prescribed by

- 4 -

physicians practicing in Delaware; administered by healthcare professionals located within Delaware; and/or used by patients in Delaware, all of which will have a substantial effect on Delaware.

14.    On information and belief, if ANDA No. 219993 is approved, Apotex will import, market, distribute, offer for sale, and/or sell Apotex's ANDA Products, alone or through its parent corporation, subsidiaries, and/or affiliates in the United States, including in Delaware, and will derive substantial revenue from the use or consumption of Apotex's ANDA Products in the State of Delaware.

15.    If ANDA No. 219993 is approved, Vifor and American Regent will be harmed by the marketing, distribution, offer for sale, and/or sale of Apotex's ANDA Products, including in Delaware.

16.    On information and belief, venue is proper in this judicial district under 28 U.S.C. §§ 1391 and 1400(b) at least because Apotex Corp. is incorporated in the State of Delaware and therefore "resides" in this judicial district, and Apotex Inc. and Apotex Corp. have committed acts of infringement in Delaware.  Apotex Inc. is a foreign company not residing in any United States judicial district and may be sued in any judicial district.  28 U.S.C. § 1391(c)(3). Moreover, Apotex Inc. and Apotex Corp. have litigated previous Hatch-Waxman patent infringement disputes in the District of Delaware.

17.    On information and belief, Apotex has committed acts of infringement under the meaning of 28 U.S.C. § 1400(b) by submitting ANDA No. 219993 to the FDA, by taking steps indicating its intent to market Apotex's ANDA Products in Delaware, and by the acts that it non-speculatively intends to take in Delaware if Apotex's ANDA receives final FDA approval.

18.    On information and belief, Apotex has taken steps in the United States, including

preparing ANDA No. 219993 and communicating with the FDA regarding ANDA No. 219993, that indicate its intent to market Apotex's ANDA Products. As set forth above, on information and belief, if ANDA No. 219993 is approved, Apotex intends to commit acts of patent infringement in Delaware, including marketing, distributing, offering for sale, and/or selling Apotex's ANDA Products.

### **PATENTS-IN-SUIT**

19.     The U.S. Patent and Trademark Office ("PTO") issued the '109 patent, entitled "Water-Soluble Iron-Carbohydrate Complexes, Production Thereof, and Medicaments Containing Said Complexes," on November 3, 2009 to inventors Peter Geisser, Erik Philipp, and Walter Richle. Vifor is the current assignee of the '109 patent and has the right to enforce it. The '109 patent had an expiration date of February 5, 2025, subject to an interim extension of patent term for a period of 1 year and any other further extensions. The '109 patent claims, *inter alia*, compositions and methods of making iron carbohydrate complexes. A true and correct copy of the '109 patent is attached hereto as **Exhibit A**.

20.     The PTO issued the '702 patent entitled "Methods and Compositions For Administration of Iron," on July 13, 2010 to inventors Mary Jane Helenek, Marc L. Tokars, and Richard P. Lawrence. At the time of its issuance, the '702 patent was assigned to Luitpold Pharmaceuticals, Inc., and on January 11, 2019, the assignment records for the '702 patent were amended to reflect that Luitpold Pharmaceuticals, Inc. had changed its name to "American Regent, Inc." The Change of Name of the assignee for the '702 patent is recorded by the PTO at Reel 048067, Frame 0271. American Regent is the current assignee of the '702 patent and has the right to enforce it. The '702 patent expires on February 15, 2028. The '702 patent claims, *inter alia*, methods of treating iron deficiency anemia by administering an iron carbohydrate complex. A true and correct copy of the '702 patent is attached hereto as **Exhibit B**.

ME1 52202371v.1

21.     The PTO issued the '612 patent entitled "Methods and Compositions For Administration of Iron," on November 25, 2014 to inventors Mary Jane Helenek, Marc L. Tokars, and Richard P. Lawrence.  At the time of its issuance, the '612 patent was assigned to Luitpold Pharmaceuticals, Inc., and on January 11, 2019, the assignment records for the '612 patent were amended to reflect that Luitpold Pharmaceuticals, Inc. had changed its name to "American Regent, Inc."  The Change of Name of the assignee for the '612 patent is recorded by the PTO at Reel 048067, Frame 0271.  American Regent is the current assignee of the '612 patent and has the right to enforce it.  The '612 patent expires on January 8, 2027.  The '612 patent claims, *inter alia*, methods of treating iron deficiency anemia by the administration of an iron carboxymaltose complex.  A true and correct copy of the '612 patent is attached hereto as **Exhibit C**.

22.     The PTO issued the '260 patent entitled "Methods and Compositions For Administration of Iron," on June 21, 2022 to inventors Mary Jane Helenek, Marc L. Tokars, and Richard P. Lawrence.  American Regent is the current assignee of the '260 patent and has the right to enforce it.  The '260 patent expires on January 8, 2027.  The '260 patent claims, *inter alia*, methods of treating iron deficiency or dysfunctional iron metabolism by the administration of an iron carboxymaltose complex.  A true and correct copy of the '260 patent is attached hereto as **Exhibit D**.

23.     The PTO issued the '091 patent entitled "Methods and Compositions For Administration of Iron," on September 6, 2022 to inventors Mary Jane Helenek, Marc L. Tokars, and Richard P. Lawrence.  American Regent is the current assignee of the '091 patent and has the right to enforce it.  The '091 patent expires on January 8, 2027.  The '091 patent claims, *inter alia*, methods of treating a disease, disorder, or condition characterized by iron deficiency or

- 7 -

dysfunctional iron metabolism by the administration of an iron carboxymaltose complex.  A true and correct copy of the '091 patent is attached hereto as **Exhibit E**.

24.     The PTO issued the '502 patent entitled "Methods and Compositions For Administration of Iron," on October 25, 2022 to inventors Mary Jane Helenek, Marc L. Tokars, and Richard P. Lawrence.  American Regent is the current assignee of the '502 patent and has the right to enforce it.  The '502 patent expires on January 8, 2027.  The '502 patent claims, *inter alia*, methods of treating iron deficiency anemia and functional iron deficiency by the administration of an iron carboxymaltose complex.  A true and correct copy of the '502 patent is attached hereto as **Exhibit F**.

### NDA NO. 203565 AND INJECTAFER®

25.     American Regent is the owner of New Drug Application ("NDA") No. 203565 for Injectafer® (ferric carboxymaltose), which the FDA approved on July 25, 2013.  The Orange Book lists the NDA holder as "American Regent, Inc.," in accordance with the name change from "Luitpold Pharmaceuticals, Inc." to "American Regent, Inc.," effective January 2, 2019.

26.     In conjunction with NDA No. 203565, American Regent listed with the FDA, *inter alia*, the '109, '702, and '612 patents.  American Regent subsequently timely listed the '260, '091, and '502 patents with the FDA after those patents issued.  All six patents—the '109, '702, '612, '260, '091, and '502 patents—are currently listed in the Orange Book for Injectafer®.

27.     Injectafer® is covered by one or more claims of each of the '109, '702, '612, '260, '091, and '502 patents.

28.     Injectafer® is currently approved to treat iron deficiency anemia in certain patients and iron deficiency in adult patents with heart failure and New York Heart Association class II/III to improve exercise capacity.  A true and correct copy of the current Injectafer® label is attached as **Exhibit G**.

- 8 -

ME1 52202371v.1

## APOTEX'S INFRINGING ANDA SUBMISSION

29.     Plaintiffs and/or Plaintiffs' counsel received a letter from Apotex dated January 9, 2025, purporting to be a "Notification of Certification of Invalidity, Unenforceability and/or Non-infringement for U.S. Patent Nos. 7,612,109; 7,754,702; 8,895,612; 11,364,260; 11,433,091; and, 11,478,502 Pursuant to Section 505(j)(2)(B)(iv) of the Federal Food, Drug, and Cosmetic Act (21 U.S.C. § 355(j)(2)(B)(iv))" for ANDA No. 219993 pursuant to 21 U.S.C. § 355(j)(2)(B) and 21 § C.F.R. 314.95 ("Apotex's Notice Letter").

30.     Apotex's Notice Letter states that Apotex Inc. "hereby provides notice " that Apotex's ANDA was "submitted under 21 U.S.C. § 355(j)(l) and (2)(A), and includes paragraph IV certifications (pursuant to 21 U.S.C. § 355(j)(2)(A)(vii)(IV)) to obtain approval to engage in the commercial manufacture, use or sale of Ferric Carboxymaltose Injection; 100 mg Iron/2 mL (50 mg Iron/mL), 750 mg Iron/15 mL (50 mg Iron/mL) and 1000 mg Iron/20 mL (50 mg Iron/mL), before the expiration of the '109 patent, '702 patent, '612 patent, the '260 patent, the '091 patent, and the '502 patent."

31.     On information and belief, Apotex submitted ANDA No. 219993 to FDA under Section 505(j) of the Act, 21 U.S.C. § 355(j), seeking approval to, and intending to, manufacture, use, import, offer to sell, and/or sell Apotex's ANDA Products, either by itself or through its parent corporation, subsidiaries, and/or affiliates, throughout the United States before the expiration of the '109, '702, '612, '260, '091, and '502 patents.

32.     Apotex's Notice Letter further states that "the patents alleged to be invalid, unenforceable and/or not infringed in the paragraph IV certification are the '109 patent, the '702 patent, the '612 patent, the '260 patent, the '091 patent, and the '502 patent, which are listed in the Orange Book in connection with NDA No. 203565 for Ferric Carboxymaltose Injection Injectafer®; 100 mg Iron/2 mL (50 mg Iron/mL), 750 mg Iron/15 mL (50 mg Iron/mL) and 1000

- 9 -

ME1 52202371v.1

mg Iron/20 mL (50 mg Iron/mL)."

33.    On information and belief, Apotex has made, and continues to make, substantial preparation in the United States to manufacture, use, import, offer to sell, and/or sell Apotex's ANDA Products, either by itself or through its parent corporation, subsidiaries, and/or affiliates, before the expiration of the '109, '702, '612, '260, '091, and '502 patents.

34.    By filing ANDA No. 219993, and as indicated in Apotex's Notice Letter, Apotex has represented to the FDA that Apotex's ANDA Products have the same active ingredient as Injectafer®, have the same dosage forms and strengths as Injectafer®, and are bioequivalent to Injectafer®.

35.    On information and belief, Apotex is seeking approval to market Apotex's ANDA Products for the same approved indications as Injectafer®.

36.    Apotex's Notice Letter states that it has attached "pursuant to 21 U.S.C. § 355(j)(2)(B)(iv)(II) and 21 C.F.R. § 314.95(c)(7), a detailed statement of the legal and factual bases for the Paragraph IV Certification" and "has now been certified to the FDA, that in Apotex's opinion and to the best of their knowledge, the '109 patent, the '702 patent, the '612 patent, the '260 patent, the '091 patent, and the '502 patent are invalid, unenforceable and/or will not be infringed by the commercial manufacture, use or sale of the drug product described in Apotex's ANDA."

### COUNT I (INFRINGEMENT OF THE '109 PATENT)

37.    Plaintiffs allege, and incorporate in full herein, each of the preceding paragraphs 1–36.

38.    The claims of the '109 patent are presumed valid under 35 U.S.C. § 282.

39.    Under 35 U.S.C. § 271(e)(2)(A), Apotex has infringed at least one claim of the '109 patent by submitting, or causing to be submitted to the FDA, ANDA No. 219993 seeking

approval to engage in the commercial manufacture, use, or sale of Apotex's ANDA Products before the expiration date of the '109 patent. On information and belief, the product described in ANDA No. 219993 would infringe, either literally or under the doctrine of equivalents, at least one claim of the '109 patent under 35 U.S.C. § 271(e)(2)(A).

40.    In Apotex's Notice Letter, Apotex did not provide any allegation that Apotex's ANDA Products do not fall within the scope of certain claims of the '109 patent, and therefore admit infringement of at least one claim of the '109 patent.

41.    On information and belief, based on Apotex's Notice Letter, the absence of any allegation that Apotex's ANDA Products do not fall within the scope of claims of the '109 patent in Apotex's Notice Letter, the fact that Apotex has represented to the FDA that Apotex's ANDA Products are bioequivalent, pharmaceutically equivalent, and therapeutically equivalent to Injectafer®, and the fact that, pursuant to 21 C.F.R. § 314.94, Apotex is required to substantially copy the FDA-approved Injectafer® labeling, Apotex's ANDA Products comprise an aqueous solution of ferric carboxymaltose which is formulated for parenteral application, wherein the ferric carboxymaltose, an iron carbohydrate complex, has a weight average molecular weight of 80,000 to 300,000 daltons, and satisfies all of the limitations of one or more claim of the '109 patent.

42.    On information and belief, Apotex intends to engage in the commercial manufacture, use, offer for sale, sale, marketing, distributing, and/or importation of Apotex's ANDA Products prior to the expiration of the '109 patent immediately and imminently upon final approval of ANDA No. 219993. The commercial manufacture, use, offer for sale, sale, marketing, distributing, and/or importation of Apotex's ANDA Products prior to the expiration of the '109 patent would infringe one or more claims of the '109 patent.

- 11 -

43. On information and belief, upon FDA approval of Apotex's ANDA Products, Apotex will infringe at least one claim of the '109 patent under 35 U.S.C. § 271(a) either literally or under the doctrine of equivalents, by making, using, importing, offering to sell, and/or selling Apotex's ANDA Products in the United States, and/or will induce and/or contribute to infringement of one or more claims of the '109 patent under 35 U.S.C. §§ 271(b) and/or (c), unless enjoined by the Court.

44. On information and belief, Apotex has knowledge of the '109 patent and has filed ANDA No. 219993 seeking authorization to engage in the commercial manufacture, use, or sale of Apotex's ANDA Products in the United States. On information and belief, if the FDA approves ANDA No. 219993, healthcare professionals and/or patients will directly infringe under 35 U.S.C. § 271(a), either literally or under the doctrine of equivalents, at least one claim of the '109 patent by the use Apotex's ANDA Products according to Apotex's provided instructions and/or label.

45. On information and belief, Apotex knows and intends that healthcare professionals and/or patients will use Apotex's ANDA Products according to Apotex's provided instructions and/or label in an infringing manner, and will therefore induce infringement of one or more claims of the '109 patent with the requisite intent under 35 U.S.C. § 271(b).

46. Upon information and belief, upon approval, Apotex will take active steps to encourage the use of Apotex's ANDA Products by healthcare professionals and/or patients with the knowledge and intent that it will be used by healthcare professionals and/or patients in a manner that infringes at least one claim of the '109 patent for the pecuniary benefit of Apotex. Upon information and belief, Apotex will thus induce infringement of at least one claim of the '109 patent with the requisite intent under 35 U.S.C. § 271(b). Upon information and belief,

Apotex will have actual knowledge of the '109 patent and will actively induce infringement of the '109 patent immediately and imminently upon approval of its ANDA.

47.     On information and belief, if the FDA approves ANDA No. 219993, Apotex's ANDA Products will be specifically labeled for use in practicing at least one claim of the '109 patent, wherein Apotex's ANDA Products are a material part of the claimed invention, wherein Apotex knows and intends that healthcare professionals and/or patients will use Apotex's ANDA Products in accordance with the instructions and/or label provided by Apotex in practicing at least one claim of the '109 patent, and wherein Apotex's ANDA Products are not a staple article or commodity of commerce suitable for substantial non-infringing use.   Upon information and belief, Apotex will thus contribute to the infringement of at least one claim of the '109 patent under 35 U.S.C. § 271(c).

48.     Upon information and belief, Apotex's actions relating to ANDA No. 219993 complained of herein were done by and for the benefit of Apotex.

49.     If Apotex's marketing and sale of Apotex's ANDA Products prior to the expiration of the '109 patent is not enjoined, Plaintiffs will suffer substantial and irreparable harm for which there is no adequate remedy at law.

## COUNT II (INFRINGEMENT OF THE '702 PATENT)

50.     Plaintiffs allege, and incorporate in full herein, each of the preceding paragraphs 1–49.

51.     Claims 4–9, 16–22, 24, 26, 31–40, and 44–57 of the '702 patent are presumed valid under 35 U.S.C. § 282.

52.     Under 35 U.S.C. § 271(e)(2)(A), Apotex has infringed at least one claim of the '702 patent by submitting, or causing to be submitted to the FDA, ANDA No. 219993 seeking approval to engage in the commercial manufacture, use, or sale of Apotex's ANDA Products

ME1 52202371v.1

before the expiration date of the '702 patent.  On information and belief, the product described in ANDA No. 219993 would infringe, either literally or under the doctrine of equivalents, at least one claim of the '702 patent under 35 U.S.C. § 271(e)(2)(A).

53.     In Apotex's Notice Letter, Apotex did not provide any allegation that Apotex's ANDA Products do not fall within the scope of certain claims of the '702 patent, and therefore admit infringement of at least one claim of the '702 patent.

54.     On information and belief, based on Apotex's Notice Letter, the absence of any allegation that Apotex's ANDA Products do not fall within the scope of the claims of the '702 patent in Apotex's Notice Letter, the fact that Apotex has represented to the FDA that Apotex's ANDA Products are bioequivalent, pharmaceutically equivalent, and therapeutically equivalent to Injectafer®, and the fact that, pursuant to 21 C.F.R. § 314.94, Apotex is required to substantially copy the FDA-approved Injectafer® labeling, Apotex's ANDA Products comprise an iron carboxymaltose complex having a molecular weight of about 100,000 daltons to about 350,000 daltons, and will be used in a method of treating iron deficiency anemia, whereby Apotex's ANDA Products will be administered intravenously in about 15 minutes or less to a subject in need thereof in a single dosage unit of at least about 0.6 grams of elemental iron, and the use of Apotex's ANDA Products will satisfy all of the limitations of one or more claims of the '702 patent.

55.     On information and belief, Apotex intends to engage in the commercial manufacture, use, offer for sale, sale, marketing, distributing, and/or importation of Apotex's ANDA Products prior to the expiration of the '702 patent immediately and imminently upon final approval of ANDA No. 219993.  The commercial manufacture, use, offer for sale, sale, marketing, distributing, and/or importation of Apotex's ANDA Products prior to the expiration

- 14 -

of the '702 patent would infringe one or more claims of the '702 patent.

56.     On information and belief, upon FDA approval of Apotex's ANDA Products, Apotex will induce and/or contribute to the infringement of one or more claims of the '702 patent under 35 U.S.C. §§ 271(b) and/or (c), unless enjoined by the Court.

57.     On information and belief, Apotex has knowledge of the '702 patent and has filed ANDA No. 219993 seeking authorization to engage in the commercial manufacture, use, or sale of Apotex's ANDA Products in the United States.  On information and belief, if the FDA approves ANDA No. 219993, healthcare professionals and/or patients will directly infringe under 35 U.S.C. § 271(a), either literally or under the doctrine of equivalents, at least one claim of the '702 patent by the use Apotex's ANDA Products according to Apotex's provided instructions and/or label.

58.     On information and belief, Apotex knows and intends that healthcare professionals and/or patients will use Apotex's ANDA Products according to Apotex's provided instructions and/or label in an infringing manner, and will therefore induce infringement of one or more claims of the '702 patent with the requisite intent under 35 U.S.C. § 271(b).

59.     Upon information and belief, upon approval, Apotex will take active steps to encourage the use of Apotex's ANDA Products by healthcare professionals and/or patients with the knowledge and intent that it will be used by healthcare professionals and/or patients in a manner that infringes at least one claim of the '702 patent for the pecuniary benefit of Apotex. Upon information and belief, Apotex will thus induce infringement of at least one claim of the '702 patent with the requisite intent under 35 U.S.C. § 271(b).  Upon information and belief, Apotex will have actual knowledge of the '702 patent and will actively induce infringement of the '702 patent immediately and imminently upon approval of its ANDA.

60.     On information and belief, if the FDA approves ANDA No. 219993, Apotex's ANDA Products will be specifically labeled for use in practicing at least one claim of the '702 patent, wherein Apotex's ANDA Products are a material part of the claimed invention, wherein Apotex knows and intends that healthcare professionals and/or patients will use Apotex's ANDA Products in accordance with the instructions and/or label provided by Apotex in practicing at least one claim of the '702 patent, and wherein Apotex's ANDA Products are not a staple article or commodity of commerce suitable for substantial non-infringing use.   Upon information and belief, Apotex will thus contribute to the infringement of at least one claim of the '702 patent under 35 U.S.C. § 271(c).

61.     Upon information and belief, Apotex's actions relating to ANDA No. 219993 complained of herein were done by and for the benefit of Apotex.

62.     If Apotex's marketing and sale of Apotex's ANDA Products prior to the expiration of the '702 patent is not enjoined, Plaintiffs will suffer substantial and irreparable harm for which there is no adequate remedy at law.

## COUNT III (INFRINGEMENT OF THE '612 PATENT)

63.     Plaintiffs allege, and incorporate in full herein, each of the preceding paragraphs 1–62.

64.     The claims of the '612 patent are presumed valid under 35 U.S.C. § 282.

65.     Under 35 U.S.C. § 271(e)(2)(A), Apotex has infringed at least one claim of the '612 patent by submitting, or causing to be submitted to the FDA, ANDA No. 219993 seeking approval to engage in the commercial manufacture, use, or sale of Apotex's ANDA Products before the expiration date of the '612 patent.  On information and belief, the product described in ANDA No. 219993 would infringe, either literally or under the doctrine of equivalents, at least one claim of the '612 patent under 35 U.S.C. § 271(e)(2)(A).

- 16 -

66.     On information and belief, based on Apotex's Notice Letter, the absence of any allegation that Apotex's ANDA Products do not fall within the scope of the claims of the '612 patent in Apotex's Notice Letter, the fact that Apotex has represented to the FDA that Apotex's ANDA Products are bioequivalent, pharmaceutically equivalent, and therapeutically equivalent to Injectafer®, and the fact that, pursuant to 21 C.F.R. § 314.94, Apotex is required to substantially copy the FDA-approved Injectafer® labeling, Apotex's ANDA Products comprise an iron carboxymaltose complex having a substantially non-immunogenic carbohydrate component and substantially no cross reactivity with anti-dextran antibodies, and will be used in a method of treating iron deficiency anemia associated with chronic kidney disease and/or heavy uterine bleeding, whereby Apotex's ANDA Products will be administered in about 15 minutes or less to a subject in need thereof in a single dosage unit of at least about 0.6 grams of elemental iron, and the use of Apotex's ANDA Products will satisfy all of the limitations of one or more claims of the '612 patent.

67.     On information and belief, Apotex intends to engage in the commercial manufacture, use, offer for sale, sale, marketing, distributing, and/or importation of Apotex's ANDA Products prior to the expiration of the '612 patent immediately and imminently upon final approval of ANDA No. 219993.  The commercial manufacture, use, offer for sale, sale, marketing, distributing, and/or importation of Apotex's ANDA Products prior to the expiration of the '612 patent would infringe one or more claims of the '612 patent.

68.     On information and belief, upon FDA approval of Apotex's ANDA Products, Apotex will induce and/or contribute to the infringement of one or more claims of the '612 patent under 35 U.S.C. §§ 271(b) and/or (c), unless enjoined by the Court.

69.     On information and belief, Apotex has knowledge of the '612 patent and has filed

- 17 -

ANDA No. 219993 seeking authorization to engage in the commercial manufacture, use, or sale of Apotex's ANDA Products in the United States. On information and belief, if the FDA approves ANDA No. 219993, healthcare professionals and/or patients will directly infringe under 35 U.S.C. § 271(a), either literally or under the doctrine of equivalents, at least one claim of the '612 patent by the use Apotex's ANDA Products according to Apotex's provided instructions and/or label.

70. On information and belief, Apotex knows and intends that healthcare professionals and/or patients will use Apotex's ANDA Products according to Apotex's provided instructions and/or label in an infringing manner, and will therefore induce infringement of one or more claims of the '612 patent with the requisite intent under 35 U.S.C. § 271(b).

71. Upon information and belief, upon approval, Apotex will take active steps to encourage the use of Apotex's ANDA Products by healthcare professionals and/or patients with the knowledge and intent that it will be used by healthcare professionals and/or patients in a manner that infringes at least one claim of the '612 patent for the pecuniary benefit of Apotex. Upon information and belief, Apotex will thus induce infringement of at least one claim of the '612 patent with the requisite intent under 35 U.S.C. § 271(b). Upon information and belief, Apotex will have actual knowledge of the '612 patent and will actively induce infringement of the '612 patent immediately and imminently upon approval of its ANDA.

72. On information and belief, if the FDA approves ANDA No. 219993, Apotex's ANDA Products will be specifically labeled for use in practicing at least one claim of the '612 patent, wherein Apotex's ANDA Products are a material part of the claimed invention, wherein Apotex knows and intends that healthcare professionals and/or patients will use Apotex's ANDA Products in accordance with the instructions and/or label provided by Apotex in practicing at

least one claim of the '612 patent, and wherein Apotex's ANDA Products are not a staple article or commodity of commerce suitable for substantial non-infringing use.   Upon information and belief, Apotex will thus contribute to the infringement of at least one claim of the '612 patent under 35 U.S.C. § 271(c).

73.     Upon information and belief, Apotex's actions relating to ANDA No. 219993 complained of herein were done by and for the benefit of Apotex.

74.     If Apotex's marketing and sale of Apotex's ANDA Products prior to the expiration of the '612 patent is not enjoined, Plaintiffs will suffer substantial and irreparable harm for which there is no adequate remedy at law.

### COUNT IV (INFRINGEMENT OF THE '260 PATENT)

75.     Plaintiffs allege, and incorporate in full herein, each of the preceding paragraphs 1–74.

76.     The claims of the '260 patent are presumed valid under 35 U.S.C. § 282.

77.     Under 35 U.S.C. § 271(e)(2)(A), Apotex has infringed at least one claim of the '260 patent by submitting, or causing to be submitted to the FDA, ANDA No. 219993 seeking approval to engage in the commercial manufacture, use, or sale of Apotex's ANDA Products before the expiration date of the '260 patent.  On information and belief, the product described in ANDA No. 219993 would infringe, either literally or under the doctrine of equivalents, at least one claim of the '260 patent under 35 U.S.C. § 271(e)(2)(A).

78.     On information and belief, based on Apotex's Notice Letter, the absence of any allegation that Apotex's ANDA Products do not fall within the scope of the claims of the '260 patent in Apotex's Notice Letter, the fact that Apotex has represented to the FDA that Apotex's ANDA Products are bioequivalent, pharmaceutically equivalent, and therapeutically equivalent to Injectafer®, and the fact that, pursuant to 21 C.F.R. § 314.94, Apotex is required to

- 19 -

ME1 52202371v.1

substantially copy the FDA-approved Injectafer® labeling, Apotex's ANDA Products comprise

an iron carboxymaltose complex having a substantially non-immunogenic carbohydrate

component and substantially no cross reactivity with anti-dextran antibodies, and will be used in

a method of treating iron deficiency or dysfunctional iron metabolism associated with

cardiomyopathy, whereby Apotex's ANDA Products will be administered intravenously in about

15 minutes or less to a subject in need thereof in a single dosage unit of at least about 0.6 grams

of elemental iron, and the use of Apotex's ANDA Products will satisfy all of the limitations of

one or more claims of the '260 patent.

79.     On information and belief, Apotex intends to engage in the commercial

manufacture, use, offer for sale, sale, marketing, distributing, and/or importation of Apotex's

ANDA Products prior to the expiration of the '260 patent immediately and imminently upon

final approval of ANDA No. 219993.  The commercial manufacture, use, offer for sale, sale,

marketing, distributing, and/or importation of Apotex's ANDA Products prior to the expiration

of the '260 patent would infringe one or more claims of the '260 patent.

80.     On information and belief, upon FDA approval of Apotex's ANDA Products,

Apotex will induce and/or contribute to the infringement of one or more claims of the '260 patent

under 35 U.S.C. §§ 271(b) and/or (c), unless enjoined by the Court.

81.     On information and belief, Apotex has knowledge of the '260 patent and has filed

ANDA No. 219993 seeking authorization to engage in the commercial manufacture, use, or sale

of Apotex's ANDA Products in the United States.  On information and belief, if the FDA

approves ANDA No. 219993, healthcare professionals and/or patients will directly infringe

under 35 U.S.C. § 271(a), either literally or under the doctrine of equivalents, at least one claim

of the '260 patent by the use Apotex's ANDA Products according to Apotex's provided

- 20 -

instructions and/or label.

82. On information and belief, Apotex knows and intends that healthcare professionals and/or patients will use Apotex's ANDA Products according to Apotex's provided instructions and/or label in an infringing manner, and will therefore induce infringement of one or more claims of the '260 patent with the requisite intent under 35 U.S.C. § 271(b).

83. Upon information and belief, upon approval, Apotex will take active steps to encourage the use of Apotex's ANDA Products by healthcare professionals and/or patients with the knowledge and intent that it will be used by healthcare professionals and/or patients in a manner that infringes at least one claim of the '260 patent for the pecuniary benefit of Apotex. Upon information and belief, Apotex will thus induce infringement of at least one claim of the '260 patent with the requisite intent under 35 U.S.C. § 271(b).  Upon information and belief, Apotex will have actual knowledge of the '260 patent and will actively induce infringement of the '260 patent immediately and imminently upon approval of its ANDA.

84. On information and belief, if the FDA approves ANDA No. 219993, Apotex's ANDA Products will be specifically labeled for use in practicing at least one claim of the '260 patent, wherein Apotex's ANDA Products are a material part of the claimed invention, wherein Apotex knows and intends that healthcare professionals and/or patients will use Apotex's ANDA Products in accordance with the instructions and/or label provided by Apotex in practicing at least one claim of the '260 patent, and wherein Apotex's ANDA Products are not a staple article or commodity of commerce suitable for substantial non-infringing use.   Upon information and belief, Apotex will thus contribute to the infringement of at least one claim of the '260 patent under 35 U.S.C. § 271(c).

85. Upon information and belief, Apotex's actions relating to ANDA No. 219993

- 21 -

complained of herein were done by and for the benefit of Apotex.

86.     If Apotex's marketing and sale of Apotex's ANDA Products prior to the expiration of the '260 patent is not enjoined, Plaintiffs will suffer substantial and irreparable harm for which there is no adequate remedy at law.

## COUNT V (INFRINGEMENT OF THE '091 PATENT)

87.     Plaintiffs allege, and incorporate in full herein, each of the preceding paragraphs 1–86.

88.     The claims of the '091 patent are presumed valid under 35 U.S.C. § 282.

89.     Under 35 U.S.C. § 271(e)(2)(A), Apotex has infringed at least one claim of the '091 patent by submitting, or causing to be submitted to the FDA, ANDA No. 219993 seeking approval to engage in the commercial manufacture, use, or sale of Apotex's ANDA Products before the expiration date of the '091 patent.  On information and belief, the product described in ANDA No. 219993 would infringe, either literally or under the doctrine of equivalents, at least one claim of the '091 patent under 35 U.S.C. § 271(e)(2)(A).

90.     On information and belief, based on Apotex's Notice Letter, the absence of any allegation that Apotex's ANDA Products do not fall within the scope of the claims of the '091 patent in Apotex's Notice Letter, the fact that Apotex has represented to the FDA that Apotex's ANDA Products are bioequivalent, pharmaceutically equivalent, and therapeutically equivalent to Injectafer®, and the fact that, pursuant to 21 C.F.R. § 314.94, Apotex is required to substantially copy the FDA-approved Injectafer® labeling, Apotex's ANDA Products comprise an iron carboxymaltose complex, and will be used in a method of treating anemia, whereby Apotex's ANDA Products will be administered intravenously to a human subject in need thereof in a single dosage unit of at least about 0.7 grams of elemental iron in 15 minutes or less, and the use of Apotex's ANDA Products will satisfy all of the limitations of one or more claims of the

- 22 -

'091 patent.

91.     On information and belief, Apotex intends to engage in the commercial
manufacture, use, offer for sale, sale, marketing, distributing, and/or importation of Apotex's
ANDA Products prior to the expiration of the '091 patent immediately and imminently upon
final approval of ANDA No. 219993.  The commercial manufacture, use, offer for sale, sale,
marketing, distributing, and/or importation of Apotex's ANDA Products prior to the expiration
of the '091 patent would infringe one or more claims of the '091 patent.

92.     On information and belief, upon FDA approval of Apotex's ANDA Products,
Apotex will induce and/or contribute to the infringement of one or more claims of the '091 patent
under 35 U.S.C. §§ 271(b) and/or (c), unless enjoined by the Court.

93.     On information and belief, Apotex has knowledge of the '091 patent and has filed
ANDA No. 219993 seeking authorization to engage in the commercial manufacture, use, or sale
of Apotex's ANDA Products in the United States.  On information and belief, if the FDA
approves ANDA No. 219993, healthcare professionals and/or patients will directly infringe
under 35 U.S.C. § 271(a), either literally or under the doctrine of equivalents, at least one claim
of the '091 patent by the use Apotex's ANDA Products according to Apotex's provided
instructions and/or label.

94.     On information and belief, Apotex knows and intends that healthcare
professionals and/or patients will use Apotex's ANDA Products according to Apotex's provided
instructions and/or label in an infringing manner, and will therefore induce infringement of one
or more claims of the '091 patent with the requisite intent under 35 U.S.C. § 271(b).

95.     Upon information and belief, upon approval, Apotex will take active steps to
encourage the use of Apotex's ANDA Products by healthcare professionals and/or patients with

ME1 52202371v.1

the knowledge and intent that it will be used by healthcare professionals and/or patients in a manner that infringes at least one claim of the '091 patent for the pecuniary benefit of Apotex. Upon information and belief, Apotex will thus induce infringement of at least one claim of the '091 patent with the requisite intent under 35 U.S.C. § 271(b).  Upon information and belief, Apotex will have actual knowledge of the '091 patent and will actively induce infringement of the '091 patent immediately and imminently upon approval of its ANDA.

96.     On information and belief, if the FDA approves ANDA No. 219993, Apotex's ANDA Products will be specifically labeled for use in practicing at least one claim of the '091 patent, wherein Apotex's ANDA Products are a material part of the claimed invention, wherein Apotex knows and intends that healthcare professionals and/or patients will use Apotex's ANDA Products in accordance with the instructions and/or label provided by Apotex in practicing at least one claim of the '091 patent, and wherein Apotex's ANDA Products are not a staple article or commodity of commerce suitable for substantial non-infringing use.   Upon information and belief, Apotex will thus contribute to the infringement of at least one claim of the '091 patent under 35 U.S.C. § 271(c).

97.     Upon information and belief, Apotex's actions relating to ANDA No. 219993 complained of herein were done by and for the benefit of Apotex.

98.     If Apotex's marketing and sale of Apotex's ANDA Products prior to the expiration of the '091 patent is not enjoined, Plaintiffs will suffer substantial and irreparable harm for which there is no adequate remedy at law.

## COUNT VI (INFRINGEMENT OF THE '502 PATENT)

99.     Plaintiffs allege, and incorporate in full herein, each of the preceding paragraphs 1–98.

100.    The claims of the '502 patent are presumed valid under 35 U.S.C. § 282.

101.     Under 35 U.S.C. § 271(e)(2)(A), Apotex has infringed at least one claim of the '502 patent by submitting, or causing to be submitted to the FDA, ANDA No. 219993 seeking approval to engage in the commercial manufacture, use, or sale of Apotex's ANDA Products before the expiration date of the '502 patent.  On information and belief, the product described in ANDA No. 219993 would infringe, either literally or under the doctrine of equivalents, at least one claim of the '502 patent under 35 U.S.C. § 271(e)(2)(A).

102.     On information and belief, based on Apotex's Notice Letter, the absence of any allegation that Apotex's ANDA Products do not fall within the scope of the claims of the '502 patent in Apotex's Notice Letter, the fact that Apotex has represented to the FDA that Apotex's ANDA Products are bioequivalent, pharmaceutically equivalent, and therapeutically equivalent to Injectafer®, and the fact that, pursuant to 21 C.F.R. § 314.94, Apotex is required to substantially copy the FDA-approved Injectafer® labeling, Apotex's ANDA Products comprise a polynuclear iron (III)-hydroxide 4(R)-(poly-(1→4)-O-α-D-glucopyranosyl)-oxy-2(R),3(R),5(R),6-tetrahydroxy-hexanoate, and will be used in a method of treating iron deficiency anemia or functional iron deficiency and result in increased transferrin saturation, whereby Apotex's ANDA Products will be administered intravenously in about 15 minutes or less to an adult human subject in need thereof in a single dosage unit of at least about 0.6 grams of elemental iron, and the use of Apotex's ANDA Products will satisfy all of the limitations of one or more claims of the '502 patent.

103.     On information and belief, Apotex intends to engage in the commercial manufacture, use, offer for sale, sale, marketing, distributing, and/or importation of Apotex's ANDA Products prior to the expiration of the '502 patent immediately and imminently upon final approval of ANDA No. 219993.  The commercial manufacture, use, offer for sale, sale,

- 25 -

marketing, distributing, and/or importation of Apotex's ANDA Products prior to the expiration of the '502 patent would infringe one or more claims of the '502 patent.

104.    On information and belief, upon FDA approval of Apotex's ANDA Products, Apotex will induce and/or contribute to the infringement of one or more claims of the '502 patent under 35 U.S.C. §§ 271(b) and/or (c), unless enjoined by the Court.

105.    On information and belief, Apotex has knowledge of the '502 patent and has filed ANDA No. 219993 seeking authorization to engage in the commercial manufacture, use, or sale of Apotex's ANDA Products in the United States.  On information and belief, if the FDA approves ANDA No. 219993, healthcare professionals and/or patients will directly infringe under 35 U.S.C. § 271(a), either literally or under the doctrine of equivalents, at least one claim of the '502 patent by the use Apotex's ANDA Products according to Apotex's provided instructions and/or label.

106.    On information and belief, Apotex knows and intends that healthcare professionals and/or patients will use Apotex's ANDA Products according to Apotex's provided instructions and/or label in an infringing manner, and will therefore induce infringement of one or more claims of the '502 patent with the requisite intent under 35 U.S.C. § 271(b).

107.    Upon information and belief, upon approval, Apotex will take active steps to encourage the use of Apotex's ANDA Products by healthcare professionals and/or patients with the knowledge and intent that it will be used by healthcare professionals and/or patients in a manner that infringes at least one claim of the '502 patent for the pecuniary benefit of Apotex. Upon information and belief, Apotex will thus induce infringement of at least one claim of the '502 patent with the requisite intent under 35 U.S.C. § 271(b).  Upon information and belief, Apotex will have actual knowledge of the '502 patent and will actively induce infringement of

the '502 patent immediately and imminently upon approval of its ANDA.

108.    On information and belief, if the FDA approves ANDA No. 219993, Apotex's

ANDA Products will be specifically labeled for use in practicing at least one claim of the '502

patent, wherein Apotex's ANDA Products are a material part of the claimed invention, wherein

Apotex knows and intends that healthcare professionals and/or patients will use Apotex's ANDA

Products in accordance with the instructions and/or label provided by Apotex in practicing at

least one claim of the '502 patent, and wherein Apotex's ANDA Products are not a staple article

or commodity of commerce suitable for substantial non-infringing use.   Upon information and

belief, Apotex will thus contribute to the infringement of at least one claim of the '502 patent

under 35 U.S.C. § 271(c).

109.    Upon information and belief, Apotex's actions relating to ANDA No. 219993

complained of herein were done by and for the benefit of Apotex.

110.    If Apotex's marketing and sale of Apotex's ANDA Products prior to the

expiration of the '502 patent is not enjoined, Plaintiffs will suffer substantial and irreparable

harm for which there is no adequate remedy at law.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs respectfully request that this Court grant the following relief:

1.    A judgment that the claims of the '109, '702, '612, '260, '091, and '502 patents

are not invalid or unenforceable, and are infringed by Apotex's submission of ANDA No.

219993 under 35 U.S.C. §271(e)(2)(A), and that Apotex's making, using, offering to sell, or

selling in the United States, or importing into the United States, Apotex's ANDA Products will

infringe the '109, '702, '612, '260, '091, and '502 patents under 35 U.S.C. §§ 271(a), (b), (c),

and/or (g);

2.    An order pursuant to 35 U.S.C. § 271(e)(4)(A) providing that the effective date of

any approval by the FDA of ANDA No. 219993 shall be a date that is not earlier than the latest

expiration date of the '109, '702, '612, '260, '091, and '502 patents, including any extensions

and/or additional periods of exclusivity to which Plaintiffs are or become entitled;

3.      An order permanently enjoining Apotex and its affiliates, subsidiaries, and each

of its officers, agents, servants, employees, and those acting in privity or concert with them, from

making, using, offering to sell, or selling in the United States, or importing into the United States

Apotex's ANDA Products until after the last expiration date of the '109, '702, '612, '260, '091,

and '502 patents, including any extensions and/or additional periods of exclusivity to which

Plaintiffs are or become entitled, in accordance with 35 U.S.C. § 271(e)(4)(B) and 35 U.S.C.

§ 283;

4.      A declaration issued under 28 U.S.C. § 2201 that if Apotex, its affiliates,

subsidiaries, and each of its officers, agents, servants, employees, and those acting in privity or in

concert with them, engage in the importation, offer for sale, sale, or use within the United States

of Apotex's ANDA Products prior to the expiration of the '109 patent, that will constitute an act

of infringement under 35 U.S.C. § 271(g);

5.      Damages or other monetary relief to Plaintiffs if Apotex engages in commercial

manufacture, use, offers to sell, sale, or importation in or into the United States of Apotex's

ANDA Products prior to the latest expiration date of the '109, '702, '612, '260, '091, and '502

patents, including any extensions and/or additional periods of exclusivity to which Plaintiffs is or

becomes entitled, in accordance with 35 U.S.C. § 271(e)(4)(C); and

6.      Such further and additional relief as this Court deems just and proper, including

any appropriate relief under 35 U.S.C. § 285.

Dated: February 20, 2025

Of Counsel:

Jane M. Love, Ph.D
Robert Trenchard
Allyson E. Parks
Emil Nachman
Spencer W. Vaughan
**GIBSON, DUNN & CRUTCHER LLP**
200 Park Avenue
New York, NY 10166-0193
212-351-4000
jlove@gibsondunn.com
rtrenchard@gibsondunn.com
aparks@gibsondunn.com
enachman@gibsondunn.com
svaughan@gibsondunn.com

**MCCARTER & ENGLISH, LLP**

/s/ *Daniel M. Silver*
Daniel M. Silver (#4758)
Alexandra M. Joyce (#6423)
Renaissance Centre
405 N. King Street, 8th Floor
Wilmington, Delaware 19801
(302) 984-6300
dsilver@mccarter.com
ajoyce@mccarter.com

*Attorneys for Plaintiffs Vifor (International)*
*AG and American Regent, Inc.*



# EXHIBIT 2

Cynthia S. Betz
Mark M. Makhail
**McCARTER & ENGLISH, LLP**
100 Mulberry Street
4 Gateway Center
Newark, NJ 07102
973-622-4444
cbetz@mccarter.com
mmakhail@mccarter.com

*Attorneys for Plaintiffs*
*Vifor (International) AG and*
*American Regent, Inc.*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| VIFOR (INTERNATIONAL) AG and AMERICAN REGENT, INC., | |
| Plaintiffs, | Case No. _____ |
| v. | |
| DR. REDDY'S LABORATORIES, LTD. and DR. REDDY'S LABORATORIES, INC., | |
| Defendants. | |

## COMPLAINT FOR PATENT INFRINGEMENT

Plaintiffs Vifor (International) AG ("Vifor") and American Regent, Inc. ("American Regent") (collectively, "Plaintiffs"), by their attorneys, through this Complaint, hereby allege as follows:

## NATURE OF THE ACTION

1.     This is an action for patent infringement arising under the patent laws of the United States, Title 35, United States Code, against Dr. Reddy's Laboratories, Ltd. ("DRL Ltd.") and Dr. Reddy's Laboratories, Inc. ("DRL Inc.") (DRL Ltd. and DRL Inc., collectively, "the

DRL Defendants").  This action relates to Abbreviated New Drug Application ("ANDA") No. 218848, filed by the DRL Defendants with the U.S. Food and Drug Administration ("FDA") for approval to market a generic version of Plaintiffs' Injectafer®, ferric carboxymaltose injection (100 mg Iron/2 mL; 500 mg Iron /10 mL; 750 mg Iron/15 mL; 1 g Iron /20 mL) ("DRL's ANDA Products") prior to the expiration of United States Patent Nos. 7,612,109 ("the '109 patent"); 7,754,702 ("the '702 patent"); 8,895,612 ("the '612 patent"); 11,364,260 ("the '260 patent"); 11,433,091 ("the '091 patent"); and 11,478,502 ("the '502 patent").  The '109, '702, '612, '260, '091, and '502 patents are listed in the FDA's Approved Drug Products with Therapeutic Equivalence Evaluations ("Orange Book") for Injectafer®.

## THE PARTIES

2.      Plaintiff Vifor is a company organized and existing under the laws of Switzerland, having a principal place of business at Rechenstraβe 37, CH-9001, St. Gallen, Switzerland.

3.      Vifor is engaged in the business of creating, developing, and bringing to market revolutionary drug products, including treatments for iron deficiency anemia.

4.      Plaintiff American Regent is a corporation organized and existing under the laws of the State of New York, with a principal place of business at 5 Ramsey Road, Shirley, New York 11967.  American Regent was formerly known as "Luitpold Pharmaceuticals, Inc.," until January 2, 2019, when its New York Certificate of Incorporation was amended to change the name of the corporation to "American Regent, Inc."

5.      Vifor and American Regent developed Injectafer®.  American Regent licenses Injectafer® from Vifor, and American Regent markets, distributes, and sells injectable pharmaceutical drug products, including Injectafer®, in this judicial district and throughout the United States.

6.      On information and belief, Defendant DRL Ltd. is a company organized and

existing under the laws of the Republic of India and having a principal place of business at 8-2-337, Road No. 3, Banjara Hills, Hyderabad, Telangana, India, 500034.

7.      On information and belief, DRL Ltd. itself, and through its subsidiary and agent DRL Inc., develops, manufactures, and/or distributes generic drug products for marketing, sale, and/or use throughout the United States, including in this judicial district.

8.      On information and belief, Defendant DRL Inc. is a corporation organized and existing under the laws of the State of New Jersey, with a principal place of business at 107 College Road East, Princeton, New Jersey, 08540.

9.      On information and belief, DRL Inc. is a wholly owned subsidiary of DRL Ltd. and is controlled and/or dominated by DRL Inc.  On information and belief, DRL Ltd. established DRL Inc. for the purposes of developing, manufacturing, and distributing its generic drug products throughout the United States, including in this judicial district.  On information and belief, DRL Inc. develops, manufactures, and/or distributes generic drug products for marketing, sale, and/or use throughout the United States, including in this judicial district.

## JURISDICTION AND VENUE

10.      This action arises under the patent laws of the United States, 35 U.S.C. §§ 100, e*t seq.*, and this Court has jurisdiction over the subject matter of this action under 28 U.S.C. §§ 1331 and 1338(a).

11.      On information and belief, this Court has personal jurisdiction over DRL Inc., under the New Jersey state long arm statute and consistent with due process of law, because DRL Inc. maintains its principal place of business in New Jersey.

12.      On information and belief, this Court has personal jurisdiction over DRL Ltd., under the New Jersey state long arm statute and consistent with due process of law because DRL Ltd. has extensive contacts with the State of New Jersey, including through its subsidiary DRL

Inc., and regularly does business in this judicial district, including through its subsidiary DRL Inc. Further, the DRL Defendants plan to sell their ANDA product in the State of New Jersey, which provides an independent basis for personal jurisdiction here.

13. DRL Ltd. has previously availed itself of the legal protections of the State of New Jersey by, among other things, selecting the State of New Jersey as the place of incorporation and principal place of business for DRL Inc., admitting to jurisdiction in this judicial district, and/or pursuing counterclaims it this judicial district. *See, e.g.*, *Intra-Cellular Therapies, Inc. v. Dr. Reddy's Lab'ys, Inc. et al.*, C.A. No. 24-04314 (D.N.J.) (DRL Inc. and DRL Ltd. did not contest personal jurisdiction and asserted counterclaims); *Novo Nordisk Inc. et al. v. Dr. Reddy's Lab'ys, Ltd. et al.*, C.A. No. 23-22112 (D.N.J.) (same); *Bausch & Lomb Inc. et al., v. Dr. Reddy's Lab'ys, Ltd. et al.*, C.A. No. 23-03463 (D.N.J.) (same); *Eisai R&D Mgmt. Co., Ltd. et al. v. Dr. Reddy's Lab'ys, Inc. et al.*, C.A. No. 22-05950 (D.N.J.) (same); *Celgene Corp. v. Dr. Reddy's Lab'ys, Ltd. et al.*, C.A. No. 21-02111 (D.N.J.) (same); *Merck Sharp & Dohme BV et al. v. Dr. Reddy's Lab'ys, Inc. et al.*, C.A. No. 20-02909 (D.N.J.) (same); *Mitsubishi Tanabe Pharma Corp. et al. v. Dr. Reddy's Lab'ys, Inc. et al.*, C.A. No. 19-18764 (D.N.J.) (same); *AstraZeneca LP et al. v. Dr. Reddy's Lab'ys, Ltd. et al.*, C.A. No. 19-15739 (D.N.J.) (same); *see also Supernus Pharm., Inc. v. Dr. Reddy's Lab'ys, Ltd. et al.,* C.A. No. 22-04705 (D.N.J.) (DRL Inc. and DRL Ltd. did not contest personal jurisdiction); *Bausch & Lomb Inc. et al. v. Slayback Pharma LLC et al.*, C.A. No. 21-16766 (D.N.J.) (DRL Inc. did not contest personal jurisdiction and asserted counterclaims).

14. On information and belief, DRL Ltd. and DRL Inc. are subject to personal jurisdiction in New Jersey because they regularly do or solicit business in New Jersey, engage in other persistent courses of conduct in New Jersey, and/or derive substantial revenue from

services or things used or consumed in New Jersey, demonstrating that DRL Ltd. and DRL Inc. have systematic and continuous contacts with this judicial district.

15. On information and belief, DRL Ltd. and DRL Inc. purposefully have conducted and continue to conduct business in this judicial district by manufacturing, importing, marketing, and distributing pharmaceutical products, including generic drug products, either alone or through their parent corporation, subsidiaries, and/or affiliates, throughout the United States, including in this judicial district. The DRL Defendants further intend to sell their generic ANDA product in the State of New Jersey.

16. On information and belief, DRL Inc. is registered to do business in the State of New Jersey under Entity Identification Number 0100518911, and DRL Inc. is also licensed to do business with the New Jersey Department of Health as a "Manufacturer and Wholesale[r]" of pharmaceuticals in the State of New Jersey (Registration Number 5002312). Moreover, on information and belief, DRL Inc. has appointed a registered agent in New Jersey for the receipt of service of process.

17. On information and belief, DRL Ltd. and DRL Inc. are subject to personal jurisdiction in this judicial district through their pursuit of regulatory approval for DRL's ANDA Products for the commercial manufacture, use, and/or sale of DRL's ANDA Products, if approved, in this judicial district and to residents of this judicial district. Through at least these activities, DRL Ltd. and DRL Inc. have purposely availed themselves of the rights and benefits of New Jersey law such that they should reasonably anticipate being haled into court in this judicial district.

18. On information and belief, consistent with their past practices, DRL Ltd. and DRL Inc. acted collaboratively in the preparation and submission of ANDA No. 218848.

19.     On information and belief, and consistent with their past practices, following any FDA approval of ANDA No. 218848, DRL Ltd. and DRL Inc. will work in concert with one another to make, use, offer to sell, and/or sell the generic drug products that are the subject of ANDA No. 218848 throughout the United States and/or import such generic drug products into the United States, including in this judicial district.

20.     On information and belief, if ANDA No. 218848 is approved, DRL's ANDA Products will be marketed, distributed, offered for sale, and/or sold in New Jersey; prescribed by physicians practicing in New Jersey; administered by healthcare professionals located within New Jersey; and/or used by patients in New Jersey, all of which will have a substantial effect on New Jersey.

21.     On information and belief, if ANDA No. 218848 is approved, DRL Ltd. and DRL Inc. will import, market, distribute, offer for sale, and/or sell DRL's ANDA Products, alone or through their parent corporation, subsidiaries, and/or affiliates in the United States, including in New Jersey, and will derive substantial revenue from the use or consumption of DRL's ANDA Products in the state of New Jersey.

22.     If ANDA No. 218848 is approved, Vifor and American Regent will be harmed by the marketing, distribution, offer for sale, and/or sale of DRL's ANDA Products, including in New Jersey.

23.     On information and belief, venue is proper in this judicial district under 28 U.S.C. §§ 1391 and 1400(b) at least because DRL Inc. is incorporated in the State of New Jersey and therefore "resides" in this judicial district, and has committed acts of infringement in New Jersey and has a regular and established place of business in New Jersey. DRL Ltd. is a foreign company not residing in any United States judicial district and may be sued in any judicial

district. 28 U.S.C. § 1391(c)(3). Moreover, DRL Ltd. and DRL Inc. have litigated previous Hatch-Waxman patent infringement disputes in the District of New Jersey.

24. On information and belief, DRL Inc. has committed acts of infringement under the meaning of 28 U.S.C. § 1400(b) by submitting ANDA No. 218848 to the FDA, by taking steps indicating its intent to market DRL's ANDA Products in New Jersey, and by the acts that it non-speculatively intends to take in New Jersey if DRL's ANDA receives final FDA approval.

25. On information and belief, DRL Inc. has a regular and established place of business in New Jersey under the meaning of 28 U.S.C. § 1400(b) because, *inter alia*, its principal place of business is in New Jersey. As set forth above, on information and belief, DRL Inc. maintains regular and established places of business in New Jersey, including it headquarters, offices, laboratories, and/or facilities at 107 College Road East, Princeton, New Jersey, 08540.

26. On information and belief, DRL Ltd. and DRL Inc. have taken steps in New Jersey, including preparing ANDA No. 218848 and communicating with the FDA regarding ANDA No. 218848, that indicate their intent to market DRL's ANDA Products. As set forth above, on information and belief, if ANDA No. 218848 is approved, the DRL Defendants intend to commit acts of patent infringement in New Jersey, including marketing, distributing, offering for sale, and/or selling DRL's ANDA Products.

## **PATENTS-IN-SUIT**

27. The U.S. Patent and Trademark Office ("PTO") issued the '109 patent, entitled "Water-Soluble Iron-Carbohydrate Complexes, Production Thereof, and Medicaments Containing Said Complexes," on November 3, 2009 to inventors Peter Geisser, Erik Philipp, and Walter Richle. Vifor is the current assignee of the '109 patent and has the right to enforce it. The '109 patent expires on February 5, 2025, subject to further extensions. The '109 patent

claims, *inter alia*, compositions and methods of making iron carbohydrate complexes. A true and correct copy of the '109 patent is attached hereto as **Exhibit A**.

28. The PTO issued the '702 patent entitled "Methods and Compositions For Administration of Iron," on July 13, 2010 to inventors Mary Jane Helenek, Marc L. Tokars, and Richard P. Lawrence. At the time of its issuance, the '702 patent was assigned to Luitpold Pharmaceuticals, Inc., and on January 11, 2019, the assignment records for the '702 patent were amended to reflect that Luitpold Pharmaceuticals, Inc. had changed its name to "American Regent, Inc." The Change of Name of the assignee for the '702 patent is recorded by the PTO at Reel 048067, Frame 0271. American Regent is the current assignee of the '702 patent and has the right to enforce it. The '702 patent expires on February 15, 2028. The '702 patent claims, *inter alia*, methods of treating iron deficiency anemia by administering an iron carbohydrate complex. A true and correct copy of the '702 patent is attached hereto **Exhibit B**.

29. The PTO issued the '612 patent entitled "Methods and Compositions For Administration of Iron," on November 25, 2014 to inventors Mary Jane Helenek, Marc L. Tokars, and Richard P. Lawrence. At the time of its issuance, the '612 patent was assigned to Luitpold Pharmaceuticals, Inc., and on January 11, 2019, the assignment records for the '612 patent were amended to reflect that Luitpold Pharmaceuticals, Inc. had changed its name to "American Regent, Inc." The Change of Name of the assignee for the '612 patent is recorded by the PTO at Reel 048067, Frame 0271. American Regent is the current assignee of the '612 patent and has the right to enforce it. The '612 patent expires on January 8, 2027. The '612 patent claims, *inter alia*, methods of treating iron deficiency anemia by the administration of an iron carboxymaltose complex. A true and correct copy of the '612 patent is attached hereto as **Exhibit C**.

30.     The PTO issued the '260 patent entitled "Methods and Compositions For Administration of Iron," on June 21, 2022 to inventors Mary Jane Helenek, Marc L. Tokars, and Richard P. Lawrence.  American Regent is the current assignee of the '260 patent and has the right to enforce it.  The '260 patent expires on January 8, 2027.  The '260 patent claims, *inter alia*, methods of treating iron deficiency or dysfunctional iron metabolism by the administration of an iron carboxymaltose complex.  A true and correct copy of the '260 patent is attached hereto as **Exhibit D**.

31.     The PTO issued the '091 patent entitled "Methods and Compositions For Administration of Iron," on September 6, 2022 to inventors Mary Jane Helenek, Marc L. Tokars, and Richard P. Lawrence.  American Regent is the current assignee of the '091 patent and has the right to enforce it.  The '091 patent expires on January 8, 2027.  The '091 patent claims, *inter alia*, methods of treating a disease, disorder, or condition characterized by iron deficiency or dysfunctional iron metabolism by the administration of an iron carboxymaltose complex.  A true and correct copy of the '091 patent is attached hereto as **Exhibit E**.

32.     The PTO issued the '502 patent entitled "Methods and Compositions For Administration of Iron," on October 25, 2022 to inventors Mary Jane Helenek, Marc L. Tokars, and Richard P. Lawrence.  American Regent is the current assignee of the '502 patent and has the right to enforce it.  The '502 patent expires on January 8, 2027.  The '502 patent claims, *inter alia*, methods of treating iron deficiency anemia and functional iron deficiency by the administration of an iron carboxymaltose complex.  A true and correct copy of the '502 patent is attached hereto as **Exhibit F**.

## NDA NO. 203565 AND INJECTAFER®

33.     American Regent is the owner of New Drug Application ("NDA") No. 203565 for Injectafer® (ferric carboxymaltose), which the FDA approved on July 25, 2013.  The Orange

Book lists the NDA holder as "American Regent, Inc.," in accordance with the name change from "Luitpold Pharmaceuticals, Inc." to "American Regent, Inc.," effective January 2, 2019.

34. In conjunction with NDA No. 203565, American Regent listed with the FDA, *inter alia*, the '109, '702, and '612 patents. American Regent subsequently timely listed the '260, '091, and '502 patents with the FDA after those patents issued. All six patents—the '109, '702, '612, '260, '091, and '502 patents—are currently listed in the Orange Book for Injectafer®.

35. Injectafer® is covered by one or more claims of each of the '109, '702, '612, '260, '091, and '502 patents.

36. Injectafer® is currently approved to treat iron deficiency anemia in certain patients and iron deficiency in adult patents with heart failure and New York Heart Association class II/III to improve exercise capacity. A true and correct copy of the current Injectafer® label is attached as **Exhibit G**.

## THE DRL DEFENDANTS' INFRINGING ANDA SUBMISSION

37. Plaintiffs received a letter from the DRL Defendants dated April 24, 2024, purporting to be a "Notice of Paragraph IV Certification Re: Dr. Reddy's Laboratories, Ltd.'s and/or Dr. Reddy's Laboratories, Inc.'s Ferric Carboxymaltose Injection; U.S. Patent Nos. 7,612,109; 7,754,702; 8,895,612; 11,364,260; 11,433,091, and 11,478,502" for ANDA No. 218848 pursuant to 21 U.S.C. § 355(j)(2)(B) and 21 § C.F.R. 314.95 ("DRL's Notice Letter").

38. DRL's Notice Letter states that DRL Inc. "on behalf of" DRL Ltd. "filed patent certifications . . . in support of DRL's Abbreviated New Drug Application" and is seeking approval to engage in the commercial manufacture, use, and/or sale of DRL's ANDA Products before the expiration of the '109, '702, '612, '260, '091, and '502 patents.

39. On information and belief, the DRL Defendants submitted ANDA No. 218848 to FDA under Section 505(j) of the Act, 21 U.S.C. § 355(j), seeking approval to, and intending to,

manufacture, use, import, offer to sell, and/or sell DRL's ANDA Products, either by itself or through its parent corporation, subsidiaries, and/or affiliates, throughout the United States before the expiration of the '109, '702, '612, '260, '091, and '502 patents.

40.    On information and belief, each of the DRL Defendants has made, and continues to make, substantial preparation in the United States to manufacture, use, import, offer to sell, and/or sell DRL's ANDA Products, either by itself or through its parent corporation, subsidiaries, and/or affiliates, before the expiration of the '109, '702, '612, '260, '091, and '502 patents.

41.    By filing ANDA No. 218848, and as indicated in DRL's Notice Letter, the DRL Defendants have represented to the FDA that DRL's ANDA Products have the same active ingredient as Injectafer®, have the same dosage forms and strengths as Injectafer®, and are bioequivalent to Injectafer®.

42.    On information and belief, the DRL Defendants are seeking approval to market DRL's ANDA Products for the same approved indications as Injectafer®.

43.    DRL's Notice Letter states that it has attached a "[d]etailed statement of the legal and factual bases for the Paragraph IV Certification" and "has certified with the FDA that . . . the '109, '702, '612, '260, '091, and '502 patents are invalid, unenforceable, or will not be infringed by the manufacture, use, or sale of DRL's ANDA Products . . . pursuant to 21 U.S.C. § 355(j)(2)(B)(iv)(II) and 21 C.F.R. § 314.95(c)(7)."

## COUNT I (INFRINGEMENT OF THE '109 PATENT)

44.    Plaintiffs allege, and incorporate in full herein, each of the preceding paragraphs 1–43.

45.    The claims of the '109 patent are presumed valid under 35 U.S.C. § 282.

46.    Under 35 U.S.C. § 271(e)(2)(A), the DRL Defendants have infringed at least one

claim of the '109 patent by submitting, or causing to be submitted to the FDA, ANDA No. 218848 seeking approval to engage in the commercial manufacture, use, or sale of DRL's ANDA Products before the expiration date of the '109 patent.  On information and belief, the product described in ANDA No. 218848 would infringe, either literally or under the doctrine of equivalents, at least one claim of the '109 patent under 35 U.S.C. § 271(e)(2)(A).

47.    In DRL's Notice Letter, the DRL Defendants did not provide any allegation that DRL's ANDA Products do not fall within the scope of certain claims of the '109 patent, and therefore admit infringement of the '109 patent.

48.    On information and belief, based on DRL's Notice Letter, the absence of any allegation that DRL's ANDA Products do not fall within the scope of claims of the '109 patent in DRL's Notice Letter, the fact that the DRL Defendants have represented to the FDA that DRL's ANDA Products are bioequivalent, pharmaceutically equivalent, and therapeutically equivalent to Injectafer®, and the fact that, pursuant to 21 C.F.R. § 314.94, the DRL Defendants are required to substantially copy the FDA-approved Injectafer® labeling, DRL's ANDA Products comprise an aqueous solution of ferric carboxymaltose which is formulated for parenteral application, wherein the ferric carboxymaltose, an iron carbohydrate complex, has a weight average molecular weight of 80,000 to 300,000 daltons, and satisfies all of the limitations of one or more claim of the '109 patent.

49.    On information and belief, the DRL Defendants intend to engage in the commercial manufacture, use, offer for sale, sale, marketing, distributing, and/or importation of DRL's ANDA Products prior to the expiration of the '109 patent immediately and imminently upon final approval of ANDA No. 218848.  The commercial manufacture, use, offer for sale, sale, marketing, distributing, and/or importation of DRL's ANDA Products prior to the

expiration of the '109 patent would infringe one or more claims of the '109 patent.

50.     On information and belief, upon FDA approval of DRL's ANDA Products, the DRL Defendants will infringe at least one claim of the '109 patent under 35 U.S.C. § 271(a) either literally or under the doctrine of equivalents, by making, using, importing, offering to sell, and/or selling DRL's ANDA Products in the United States, and/or will induce and/or contribute to infringement of one or more claims of the '109 patent under 35 U.S.C. §§ 271(b) and/or (c), unless enjoined by the Court.

51.     On information and belief, the DRL Defendants have knowledge of the '109 patent and have filed ANDA No. 218848 seeking authorization to engage in the commercial manufacture, use, or sale of DRL's ANDA Products in the United States.  On information and belief, if the FDA approves ANDA No. 218848, healthcare professionals and/or patients will directly infringe under 35 U.S.C. § 271(a), either literally or under the doctrine of equivalents, at least one claim of the '109 patent by the use DRL's ANDA Products according to the DRL Defendants' provided instructions and/or label.

52.     On information and belief, the DRL Defendants know and intend that healthcare professionals and/or patients will use DRL's ANDA Products according to the DRL Defendants' provided instructions and/or label in an infringing manner, and will therefore induce infringement of one or more claims of the '109 patent with the requisite intent under 35 U.S.C. § 271(b).

53.     Upon information and belief, upon approval, the DRL Defendants will take active steps to encourage the use of DRL's ANDA Products by healthcare professionals and/or patients with the knowledge and intent that it will be used by healthcare professionals and/or patients in a manner that infringes at least one claim of the '109 patent for the pecuniary benefit of the DRL

Defendants. Upon information and belief, the DRL Defendants will thus induce infringement of at least one claim of the '109 patent with the requisite intent under 35 U.S.C. § 271(b). Upon information and belief, the DRL Defendants will have actual knowledge of the '109 patent and will actively induce infringement of the '109 patent immediately and imminently upon approval of its ANDA.

54. On information and belief, if the FDA approves ANDA No. 218848, DRL's ANDA Products will be specifically labeled for use in practicing at least one claim of the '109 patent, wherein DRL's ANDA Products are a material part of the claimed invention, wherein the DRL Defendants know and intend that healthcare professionals and/or patients will use DRL's ANDA Products in accordance with the instructions and/or label provided by the DRL Defendants in practicing at least one claim of the '109 patent, and wherein DRL's ANDA Products are not a staple article or commodity of commerce suitable for substantial non-infringing use. Upon information and belief, the DRL Defendants will thus contribute to the infringement of at least one claim of the '109 patent under 35 U.S.C. § 271(c).

55. Upon information and belief, the DRL Defendants' actions relating to ANDA No. 218848 complained of herein were done by and for the benefit of the DRL Defendants.

56. If the DRL Defendants' marketing and sale of DRL's ANDA Products prior to the expiration of the '109 patent is not enjoined, Plaintiffs will suffer substantial and irreparable harm for which there is no adequate remedy at law.

## COUNT II (INFRINGEMENT OF THE '702 PATENT)

57. Plaintiffs allege, and incorporate in full herein, each of the preceding paragraphs 1–56.

58. Claims 4–9, 16–22, 24, 26, 31–40, and 44–57 of the '702 patent are presumed valid under 35 U.S.C. § 282.

59.     Under 35 U.S.C. § 271(e)(2)(A), the DRL Defendants have infringed at least one claim of the '702 patent by submitting, or causing to be submitted to the FDA, ANDA No. 218848 seeking approval to engage in the commercial manufacture, use, or sale of DRL's ANDA Products before the expiration date of the '702 patent.  On information and belief, the product described in ANDA No. 218848 would infringe, either literally or under the doctrine of equivalents, at least one claim of the '702 patent under 35 U.S.C. § 271(e)(2)(A).

60.     In DRL's Notice Letter, the DRL Defendants did not provide any allegation that DRL's ANDA Products do not fall within the scope of the claims of the '702 patent, and therefore admit infringement of the '702 patent.

61.     On information and belief, based on DRL's Notice Letter, the absence of any allegation that DRL's ANDA Products do not fall within the scope of the claims of the '702 patent in DRL's Notice Letter, the fact that the DRL Defendants have represented to the FDA that DRL's ANDA Products are bioequivalent, pharmaceutically equivalent, and therapeutically equivalent to Injectafer®, and the fact that, pursuant to 21 C.F.R. § 314.94, the DRL Defendants are required to substantially copy the FDA-approved Injectafer® labeling, DRL's ANDA Products comprise an iron carboxymaltose complex having a molecular weight of about 100,000 daltons to about 350,000 daltons, and will be used in a method of treating iron deficiency anemia, whereby DRL's ANDA Products will be administered intravenously in about 15 minutes or less to a subject in need thereof in a single dosage unit of at least about 0.6 grams of elemental iron, and the use of DRL's ANDA Products will satisfy all of the limitations of one or more claims of the '702 patent.

62.     On information and belief, the DRL Defendants intend to engage in the commercial manufacture, use, offer for sale, sale, marketing, distributing, and/or importation of

DRL's ANDA Products prior to the expiration of the '702 patent immediately and imminently upon final approval of ANDA No. 218848. The commercial manufacture, use, offer for sale, sale, marketing, distributing, and/or importation of DRL's ANDA Products prior to the expiration of the '702 patent would infringe one or more claims of the '702 patent.

63. On information and belief, upon FDA approval of DRL's ANDA Products, the DRL Defendants will induce and/or contribute to the infringement of one or more claims of the '702 patent under 35 U.S.C. §§ 271(b) and/or (c), unless enjoined by the Court.

64. On information and belief, the DRL Defendants have knowledge of the '702 patent and have filed ANDA No. 218848 seeking authorization to engage in the commercial manufacture, use, or sale of DRL's ANDA Products in the United States. On information and belief, if the FDA approves ANDA No. 218848, healthcare professionals and/or patients will directly infringe under 35 U.S.C. § 271(a), either literally or under the doctrine of equivalents, at least one claim of the '702 patent by the use DRL's ANDA Products according to the DRL Defendants' provided instructions and/or label.

65. On information and belief, the DRL Defendants know and intend that healthcare professionals and/or patients will use DRL's ANDA Products according to the DRL Defendants' provided instructions and/or label in an infringing manner, and will therefore induce infringement of one or more claims of the '702 patent with the requisite intent under 35 U.S.C. § 271(b).

66. Upon information and belief, upon approval, the DRL Defendants will take active steps to encourage the use of DRL's ANDA Products by healthcare professionals and/or patients with the knowledge and intent that it will be used by healthcare professionals and/or patients in a manner that infringes at least one claim of the '702 patent for the pecuniary benefit of the DRL

Defendants. Upon information and belief, the DRL Defendants will thus induce infringement of at least one claim of the '702 patent with the requisite intent under 35 U.S.C. § 271(b). Upon information and belief, the DRL Defendants will have actual knowledge of the '702 patent and will actively induce infringement of the '702 patent immediately and imminently upon approval of its ANDA.

67.     On information and belief, if the FDA approves ANDA No. 218848, DRL's ANDA Products will be specifically labeled for use in practicing at least one claim of the '702 patent, wherein DRL's ANDA Products are a material part of the claimed invention, wherein the DRL Defendants know and intend that healthcare professionals and/or patients will use DRL's ANDA Products in accordance with the instructions and/or label provided by the DRL Defendants in practicing at least one claim of the '702 patent, and wherein DRL's ANDA Products are not a staple article or commodity of commerce suitable for substantial non-infringing use. Upon information and belief, the DRL Defendants will thus contribute to the infringement of at least one claim of the '702 patent under 35 U.S.C. § 271(c).

68.     Upon information and belief, the DRL Defendants' actions relating to ANDA No. 218848 complained of herein were done by and for the benefit of the DRL Defendants.

69.     If the DRL Defendants' marketing and sale of DRL's ANDA Products prior to the expiration of the '702 patent is not enjoined, Plaintiffs will suffer substantial and irreparable harm for which there is no adequate remedy at law.

## **COUNT III (INFRINGEMENT OF THE '612 PATENT)**

70.     Plaintiffs allege, and incorporate in full herein, each of the preceding paragraphs 1–69.

71.     The claims of the '612 patent are presumed valid under 35 U.S.C. § 282.

72.     Under 35 U.S.C. § 271(e)(2)(A), the DRL Defendants have infringed at least one

claim of the '612 patent by submitting, or causing to be submitted to the FDA, ANDA No. 218848 seeking approval to engage in the commercial manufacture, use, or sale of DRL's ANDA Products before the expiration date of the '612 patent. On information and belief, the product described in ANDA No. 218848 would infringe, either literally or under the doctrine of equivalents, at least one claim of the '612 patent under 35 U.S.C. § 271(e)(2)(A).

73.    In DRL's Notice Letter, the DRL Defendants did not provide any allegation that DRL's ANDA Products do not fall within the scope of any claim of the '612 patent and therefore admit infringement of the '612 patent.

74.    On information and belief, based on DRL's Notice Letter, the absence of any allegation that DRL's ANDA Products do not fall within the scope of the claims of the '612 patent in DRL's Notice Letter, the fact that the DRL Defendants have represented to the FDA that DRL's ANDA Products are bioequivalent, pharmaceutically equivalent, and therapeutically equivalent to Injectafer®, and the fact that, pursuant to 21 C.F.R. § 314.94, the DRL Defendants are required to substantially copy the FDA-approved Injectafer® labeling, DRL's ANDA Products comprise an iron carboxymaltose complex having a substantially non-immunogenic carbohydrate component and substantially no cross reactivity with anti-dextran antibodies, and will be used in a method of treating iron deficiency anemia associated with chronic kidney disease and/or heavy uterine bleeding, whereby DRL's ANDA Products will be administered in about 15 minutes or less to a subject in need thereof in a single dosage unit of at least about 0.6 grams of elemental iron, and the use of DRL's ANDA Products will satisfy all of the limitations of one or more claims of the '612 patent.

75.    On information and belief, the DRL Defendants intend to engage in the commercial manufacture, use, offer for sale, sale, marketing, distributing, and/or importation of

DRL's ANDA Products prior to the expiration of the '612 patent immediately and imminently upon final approval of ANDA No. 218848. The commercial manufacture, use, offer for sale, sale, marketing, distributing, and/or importation of DRL's ANDA Products prior to the expiration of the '612 patent would infringe one or more claims of the '612 patent.

76.     On information and belief, upon FDA approval of DRL's ANDA Products, the DRL Defendants will induce and/or contribute to the infringement of one or more claims of the '612 patent under 35 U.S.C. §§ 271(b) and/or (c), unless enjoined by the Court.

77.     On information and belief, the DRL Defendants have knowledge of the '612 patent and have filed ANDA No. 218848 seeking authorization to engage in the commercial manufacture, use, or sale of DRL's ANDA Products in the United States. On information and belief, if the FDA approves ANDA No. 218848, healthcare professionals and/or patients will directly infringe under 35 U.S.C. § 271(a), either literally or under the doctrine of equivalents, at least one claim of the '612 patent by the use DRL's ANDA Products according to the DRL Defendants' provided instructions and/or label.

78.     On information and belief, the DRL Defendants know and intend that healthcare professionals and/or patients will use DRL's ANDA Products according to the DRL Defendants' provided instructions and/or label in an infringing manner, and will therefore induce infringement of one or more claims of the '612 patent with the requisite intent under 35 U.S.C. § 271(b).

79.     Upon information and belief, upon approval, the DRL Defendants will take active steps to encourage the use of DRL's ANDA Products by healthcare professionals and/or patients with the knowledge and intent that it will be used by healthcare professionals and/or patients in a manner that infringes at least one claim of the '612 patent for the pecuniary benefit of the DRL

Defendants.  Upon information and belief, the DRL Defendants will thus induce infringement of at least one claim of the '612 patent with the requisite intent under 35 U.S.C. § 271(b).  Upon information and belief, the DRL Defendants will have actual knowledge of the '612 patent and will actively induce infringement of the '612 patent immediately and imminently upon approval of its ANDA.

80.     On information and belief, if the FDA approves ANDA No. 218848, DRL's ANDA Products will be specifically labeled for use in practicing at least one claim of the '612 patent, wherein DRL's ANDA Products are a material part of the claimed invention, wherein the DRL Defendants know and intend that healthcare professionals and/or patients will use DRL's ANDA Products in accordance with the instructions and/or label provided by the DRL Defendants in practicing at least one claim of the '612 patent, and wherein DRL's ANDA Products are not a staple article or commodity of commerce suitable for substantial non-infringing use.   Upon information and belief, the DRL Defendants will thus contribute to the infringement of at least one claim of the '612 patent under 35 U.S.C. § 271(c).

81.     Upon information and belief, the DRL Defendants' actions relating to ANDA No. 218848 complained of herein were done by and for the benefit of the DRL Defendants.

82.     If the DRL Defendants' marketing and sale of DRL's ANDA Products prior to the expiration of the '612 patent is not enjoined, Plaintiffs will suffer substantial and irreparable harm for which there is no adequate remedy at law.

## COUNT IV (INFRINGEMENT OF THE '260 PATENT)

83.     Plaintiffs allege, and incorporate in full herein, each of the preceding paragraphs 1–82.

84.     The claims of the '260 patent are presumed valid under 35 U.S.C. § 282.

85.     Under 35 U.S.C. § 271(e)(2)(A), the DRL Defendants have infringed at least one

claim of the '260 patent by submitting, or causing to be submitted to the FDA, ANDA No.
218848 seeking approval to engage in the commercial manufacture, use, or sale of DRL's
ANDA Products before the expiration date of the '260 patent. On information and belief, the
product described in ANDA No. 218848 would infringe, either literally or under the doctrine of
equivalents, at least one claim of the '260 patent under 35 U.S.C. § 271(e)(2)(A).

86.     In DRL's Notice Letter, the DRL Defendants did not provide any allegation that
DRL's ANDA Products do not fall within the scope of the claims of the '260 patent, and
therefore admit infringement of the '260 patent.

87.     On information and belief, based on DRL's Notice Letter, the absence of any
allegation that DRL's ANDA Products do not fall within the scope of the claims of the '260
patent in DRL's Notice Letter, the fact that the DRL Defendants have represented to the FDA
that DRL's ANDA Products are bioequivalent, pharmaceutically equivalent, and therapeutically
equivalent to Injectafer®, and the fact that, pursuant to 21 C.F.R. § 314.94, the DRL Defendants
are required to substantially copy the FDA-approved Injectafer® labeling, DRL's ANDA
Products comprise an iron carboxymaltose complex having a substantially non-immunogenic
carbohydrate component and substantially no cross reactivity with anti-dextran antibodies, and
will be used in a method of treating iron deficiency or dysfunctional iron metabolism associated
with cardiomyopathy, whereby DRL's ANDA Products will be administered intravenously in
about 15 minutes or less to a subject in need thereof in a single dosage unit of at least about 0.6
grams of elemental iron, and the use of DRL's ANDA Products will satisfy all of the limitations
of one or more claims of the '260 patent.

88.     On information and belief, the DRL Defendants intend to engage in the
commercial manufacture, use, offer for sale, sale, marketing, distributing, and/or importation of

DRL's ANDA Products prior to the expiration of the '260 patent immediately and imminently upon final approval of ANDA No. 218848. The commercial manufacture, use, offer for sale, sale, marketing, distributing, and/or importation of DRL's ANDA Products prior to the expiration of the '260 patent would infringe one or more claims of the '260 patent.

89. On information and belief, upon FDA approval of DRL's ANDA Products, the DRL Defendants will induce and/or contribute to the infringement of one or more claims of the '260 patent under 35 U.S.C. §§ 271(b) and/or (c), unless enjoined by the Court.

90. On information and belief, the DRL Defendants have knowledge of the '260 patent and have filed ANDA No. 218848 seeking authorization to engage in the commercial manufacture, use, or sale of DRL's ANDA Products in the United States. On information and belief, if the FDA approves ANDA No. 218848, healthcare professionals and/or patients will directly infringe under 35 U.S.C. § 271(a), either literally or under the doctrine of equivalents, at least one claim of the '260 patent by the use DRL's ANDA Products according to the DRL Defendants' provided instructions and/or label.

91. On information and belief, the DRL Defendants know and intend that healthcare professionals and/or patients will use DRL's ANDA Products according to the DRL Defendants' provided instructions and/or label in an infringing manner, and will therefore induce infringement of one or more claims of the '260 patent with the requisite intent under 35 U.S.C. § 271(b).

92. Upon information and belief, upon approval, the DRL Defendants will take active steps to encourage the use of DRL's ANDA Products by healthcare professionals and/or patients with the knowledge and intent that it will be used by healthcare professionals and/or patients in a manner that infringes at least one claim of the '260 patent for the pecuniary benefit of the DRL

Defendants.  Upon information and belief, the DRL Defendants will thus induce infringement of at least one claim of the '260 patent with the requisite intent under 35 U.S.C. § 271(b).  Upon information and belief, the DRL Defendants will have actual knowledge of the '260 patent and will actively induce infringement of the '260 patent immediately and imminently upon approval of its ANDA.

93.     On information and belief, if the FDA approves ANDA No. 218848, DRL's ANDA Products will be specifically labeled for use in practicing at least one claim of the '260 patent, wherein DRL's ANDA Products are a material part of the claimed invention, wherein the DRL Defendants know and intend that healthcare professionals and/or patients will use DRL's ANDA Products in accordance with the instructions and/or label provided by the DRL Defendants in practicing at least one claim of the '260 patent, and wherein DRL's ANDA Products are not a staple article or commodity of commerce suitable for substantial non-infringing use.   Upon information and belief, the DRL Defendants will thus contribute to the infringement of at least one claim of the '260 patent under 35 U.S.C. § 271(c).

94.     Upon information and belief, the DRL Defendants' actions relating to ANDA No. 218848 complained of herein were done by and for the benefit of the DRL Defendants.

95.     If the DRL Defendants' marketing and sale of DRL's ANDA Products prior to the expiration of the '260 patent is not enjoined, Plaintiffs will suffer substantial and irreparable harm for which there is no adequate remedy at law.

### COUNT V (INFRINGEMENT OF THE '091 PATENT)

96.     Plaintiffs allege, and incorporate in full herein, each of the preceding paragraphs 1–95.

97.     The claims of the '091 patent are presumed valid under 35 U.S.C. § 282.

98.     Under 35 U.S.C. § 271(e)(2)(A), the DRL Defendants have infringed at least one

claim of the '091 patent by submitting, or causing to be submitted to the FDA, ANDA No. 218848 seeking approval to engage in the commercial manufacture, use, or sale of DRL's ANDA Products before the expiration date of the '091 patent. On information and belief, the product described in ANDA No. 218848 would infringe, either literally or under the doctrine of equivalents, at least one claim of the '091 patent under 35 U.S.C. § 271(e)(2)(A).

99.     In DRL's Notice Letter, the DRL Defendants did not provide any allegation that DRL's ANDA Products do not fall within the scope of the claims of the '091 patent, and therefore admit infringement of the '091 patent.

100.     On information and belief, based on DRL's Notice Letter, the absence of any allegation that DRL's ANDA Products do not fall within the scope of the claims of the '091 patent in DRL's Notice Letter, the fact that the DRL Defendants have represented to the FDA that DRL's ANDA Products are bioequivalent, pharmaceutically equivalent, and therapeutically equivalent to Injectafer®, and the fact that, pursuant to 21 C.F.R. § 314.94, the DRL Defendants are required to substantially copy the FDA-approved Injectafer® labeling, DRL's ANDA Products comprise an iron carboxymaltose complex, and will be used in a method of treating anemia, whereby DRL's ANDA Products will be administered intravenously to a human subject in need thereof in a single dosage unit of at least about 0.7 grams of elemental iron in 15 minutes or less, and the use of DRL's ANDA Products will satisfy all of the limitations of one or more claims of the '091 patent.

101.     On information and belief, the DRL Defendants intend to engage in the commercial manufacture, use, offer for sale, sale, marketing, distributing, and/or importation of DRL's ANDA Products prior to the expiration of the '091 patent immediately and imminently upon final approval of ANDA No. 218848. The commercial manufacture, use, offer for sale,

sale, marketing, distributing, and/or importation of DRL's ANDA Products prior to the expiration of the '091 patent would infringe one or more claims of the '091 patent.

102.    On information and belief, upon FDA approval of DRL's ANDA Products, the DRL Defendants will induce and/or contribute to the infringement of one or more claims of the '091 patent under 35 U.S.C. §§ 271(b) and/or (c), unless enjoined by the Court.

103.    On information and belief, the DRL Defendants have knowledge of the '091 patent and have filed ANDA No. 218848 seeking authorization to engage in the commercial manufacture, use, or sale of DRL's ANDA Products in the United States.  On information and belief, if the FDA approves ANDA No. 218848, healthcare professionals and/or patients will directly infringe under 35 U.S.C. § 271(a), either literally or under the doctrine of equivalents, at least one claim of the '091 patent by the use DRL's ANDA Products according to the DRL Defendants' provided instructions and/or label.

104.    On information and belief, the DRL Defendants know and intend that healthcare professionals and/or patients will use DRL's ANDA Products according to the DRL Defendants' provided instructions and/or label in an infringing manner, and will therefore induce infringement of one or more claims of the '091 patent with the requisite intent under 35 U.S.C. § 271(b).

105.    Upon information and belief, upon approval, the DRL Defendants will take active steps to encourage the use of DRL's ANDA Products by healthcare professionals and/or patients with the knowledge and intent that it will be used by healthcare professionals and/or patients in a manner that infringes at least one claim of the '091 patent for the pecuniary benefit of the DRL Defendants.  Upon information and belief, the DRL Defendants will thus induce infringement of at least one claim of the '091 patent with the requisite intent under 35 U.S.C. § 271(b).  Upon

information and belief, the DRL Defendants will have actual knowledge of the '091 patent and will actively induce infringement of the '091 patent immediately and imminently upon approval of its ANDA.

106.    On information and belief, if the FDA approves ANDA No. 218848, DRL's ANDA Products will be specifically labeled for use in practicing at least one claim of the '091 patent, wherein DRL's ANDA Products are a material part of the claimed invention, wherein the DRL Defendants know and intend that healthcare professionals and/or patients will use DRL's ANDA Products in accordance with the instructions and/or label provided by the DRL Defendants in practicing at least one claim of the '091 patent, and wherein DRL's ANDA Products are not a staple article or commodity of commerce suitable for substantial non-infringing use.   Upon information and belief, the DRL Defendants will thus contribute to the infringement of at least one claim of the '091 patent under 35 U.S.C. § 271(c).

107.    Upon information and belief, the DRL Defendants' actions relating to ANDA No. 218848 complained of herein were done by and for the benefit of the DRL Defendants.

108.    If the DRL Defendants' marketing and sale of DRL's ANDA Products prior to the expiration of the '091 patent is not enjoined, Plaintiffs will suffer substantial and irreparable harm for which there is no adequate remedy at law.

## COUNT VI (INFRINGEMENT OF THE '502 PATENT)

109.    Plaintiffs allege, and incorporate in full herein, each of the preceding paragraphs 1–108.

110.    The claims of the '502 patent are presumed valid under 35 U.S.C. § 282.

111.    Under 35 U.S.C. § 271(e)(2)(A), the DRL Defendants have infringed at least one claim of the '502 patent by submitting, or causing to be submitted to the FDA, ANDA No. 218848 seeking approval to engage in the commercial manufacture, use, or sale of DRL's

ANDA Products before the expiration date of the '502 patent. On information and belief, the product described in ANDA No. 218848 would infringe, either literally or under the doctrine of equivalents, at least one claim of the '502 patent under 35 U.S.C. § 271(e)(2)(A).

112.    In DRL's Notice Letter, the DRL Defendants did not provide any allegation that DRL's ANDA Products do not fall within the scope of the claims of the '502 patent, and therefore admit infringement of the '502 patent.

113.    On information and belief, based on DRL's Notice Letter, the absence of any allegation that DRL's ANDA Products do not fall within the scope of the claims of the '502 patent in DRL's Notice Letter, the fact that the DRL Defendants have represented to the FDA that DRL's ANDA Products are bioequivalent, pharmaceutically equivalent, and therapeutically equivalent to Injectafer®, and the fact that, pursuant to 21 C.F.R. § 314.94, the DRL Defendants are required to substantially copy the FDA-approved Injectafer® labeling, DRL's ANDA Products comprise a polynuclear iron (III)-hydroxide 4(R)-(poly-(1→4)-O-α-D-glucopyranosyl)-oxy-2(R),3(R),5(R),6-tetrahydroxy-hexanoate, and will be used in a method of treating iron deficiency anemia or functional iron deficiency and result in increased transferrin saturation, whereby DRL's ANDA Products will be administered intravenously in about 15 minutes or less to an adult human subject in need thereof in a single dosage unit of at least about 0.6 grams of elemental iron, and the use of DRL's ANDA Products will satisfy all of the limitations of one or more claims of the '502 patent.

114.    On information and belief, the DRL Defendants intend to engage in the commercial manufacture, use, offer for sale, sale, marketing, distributing, and/or importation of DRL's ANDA Products prior to the expiration of the '502 patent immediately and imminently upon final approval of ANDA No. 218848. The commercial manufacture, use, offer for sale,

sale, marketing, distributing, and/or importation of DRL's ANDA Products prior to the expiration of the '502 patent would infringe one or more claims of the '502 patent.

115.    On information and belief, upon FDA approval of DRL's ANDA Products, the DRL Defendants will induce and/or contribute to the infringement of one or more claims of the '502 patent under 35 U.S.C. §§ 271(b) and/or (c), unless enjoined by the Court.

116.    On information and belief, the DRL Defendants have knowledge of the '502 patent and have filed ANDA No. 218848 seeking authorization to engage in the commercial manufacture, use, or sale of DRL's ANDA Products in the United States.  On information and belief, if the FDA approves ANDA No. 218848, healthcare professionals and/or patients will directly infringe under 35 U.S.C. § 271(a), either literally or under the doctrine of equivalents, at least one claim of the '502 patent by the use DRL's ANDA Products according to the DRL Defendants' provided instructions and/or label.

117.    On information and belief, the DRL Defendants know and intend that healthcare professionals and/or patients will use DRL's ANDA Products according to the DRL Defendants' provided instructions and/or label in an infringing manner, and will therefore induce infringement of one or more claims of the '502 patent with the requisite intent under 35 U.S.C. § 271(b).

118.    Upon information and belief, upon approval, the DRL Defendants will take active steps to encourage the use of DRL's ANDA Products by healthcare professionals and/or patients with the knowledge and intent that it will be used by healthcare professionals and/or patients in a manner that infringes at least one claim of the '502 patent for the pecuniary benefit of the DRL Defendants.  Upon information and belief, the DRL Defendants will thus induce infringement of at least one claim of the '502 patent with the requisite intent under 35 U.S.C. § 271(b).  Upon

information and belief, the DRL Defendants will have actual knowledge of the '502 patent and will actively induce infringement of the '502 patent immediately and imminently upon approval of its ANDA.

119.    On information and belief, if the FDA approves ANDA No. 218848, DRL's ANDA Products will be specifically labeled for use in practicing at least one claim of the '502 patent, wherein DRL's ANDA Products are a material part of the claimed invention, wherein the DRL Defendants know and intend that healthcare professionals and/or patients will use DRL's ANDA Products in accordance with the instructions and/or label provided by the DRL Defendants in practicing at least one claim of the '502 patent, and wherein DRL's ANDA Products are not a staple article or commodity of commerce suitable for substantial non-infringing use.   Upon information and belief, the DRL Defendants will thus contribute to the infringement of at least one claim of the '502 patent under 35 U.S.C. § 271(c).

120.    Upon information and belief, the DRL Defendants' actions relating to ANDA No. 218848 complained of herein were done by and for the benefit of the DRL Defendants.

121.    If the DRL Defendants' marketing and sale of DRL's ANDA Products prior to the expiration of the '502 patent is not enjoined, Plaintiffs will suffer substantial and irreparable harm for which there is no adequate remedy at law.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs respectfully request that this Court grant the following relief:

1.    A judgment that the claims of the '109, '702, '612, '260, '091, and '502 patents are not invalid or unenforceable, and are infringed by the DRL Defendants' submission of ANDA No. 218848 under 35 U.S.C. §271(e)(2)(A), and that the DRL Defendants' making, using, offering to sell, or selling in the United States, or importing into the United States, DRL's ANDA Products will infringe the '109, '702, '612, '260, '091, and '502 patents under 35 U.S.C.

§§ 271(a), (b), and/or (c);

2.      An order pursuant to 35 U.S.C. § 271(e)(4)(A) providing that the effective date of any approval by the FDA of ANDA No. 218848 shall be a date that is not earlier than the latest expiration date of the '109, '702, '612, '260, '091, and '502 patents, including any extensions and/or additional periods of exclusivity to which Plaintiffs are or become entitled;

3.      An order permanently enjoining each of the DRL Defendants and its parent corporation, affiliates, subsidiaries, and each of its officers, agents, servants, employees, and those acting in privity or concert with them, from making, using, offering to sell, or selling in the United States, or importing into the United States DRL's ANDA Products until after the last expiration date of the '109, '702, '612, '260, '091, and '502 patents, including any extensions and/or additional periods of exclusivity to which Plaintiffs are or become entitled, in accordance with 35 U.S.C. § 271(e)(4)(B) and 35 U.S.C. § 283;

4.      Damages or other monetary relief to Plaintiffs if the DRL Defendants engage in commercial manufacture, use, offers to sell, sale, or importation in or into the United States of DRL's ANDA Products prior to the latest expiration date of the '109, '702, '612, '260, '091, and '502 patents, including any extensions and/or additional periods of exclusivity to which Plaintiffs is or becomes entitled, in accordance with 35 U.S.C. § 271(e)(4)(C); and

5.      Such further and additional relief as this Court deems just and proper, including any appropriate relief under 35 U.S.C. § 285.

Dated: June 7, 2024

Respectfully submitted,

**McCARTER & ENGLISH, LLP**

By: _/s/ Cynthia S. Betz_
Cynthia S. Betz
Mark M. Makhail
Four Gateway Center
100 Mulberry Street
4 Gateway Center
Newark, NJ 07102
973-622-4444
cbetz@mccarter.com
mmakhail@mccarter.com

Of Counsel:

Jane M. Love, Ph.D.
Robert Trenchard
Allyson E. Parks
Emil Nachman
Spencer W. Vaughan
**GIBSON, DUNN & CRUTCHER LLP**
200 Park Avenue
New York, NY 10166-0193
212-351-4000
jlove@gibsondunn.com
rtrenchard@gibsondunn.com
aparks@gibsondunn.com
enachman@gibsondunn.com
svaughan@gibsondunn.com

*Attorneys for Plaintiffs Vifor (International)*
*AG and American Regent, Inc.*

## LOCAL RULE 11.2 CERTIFICATION

Pursuant to Local Civil Rule 11.2, I hereby certify that the matter in controversy is not the subject of any other action pending in any court or of any pending arbitration or administrative proceeding.

United States Patent Nos. 7,612,109 ("the '109 patent"); 7,754,702 ("the '702 patent"); and 8,895,612 ("the '612 patent") were the subject of now-closed proceedings before this Court including those cases consolidated under the matter *VIFOR (INTERNATIONAL) AG et al v. MYLAN LABORATORIES Ltd*., 3:19-cv-13955-FLW-DEA.  The Defendants in this matter were not involved in those cases.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.


Dated: June 7, 2024                                /s/ Cynthia S. Betz
                                                   Cynthia S. Betz



# EXHIBIT 3

Cynthia S. Betz
Mark M. Makhail
**McCARTER & ENGLISH, LLP**
100 Mulberry Street
4 Gateway Center
Newark, NJ 07102
973-622-4444
cbetz@mccarter.com
mmakhail@mccarter.com

*Attorneys for Plaintiff*
*American Regent, Inc.*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| AMERICAN REGENT, INC., | |
| Plaintiff, | Civil Action No. |
| v. | |
| MSN LABORATORIES PRIVATE LIMITED and MSN PHARMACEUTICALS INC., | |
| Defendants. | |

## COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff American Regent, Inc. ("American Regent"), by their attorneys, through this Complaint hereby alleges as follows:

## NATURE OF THE ACTION

1.       This is an action for patent infringement arising under the patent laws of the United States, Title 35, United States Code, against MSN Laboratories Private Limited ("MSN Pvt. Ltd.") and MSN Pharmaceuticals Inc. ("MSN Inc.") (MSN Pvt. Ltd. and MSN Inc., collectively, "the MSN Defendants").  This action relates to Abbreviated New Drug Application ("ANDA") No. 219580, filed by the MSN Defendants with the U.S. Food and Drug

Administration ("FDA") for approval to market a generic version of Plaintiff's Injectafer®, ferric carboxymaltose injection (100 mg Iron/2 mL; 500 mg Iron /10 mL; 750 mg Iron/15 mL; 1 g Iron /20 mL) ("MSN's ANDA Products") prior to the expiration of United States Patent No. 7,754,702 ("the '702 patent"). The '702 patent is listed in the FDA's Approved Drug Products with Therapeutic Equivalence Evaluations ("Orange Book") for Injectafer®.

## THE PARTIES

2.      Plaintiff American Regent is a corporation organized and existing under the laws of the State of New York, with a principal place of business at 5 Ramsey Road, Shirley, New York 11967. American Regent was formerly known as "Luitpold Pharmaceuticals, Inc.," until January 2, 2019, when its New York Certificate of Incorporation was amended to change the name of the corporation to "American Regent, Inc."

3.      American Regent was involved in the design and development of Injectafer®. American Regent markets, distributes, and sells injectable pharmaceutical drug products, including Injectafer®, in this judicial district and throughout the United States.

4.      On information and belief, Defendant MSN Pvt. Ltd. is a company organized and existing under the laws of the Republic of India and has a principal place of business at MSN House, Plot No. C-24, Industrial Estate, Sanath Nagar, Hyderabad, Telangana, 500018, India.

5.      On information and belief, MSN Pvt. Ltd. itself, and through its subsidiary and agent MSN Inc., develops, manufactures, and/or distributes generic drug products for marketing, sale, and/or use throughout the United States, including in this judicial district.

6.      On information and belief, Defendant MSN Inc. is a corporation organized and existing under the laws of the State of Delaware and is registered to conduct business in the State of New Jersey, with a principal place of business at 20 Duke Rd, Piscataway, New Jersey, 08854-3714.

7.      On information and belief, MSN Inc. is a wholly owned subsidiary of MSN Pvt. Ltd. and is controlled and/or dominated by MSN Pvt. Ltd.  On information and belief, MSN Pvt. Ltd. established MSN Inc. for the purposes of developing, manufacturing, and distributing its generic drug products throughout the United States, including in this judicial district.  On information and belief, MSN Inc. develops, manufactures, and/or distributes generic drug products for marketing, sale, and/or use throughout the United States, including in this judicial district.

## JURISDICTION AND VENUE

8.      This action arises under the patent laws of the United States, 35 U.S.C. §§ 100, e*t seq.*, and this Court has jurisdiction over the subject matter of this action under 28 U.S.C. §§ 1331, 1338(a), 2201, and 2202.

9.      On information and belief, this Court has personal jurisdiction over MSN Inc., under the New Jersey state long arm statute and consistent with due process of law, because MSN Inc. maintains its principal place of business in New Jersey.

10.      On information and belief, this Court has personal jurisdiction over MSN Pvt. Ltd., under the New Jersey state long arm statute and consistent with due process of law because MSN Pvt. Ltd. has extensive contacts with the State of New Jersey, including through its subsidiary MSN Inc., and regularly does business in this judicial district, including through its subsidiary MSN Inc.  Further, the MSN Defendants plan to sell their ANDA product in the State of New Jersey, which provides an independent basis for personal jurisdiction here.

11.      MSN Pvt. Ltd. has previously availed itself of the legal protections of the State of New Jersey by, among other things, selecting the State of New Jersey as the principal place of business for MSN Inc., admitting to jurisdiction in this judicial district, and/or pursuing counterclaims it this judicial district.  *See, e.g.*, *Esperion Therapeutics, Inc. v. MSN*

- 3 -

*Pharmaceuticals Inc. et al.*, Civil Action No. 24-06386 (D.N.J.) (MSN Pvt. Ltd. and MSN Inc. did not contest personal jurisdiction and asserted counterclaims); *AbbVie Inc. et al. v. MSN Pharmaceuticals Inc. et al.*, Civil Action No. 24-04662 (D.N.J.) (same); *BeiGene USA, Inc. et al. v. MSN Pharmaceuticals Inc. et al.*, Civil Action No. 24-01971 (D.N.J.) (same); *Jazz Pharmaceuticals Research UK Limited f/k/a GW Research Limited v. Apotex Inc. et al.*, Civil Action No. 23-23141 (D.N.J.) (same); *Jazz Pharmaceuticals Research UK Limited f/k/a GW Research Limited v. Teva Pharmaceuticals, Inc. et al.*, Civil Action No. 23-03914 (D.N.J.) (same); *GW Research Limited v. Teva Pharmaceuticals, Inc. et al.*, Civil Action No. 23-00018 (D.N.J.) (same); *Chiesi USA, Inc. et al. v. MSN Pharmaceuticals Inc. et al.*, Civil Action No. 19-18564 (D.N.J.) (same); *Mitsubishi Tanabe Pharma Corporation et al. v. MSN Laboratories Private Limited et al.*, Civil Action No. 19-18958 (D.N.J.) (same); *Bausch Health Ireland Limited et al. v. MSN Laboratories Private Limited et al.*, Civil Action No. 23-03333 (D.N.J.) (MSN Pvt. Ltd. and MSN Inc. did not contest personal jurisdiction and MSN Pvt. Ltd. asserted counterclaims); *Bausch Health Ireland Ltd. f/k/a Valeant Pharmaceuticals Ireland Ltd. et al. v. MSN Laboratories Private Limited et al.*, Civil Action No. 21-10057 (D.N.J.) (MSN Pvt. Ltd. and MSN Inc. did not contest personal jurisdiction and MSN Pvt. Ltd. asserted counterclaims).

12.     On information and belief, MSN Pvt. Ltd. and MSN Inc. are subject to personal jurisdiction in New Jersey because they regularly do or solicit business in New Jersey, engage in other persistent courses of conduct in New Jersey, and/or derive substantial revenue from services or things used or consumed in New Jersey, demonstrating that MSN Pvt. Ltd. and MSN Inc. have systematic and continuous contacts with this judicial district.

13.     On information and belief, MSN Pvt. Ltd. and MSN Inc. purposefully have conducted and continue to conduct business in this judicial district by manufacturing, importing,

marketing, and distributing pharmaceutical products, including generic drug products, either alone or through their parent corporation, subsidiaries, and/or affiliates, throughout the United States, including in this judicial district. The MSN Defendants further intend to sell their generic ANDA products in the State of New Jersey.

14.    On information and belief, MSN Inc. is registered to do business in the State of New Jersey under Entity Identification Number 0400627791, and MSN Inc. is also licensed to do business with the New Jersey Department of Health as a "Manufacturer and Wholesale[r]" of pharmaceuticals in the State of New Jersey (Registration Number 5006107). Moreover, on information and belief, MSN Inc. has appointed a registered agent in New Jersey for the receipt of service of process.

15.    On information and belief, MSN Pvt. Ltd. and MSN Inc. are subject to personal jurisdiction in this judicial district through their pursuit of regulatory approval for MSN's ANDA Products for the commercial manufacture, use, and/or sale of MSN's ANDA Products, if approved, in this judicial district and to residents of this judicial district. Through at least these activities, MSN Pvt. Ltd. and MSN Inc. have purposely availed themselves of the rights and benefits of New Jersey law such that they should reasonably anticipate being haled into court in this judicial district.

16.    On information and belief, consistent with their past practices, MSN Pvt. Ltd. and MSN Inc. acted collaboratively in the preparation and submission of ANDA No. 219580.

17.    On information and belief, and consistent with their past practices, following any FDA approval of ANDA No. 219580, MSN Pvt. Ltd. and MSN Inc. will work in concert with one another to make, use, offer to sell, and/or sell the generic drug products that are the subject of ANDA No. 219580 throughout the United States and/or import such generic drug products

into the United States, including in this judicial district.

18.     On information and belief, if ANDA No. 219580 is approved, MSN's ANDA

Products will be marketed, distributed, offered for sale, and/or sold in New Jersey; prescribed by

physicians practicing in New Jersey; administered by healthcare professionals located within

New Jersey; and/or used by patients in New Jersey, all of which will have a substantial effect on

New Jersey.

19.     On information and belief, if ANDA No. 219580 is approved, MSN Pvt. Ltd. and

MSN Inc. will import, market, distribute, offer for sale, and/or sell MSN's ANDA Products,

alone or through their parent corporation, subsidiaries, and/or affiliates in the United States,

including in New Jersey, and will derive substantial revenue from the use or consumption of

MSN's ANDA Products in the state of New Jersey.

20.     If ANDA No. 219580 is approved, American Regent will be harmed by the

marketing, distribution, offer for sale, and/or sale of MSN's ANDA Products, including in New

Jersey.

21.     On information and belief, venue is proper in this judicial district under 28 U.S.C.

§§ 1391 and 1400(b) at least because MSN Inc. has its principal place of business in the State of

New Jersey, and has committed acts of infringement in New Jersey.  MSN Pvt. Ltd. is a foreign

company not residing in any United States judicial district and may be sued in any judicial

district.  28 U.S.C. § 1391(c)(3).  Moreover, MSN Pvt. Ltd. and MSN Inc. have litigated

previous Hatch-Waxman patent infringement disputes in the District of New Jersey.

22.     On information and belief, MSN Inc. has committed acts of infringement under

the meaning of 28 U.S.C. § 1400(b) by submitting ANDA No. 219580 to the FDA, by taking

steps indicating its intent to market MSN's ANDA Products in New Jersey, and by the acts that it

non-speculatively intends to take in New Jersey if MSN's ANDA receives final FDA approval.

23.      On information and belief, MSN Inc. has a regular and established place of business in New Jersey under the meaning of 28 U.S.C. § 1400(b) because, *inter alia*, its principal place of business is in New Jersey.  As set forth above, on information and belief, MSN Inc. maintains regular and established places of business in New Jersey, including its headquarters, offices, laboratories, and/or facilities at 20 Duke Rd, Piscataway, New Jersey, 08854-3714.

24.      On information and belief, MSN Pvt. Ltd. and MSN Inc. have taken steps in New Jersey, including preparing ANDA No. 219580 and communicating with the FDA regarding ANDA No. 219580, that indicate their intent to market MSN's ANDA Products.  As set forth above, on information and belief, if ANDA No. 219580 is approved, the MSN Defendants intend to commit acts of patent infringement in New Jersey, including marketing, distributing, offering for sale, and/or selling MSN's ANDA Products.

## **PATENT-IN-SUIT**

25.      The U.S. Patent and Trademark Office ("PTO") issued the '702 patent entitled "Methods and Compositions For Administration of Iron," on July 13, 2010 to inventors Mary Jane Helenek, Marc L. Tokars, and Richard P. Lawrence.  At the time of its issuance, the '702 patent was assigned to Luitpold Pharmaceuticals, Inc., and on January 11, 2019, the assignment records for the '702 patent were amended to reflect that Luitpold Pharmaceuticals, Inc. had changed its name to "American Regent, Inc."  The Change of Name of the assignee for the '702 patent is recorded by the PTO at Reel 048067, Frame 0271.  American Regent is the current assignee of the '702 patent and has the right to enforce it.  The '702 patent expires on February 15, 2028.  The '702 patent claims, *inter alia*, methods of treating iron deficiency anemia by administering an iron carbohydrate complex.  A true and correct copy of the '702 patent is

attached hereto as **Exhibit A**.

### NDA NO. 203565 AND INJECTAFER®

26.     American Regent is the owner of New Drug Application ("NDA") No. 203565 for Injectafer® (ferric carboxymaltose), which the FDA approved on July 25, 2013.  The Orange Book lists the NDA holder as "American Regent, Inc.," in accordance with the name change from "Luitpold Pharmaceuticals, Inc." to "American Regent, Inc.," effective January 2, 2019.

27.     In conjunction with NDA No. 203565, American Regent listed with the FDA, *inter alia*, the '702 patent.

28.     Injectafer® is covered by one or more claims of the '702 patent.

29.     Injectafer® is currently approved to treat iron deficiency anemia in certain patients and iron deficiency in adult patients with heart failure and New York Heart Association class II/III to improve exercise capacity.  A true and correct copy of the current Injectafer® label is attached as **Exhibit B**.

### THE MSN DEFENDANTS' INFRINGING ANDA SUBMISSION

30.     Plaintiff received a letter from the MSN Defendants dated October 11, 2024, purporting to be a "Notice of Paragraph IV Certification Under 21 U.S.C. § 355(j)(2)(B) (§ 505(f)(2)(B)) of Federal Food, Drug and Cosmetic Act) and 21 C.F.R. § 314.95 of U.S. Patent No. 7,754,702 in ANDA No. 219580 for generic Ferric Carboxymaltose Injection, 750mg iron/l5ml (50mg iron/ml); 100mg iron/2ml (50mg iron/ml); 500mg iron/10ml (50mg iron/ml); and 1gm iron/20ml (50mg iron/ml) doses" ("MSN's Notice Letter").

31.     MSN's Notice Letter states that the MSN Defendants are seeking approval to engage in the commercial manufacture, use, and/or sale of MSN's ANDA Products before the expiration of the '702 patent.

32.     On information and belief, the MSN Defendants submitted ANDA No. 219580 to

- 8 -

FDA under Section 505(j) of the Act, 21 U.S.C. § 355(j), seeking approval to, and intending to, manufacture, use, import, offer to sell, and/or sell MSN's ANDA Products, either by itself or through its parent corporation, subsidiaries, and/or affiliates, throughout the United States before the expiration of the '702 patent.

33.     On information and belief, each of MSN's ANDA Products contains ferric carboxymaltose.

34.     On information and belief, each of the MSN Defendants has made, and continues to make, substantial preparation in the United States to manufacture, use, import, offer to sell, and/or sell MSN's ANDA Products, either by itself or through its parent corporation, subsidiaries, and/or affiliates, before the expiration of '702 patent.

35.     By filing ANDA No. 219580, and as indicated in MSN's Notice Letter, the MSN Defendants have represented to the FDA that MSN's ANDA Products have the same active ingredient as Injectafer®, have the same dosage forms and strengths as Injectafer®, and are bioequivalent to Injectafer®.

36.     On information and belief, the MSN Defendants are seeking approval to market MSN's ANDA Products for the same approved indications as Injectafer®.

37.     MSN's Notice Letter states that it has attached a "[d]etailed statement of the legal and factual bases of MSN's position for the paragraph IV certification for U.S. Patent No. 7,745,702" and "MSN has submitted a paragraph IV certification to the FDA, stating that in MSN's opinion and to the best of their knowledge, U.S. Patent No. 7,754,702, is invalid, unenforceable and/or will not be infringed by the commercial manufacture, use or sale of the drug product described in MSN's ANDA."

## COUNT I (INFRINGEMENT OF THE '702 PATENT)

38.     Plaintiff alleges, and incorporates in full herein, each of the preceding paragraphs

1–37.

39.     The claims of the '702 patent, including claims 4–9, 16–22, 24, 31–40, and 44–57, are presumed valid under 35 U.S.C. § 282.

40.     Under 35 U.S.C. § 271(e)(2)(A), the MSN Defendants have infringed at least one claim of the '702 patent by submitting, or causing to be submitted to the FDA, ANDA No. 219580 seeking approval to engage in the commercial manufacture, use, or sale of MSN's ANDA Products before the expiration date of the '702 patent.  On information and belief, the product described in ANDA No. 219580 would infringe, either literally or under the doctrine of equivalents, at least one claim of the '702 patent under 35 U.S.C. § 271(e)(2)(A).

41.     In MSN's Notice Letter, the MSN Defendants did not provide any allegation that MSN's ANDA Products do not fall within the scope of certain claims of the '702 patent, including claims 4, 21–22, 24, 31–40, and 44–57, and therefore admit infringement of the '702 patent.

42.     On information and belief, based on MSN's Notice Letter, the absence of any allegation that MSN's ANDA Products do not fall within the scope of claims of the '702 patent in MSN's Notice Letter, the fact that the MSN Defendants have represented to the FDA that MSN's ANDA Products are bioequivalent, pharmaceutically equivalent, and therapeutically equivalent to Injectafer®, and the fact that, pursuant to 21 C.F.R. § 314.94, the MSN Defendants are required to substantially copy the FDA-approved Injectafer® labeling, MSN's ANDA Products comprise an iron carboxymaltose complex having a molecular weight of about 100,000 daltons to about 350,000 daltons, and will be used in a method of treating iron deficiency anemia, whereby MSN's ANDA Products will be administered intravenously in about 15 minutes or less to a subject in need thereof in a single dosage unit of at least about 0.6 grams of

elemental iron, and the use of MSN's ANDA Products will satisfy all of the limitations of one or more claims of the '702 patent.

43.     On information and belief, the MSN Defendants intend to engage in the commercial manufacture, use, offer for sale, sale, marketing, distributing, and/or importation of MSN's ANDA Products prior to the expiration of the '702 patent immediately and imminently upon final approval of ANDA No. 219580.  The commercial manufacture, use, offer for sale, sale, marketing, distributing, and/or importation of MSN's ANDA Products prior to the expiration of the '702 patent would infringe one or more claims of the '702 patent.

44.     On information and belief, upon FDA approval of MSN's ANDA Products, the MSN Defendants will induce and/or contribute to the infringement of one or more claims of the '702 patent under 35 U.S.C. §§ 271(b) and/or (c), unless enjoined by the Court.

45.     On information and belief, the MSN Defendants have knowledge of the '702 patent and have filed ANDA No. 219580 seeking authorization to engage in the commercial manufacture, use, or sale of MSN's ANDA Products in the United States.  On information and belief, if the FDA approves ANDA No. 219580, healthcare professionals and/or patients will directly infringe under 35 U.S.C. § 271(a), either literally or under the doctrine of equivalents, at least one claim of the '702 patent by the use MSN's ANDA Products according to the MSN Defendants' provided instructions and/or label.

46.     On information and belief, the MSN Defendants know and intend that healthcare professionals and/or patients will use MSN's ANDA Products according to the MSN Defendants' provided instructions and/or label in an infringing manner, and will therefore induce infringement of one or more claims of the '702 patent with the requisite intent under 35 U.S.C. § 271(b).

47.     Upon information and belief, upon approval, the MSN Defendants will take active steps to encourage the use of MSN's ANDA Products by healthcare professionals and/or patients with the knowledge and intent that it will be used by healthcare professionals and/or patients in a manner that infringes at least one claim of the '702 patent for the pecuniary benefit of the MSN Defendants.  Upon information and belief, the MSN Defendants will thus induce infringement of at least one claim of the '702 patent with the requisite intent under 35 U.S.C. § 271(b).  Upon information and belief, the MSN Defendants will have actual knowledge of the '702 patent and will actively induce infringement of the '702 patent immediately and imminently upon approval of its ANDA.

48.     On information and belief, if the FDA approves ANDA No. 219580, MSN's ANDA Products will be specifically labeled for use in practicing at least one claim of the '702 patent, wherein MSN's ANDA Products are a material part of the claimed invention, wherein the MSN Defendants know and intend that healthcare professionals and/or patients will use MSN's ANDA Products in accordance with the instructions and/or label provided by the MSN Defendants in practicing at least one claim of the '702 patent, and wherein MSN's ANDA Products are not a staple article or commodity of commerce suitable for substantial non-infringing use.   Upon information and belief, the MSN Defendants will thus contribute to the infringement of at least one claim of the '702 patent under 35 U.S.C. § 271(c).

49.     Upon information and belief, the MSN Defendants' actions relating to ANDA No. 219580 complained of herein were done by and for the benefit of the MSN Defendants.

50.     If the MSN Defendants' marketing and sale of MSN's ANDA Products prior to the expiration of the '702 patent is not enjoined, Plaintiff will suffer substantial and irreparable harm for which there is no adequate remedy at law.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests that this Court grant the following relief:

1.       A judgment that the claims of the '702 patent are not invalid or unenforceable, and are infringed by the MSN Defendants' submission of ANDA No. 219580 under 35 U.S.C. §271(e)(2)(A), and that the MSN Defendants' making, using, offering to sell, or selling in the United States, or importing into the United States, MSN's ANDA Products will infringe the '702 patent under 35 U.S.C. §§ 271(b), (c), and/or (e);

2.       An order pursuant to 35 U.S.C. § 271(e)(4)(A) providing that the effective date of any approval by the FDA of ANDA No. 219580 shall be a date that is not earlier than the latest expiration date of the '702 patent, including any extensions and/or additional periods of exclusivity to which Plaintiff is or becomes entitled;

3.       An order permanently enjoining each of the MSN Defendants and its parent corporation, affiliates, subsidiaries, and each of its officers, agents, servants, employees, and those acting in privity or concert with them, from making, using, offering to sell, or selling in the United States, or importing into the United States MSN's ANDA Products until after the last expiration date of the '702 patent, including any extensions and/or additional periods of exclusivity to which Plaintiff is or becomes entitled, in accordance with 35 U.S.C. § 271(e)(4)(B) and 35 U.S.C. § 283;

4.       Damages or other monetary relief to Plaintiff if the MSN Defendants engage in commercial manufacture, use, offers to sell, sale, or importation in or into the United States of MSN's ANDA Products prior to the latest expiration date of the '702 patent, including any extensions and/or additional periods of exclusivity to which Plaintiff is or becomes entitled, in accordance with 35 U.S.C. § 271(e)(4)(C); and

5.      Such further and additional relief as this Court deems just and proper, including

any appropriate relief under 35 U.S.C. § 285.

Dated: November 22, 2024                       Respectfully submitted,

                                               **McCARTER & ENGLISH, LLP**


                                               By: _/s/ Cynthia S. Betz_____
                                               Cynthia S. Betz
Of Counsel:                                    Mark M. Makhail
                                               Four Gateway Center
Jane M. Love, Ph.D. (*pro hac vice* forthcoming)   100 Mulberry Street
Robert Trenchard (*pro hac vice* forthcoming)      4 Gateway Center
Allyson E. Parks (*pro hac vice* forthcoming)      Newark, NJ 07102
Emil Nachman (*pro hac vice* forthcoming)          973-622-4444
Spencer W. Vaughan (*pro hac vice* forthcoming)    cbetz@mccarter.com
**GIBSON, DUNN & CRUTCHER LLP**                    mmakhail@mccarter.com
200 Park Avenue
New York, NY 10166-0193                        *Attorneys for Plaintiff American Regent, Inc.*
212-351-4000
jlove@gibsondunn.com
rtrenchard@gibsondunn.com
aparks@gibsondunn.com
enachman@gibsondunn.com
svaughan@gibsondunn.com

## LOCAL RULE 11.2 CERTIFICATION

Pursuant to Local Civil Rule 11.2, I hereby certify that the matter in controversy is not the subject of any other action pending in any court or of any pending arbitration or administrative proceeding.

United States Patent No. 7,754,702 ("the '702 patent") is currently the subject of proceedings before this Court in *VIFOR (INTERNATIONAL) AG et al v. DR REDDY'S LABORATORIES, LTD. et al.*, 3:24-cv-06833-GC-JBD. The Defendants in this matter are not involved in that case.

United States Patent No. 7,754,702 ("the '702 patent") was previously the subject of now-closed proceedings before this Court including those cases consolidated under the matter *VIFOR (INTERNATIONAL) AG et al v. MYLAN LABORATORIES Ltd*., 3:19-cv-13955-FLW-DEA. The Defendants in this matter were not involved in those cases.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.


Dated: November 22, 2024                    */s/ Cynthia S. Betz*
                                            Cynthia S. Betz

# EXHIBIT 4

Cynthia S. Betz
Mark M. Makhail
**McCARTER & ENGLISH, LLP**
100 Mulberry Street
4 Gateway Center
Newark, NJ 07102
973-622-4444
cbetz@mccarter.com
mmakhail@mccarter.com

*Attorneys for Plaintiffs*
*Vifor (International) AG and*
*American Regent, Inc.*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| VIFOR (INTERNATIONAL) AG and AMERICAN REGENT, INC., <br><br> Plaintiff, <br><br> v. <br><br> MSN LABORATORIES PRIVATE LIMITED and MSN PHARMACEUTICALS INC., <br><br> Defendants. | Civil Action No. |

**COMPLAINT FOR PATENT INFRINGEMENT**

Plaintiffs Vifor (International) AG ("Vifor") and American Regent, Inc. ("American Regent") (collectively, "Plaintiffs"), by their attorneys, through this Complaint hereby alleges as follows:

**NATURE OF THE ACTION**

1.      This is an action for patent infringement arising under the patent laws of the United States, Title 35, United States Code, against MSN Laboratories Private Limited ("MSN Pvt. Ltd.") and MSN Pharmaceuticals Inc. ("MSN Inc.") (MSN Pvt. Ltd. and MSN Inc.,

collectively, "the MSN Defendants"). This action relates to Abbreviated New Drug Application ("ANDA") No. 219580, filed by the MSN Defendants with the U.S. Food and Drug Administration ("FDA") for approval to market a generic version of Plaintiff's Injectafer®, ferric carboxymaltose injection (100 mg Iron/2 mL; 500 mg Iron /10 mL; 750 mg Iron/15 mL; 1 g Iron /20 mL) ("MSN's ANDA Products") prior to the expiration of United States Patent Nos. 7,612,109 ("the '109 patent"); 7,754,702 ("the '702 patent"); 8,895,612 ("the '612 patent"); 11,364,260 ("the '260 patent"); 11,433,091 ("the '091 patent"); and 11,478,502 ("the '502 patent"). The '109, '702, '612, '260, '091, and '502 patents are listed in the FDA's Approved Drug Products with Therapeutic Equivalence Evaluations ("Orange Book") for Injectafer®.

## THE PARTIES

2.      Plaintiff Vifor is a company organized and existing under the laws of Switzerland, having a principal place of business at Rechenstraβe 37, CH-9001, St. Gallen, Switzerland.

3.      Vifor is engaged in the business of creating, developing, and bringing to market revolutionary drug products, including treatments for iron deficiency anemia.

4.      Plaintiff American Regent is a corporation organized and existing under the laws of the State of New York, with a principal place of business at 5 Ramsey Road, Shirley, New York 11967. American Regent was formerly known as "Luitpold Pharmaceuticals, Inc.," until January 2, 2019, when its New York Certificate of Incorporation was amended to change the name of the corporation to "American Regent, Inc."

5.      American Regent was involved in the design and development of Injectafer®. American Regent markets, distributes, and sells injectable pharmaceutical drug products, including Injectafer®, in this judicial district and throughout the United States.

6.      On information and belief, Defendant MSN Pvt. Ltd. is a company organized and existing under the laws of the Republic of India and has a principal place of business at MSN

House, Plot No. C-24, Industrial Estate, Sanath Nagar, Hyderabad, Telangana, 500018, India.

7.     On information and belief, MSN Pvt. Ltd. itself, and through its subsidiary and agent MSN Inc., develops, manufactures, and/or distributes generic drug products for marketing, sale, and/or use throughout the United States, including in this judicial district.

8.     On information and belief, Defendant MSN Inc. is a corporation organized and existing under the laws of the State of Delaware and is registered to conduct business in the State of New Jersey, with a principal place of business at 20 Duke Rd, Piscataway, New Jersey, 08854-3714.

9.     On information and belief, MSN Inc. is a wholly owned subsidiary of MSN Pvt. Ltd. and is controlled and/or dominated by MSN Pvt. Ltd.  On information and belief, MSN Pvt. Ltd. established MSN Inc. for the purposes of developing, manufacturing, and distributing its generic drug products throughout the United States, including in this judicial district.  On information and belief, MSN Inc. develops, manufactures, and/or distributes generic drug products for marketing, sale, and/or use throughout the United States, including in this judicial district.

## JURISDICTION AND VENUE

10.     This action arises under the patent laws of the United States, 35 U.S.C. §§ 100, e*t seq.*, and this Court has jurisdiction over the subject matter of this action under 28 U.S.C. §§ 1331, 1338(a), 2201, and 2202.

11.     On information and belief, this Court has personal jurisdiction over MSN Inc., under the New Jersey state long arm statute and consistent with due process of law, because MSN Inc. maintains its principal place of business in New Jersey.

12.     On information and belief, this Court has personal jurisdiction over MSN Pvt. Ltd., under the New Jersey state long arm statute and consistent with due process of law because

MSN Pvt. Ltd. has extensive contacts with the State of New Jersey, including through its subsidiary MSN Inc., and regularly does business in this judicial district, including through its subsidiary MSN Inc.  Further, the MSN Defendants plan to sell their ANDA product in the State of New Jersey, which provides an independent basis for personal jurisdiction here.

13.    MSN Pvt. Ltd. has previously availed itself of the legal protections of the State of New Jersey by, among other things, selecting the State of New Jersey as the principal place of business for MSN Inc., admitting to jurisdiction in this judicial district, and/or pursuing counterclaims in this judicial district.  *See, e.g.*, *American Regent, Inc. f/k/a Luitpold Pharmaceuticals, Inc. v. MSN Laboratories Private Limited et al.*, Civil Action No. 24-10674 (D.N.J.); *Esperion Therapeutics, Inc. v. MSN Pharmaceuticals Inc. et al.*, Civil  Action No. 24-06386 (D.N.J.) (MSN Pvt. Ltd. and MSN Inc. did not contest personal jurisdiction and asserted counterclaims); *AbbVie Inc. et al. v. MSN Pharmaceuticals Inc. et al.*, Civil Action No. 24-04662 (D.N.J.) (same); *BeiGene USA, Inc. et al. v. MSN Pharmaceuticals Inc. et al.*, Civil Action No. 24-01971 (D.N.J.) (same); *Jazz Pharmaceuticals Research UK Limited f/k/a GW Research Limited v. Apotex Inc. et al.*, Civil Action No. 23-23141 (D.N.J.) (same); *Jazz Pharmaceuticals Research UK Limited f/k/a GW Research Limited v. Teva Pharmaceuticals, Inc. et al.*, Civil Action No. 23-03914 (D.N.J.) (same); *GW Research Limited v. Teva Pharmaceuticals, Inc. et al.*, Civil Action No. 23-00018 (D.N.J.) (same); *Chiesi USA, Inc. et al. v. MSN Pharmaceuticals Inc. et al.*, Civil Action No. 19-18564 (D.N.J.) (same); *Mitsubishi Tanabe Pharma Corporation et al. v. MSN Laboratories Private Limited et al.*, Civil Action No. 19-18958 (D.N.J.) (same); *Bausch Health Ireland Limited et al. v. MSN Laboratories Private Limited et al.*, Civil Action No. 23-03333 (D.N.J.) (MSN Pvt. Ltd. and MSN Inc. did not contest personal jurisdiction and MSN Pvt. Ltd. asserted counterclaims); *Bausch Health Ireland Ltd. f/k/a Valeant*

*Pharmaceuticals Ireland Ltd. et al. v. MSN Laboratories Private Limited et al.*, Civil Action No. 21-10057 (D.N.J.) (MSN Pvt. Ltd. and MSN Inc. did not contest personal jurisdiction and MSN Pvt. Ltd. asserted counterclaims).

14.     On information and belief, MSN Pvt. Ltd. and MSN Inc. are subject to personal jurisdiction in New Jersey because they regularly do or solicit business in New Jersey, engage in other persistent courses of conduct in New Jersey, and/or derive substantial revenue from services or things used or consumed in New Jersey, demonstrating that MSN Pvt. Ltd. and MSN Inc. have systematic and continuous contacts with this judicial district.

15.     On information and belief, MSN Pvt. Ltd. and MSN Inc. purposefully have conducted and continue to conduct business in this judicial district by manufacturing, importing, marketing, and distributing pharmaceutical products, including generic drug products, either alone or through their parent corporation, subsidiaries, and/or affiliates, throughout the United States, including in this judicial district.  The MSN Defendants further intend to sell their generic ANDA products in the State of New Jersey.

16.     On information and belief, MSN Inc. is registered to do business in the State of New Jersey under Entity Identification Number 0400627791, and MSN Inc. is also licensed to do business with the New Jersey Department of Health as a "Manufacturer and Wholesale[r]" of pharmaceuticals in the State of New Jersey (Registration Number 5006107).  Moreover, on information and belief, MSN Inc. has appointed a registered agent in New Jersey for the receipt of service of process.

17.     On information and belief, MSN Pvt. Ltd. and MSN Inc. are subject to personal jurisdiction in this judicial district through their pursuit of regulatory approval for MSN's ANDA Products for the commercial manufacture, use, and/or sale of MSN's ANDA Products, if

approved, in this judicial district and to residents of this judicial district. Through at least these activities, MSN Pvt. Ltd. and MSN Inc. have purposely availed themselves of the rights and benefits of New Jersey law such that they should reasonably anticipate being hailed into court in this judicial district.

18.     On information and belief, consistent with their past practices, MSN Pvt. Ltd. and MSN Inc. acted collaboratively in the preparation and submission of ANDA No. 219580.

19.     On information and belief, and consistent with their past practices, following any FDA approval of ANDA No. 219580, MSN Pvt. Ltd. and MSN Inc. will work in concert with one another to make, use, offer to sell, and/or sell the generic drug products that are the subject of ANDA No. 219580 throughout the United States and/or import such generic drug products into the United States, including in this judicial district.

20.     On information and belief, if ANDA No. 219580 is approved, MSN's ANDA Products will be marketed, distributed, offered for sale, and/or sold in New Jersey; prescribed by physicians practicing in New Jersey; administered by healthcare professionals located within New Jersey; and/or used by patients in New Jersey, all of which will have a substantial effect on New Jersey.

21.     On information and belief, if ANDA No. 219580 is approved, MSN Pvt. Ltd. and MSN Inc. will import, market, distribute, offer for sale, and/or sell MSN's ANDA Products, alone or through their parent corporation, subsidiaries, and/or affiliates in the United States, including in New Jersey, and will derive substantial revenue from the use or consumption of MSN's ANDA Products in the state of New Jersey.

22.     If ANDA No. 219580 is approved, Vifor and American Regent will be harmed by the marketing, distribution, offer for sale, and/or sale of MSN's ANDA Products, including in

New Jersey.

23.    On information and belief, venue is proper in this judicial district under 28 U.S.C. §§ 1391 and 1400(b) at least because MSN Inc. has its principal place of business in the State of New Jersey, and has committed acts of infringement in New Jersey.  MSN Pvt. Ltd. is a foreign company not residing in any United States judicial district and may be sued in any judicial district.  28 U.S.C. § 1391(c)(3).  Moreover, MSN Pvt. Ltd. and MSN Inc. have litigated previous Hatch-Waxman patent infringement disputes in the District of New Jersey.

24.    On information and belief, MSN Inc. has committed acts of infringement under the meaning of 28 U.S.C. § 1400(b) by submitting ANDA No. 219580 to the FDA, by taking steps indicating its intent to market MSN's ANDA Products in New Jersey, and by the acts that it non-speculatively intends to take in New Jersey if MSN's ANDA receives final FDA approval.

25.    On information and belief, MSN Inc. has a regular and established place of business in New Jersey under the meaning of 28 U.S.C. § 1400(b) because, *inter alia*, its principal place of business is in New Jersey.  As set forth above, on information and belief, MSN Inc. maintains regular and established places of business in New Jersey, including its headquarters, offices, laboratories, and/or facilities at 20 Duke Rd, Piscataway, New Jersey, 08854-3714.

26.    On information and belief, MSN Pvt. Ltd. and MSN Inc. have taken steps in New Jersey, including preparing ANDA No. 219580 and communicating with the FDA regarding ANDA No. 219580, that indicate their intent to market MSN's ANDA Products.  As set forth above, on information and belief, if ANDA No. 219580 is approved, the MSN Defendants intend to commit acts of patent infringement in New Jersey, including marketing, distributing, offering for sale, and/or selling MSN's ANDA Products.

## PATENTS-IN-SUIT

27.      The U.S. Patent and Trademark Office ("PTO") issued the '109 patent, entitled

"Water-Soluble Iron-Carbohydrate Complexes, Production Thereof, and Medicaments

Containing Said Complexes," on November 3, 2009 to inventors Peter Geisser, Erik Philipp, and

Walter Richle.  Vifor is the current assignee of the '109 patent and has the right to enforce it.

The '109 patent has been granted an interim extension of patent term for a period of 1 year and

expires on February 5, 2026, subject to any other further extensions.  The '109 patent claims,

*inter alia*, compositions and methods of making iron carbohydrate complexes.  A true and

correct copy of the '109 patent is attached hereto as **Exhibit A**.

28.      The PTO issued the '702 patent entitled "Methods and Compositions For

Administration of Iron," on July 13, 2010 to inventors Mary Jane Helenek, Marc L. Tokars, and

Richard P. Lawrence.  At the time of its issuance, the '702 patent was assigned to Luitpold

Pharmaceuticals, Inc., and on January 11, 2019, the assignment records for the '702 patent were

amended to reflect that Luitpold Pharmaceuticals, Inc. had changed its name to "American

Regent, Inc."  The Change of Name of the assignee for the '702 patent is recorded by the PTO at

Reel 048067, Frame 0271.  American Regent is the current assignee of the '702 patent and has

the right to enforce it.  The '702 patent expires on February 15, 2028.  The '702 patent claims,

*inter alia*, methods of treating iron deficiency anemia by administering an iron carbohydrate

complex.  A true and correct copy of the '702 patent is attached hereto as **Exhibit B**.

29.      The PTO issued the '612 patent entitled "Methods and Compositions For

Administration of Iron," on November 25, 2014 to inventors Mary Jane Helenek, Marc L.

Tokars, and Richard P. Lawrence.  At the time of its issuance, the '612 patent was assigned to

Luitpold Pharmaceuticals, Inc., and on January 11, 2019, the assignment records for the '612

patent were amended to reflect that Luitpold Pharmaceuticals, Inc. had changed its name to

"American Regent, Inc." The Change of Name of the assignee for the '612 patent is recorded by the PTO at Reel 048067, Frame 0271. American Regent is the current assignee of the '612 patent and has the right to enforce it. The '612 patent expires on January 8, 2027. The '612 patent claims, *inter alia*, methods of treating iron deficiency anemia by the administration of an iron carboxymaltose complex. A true and correct copy of the '612 patent is attached hereto as **Exhibit C**.

30. The PTO issued the '260 patent entitled "Methods and Compositions For Administration of Iron," on June 21, 2022 to inventors Mary Jane Helenek, Marc L. Tokars, and Richard P. Lawrence. American Regent is the current assignee of the '260 patent and has the right to enforce it. The '260 patent expires on January 8, 2027. The '260 patent claims, *inter alia*, methods of treating iron deficiency or dysfunctional iron metabolism by the administration of an iron carboxymaltose complex. A true and correct copy of the '260 patent is attached hereto as **Exhibit D**.

31. The PTO issued the '091 patent entitled "Methods and Compositions For Administration of Iron," on September 6, 2022 to inventors Mary Jane Helenek, Marc L. Tokars, and Richard P. Lawrence. American Regent is the current assignee of the '091 patent and has the right to enforce it. The '091 patent expires on January 8, 2027. The '091 patent claims, *inter alia*, methods of treating a disease, disorder, or condition characterized by iron deficiency or dysfunctional iron metabolism by the administration of an iron carboxymaltose complex. A true and correct copy of the '091 patent is attached hereto as **Exhibit E**.

32. The PTO issued the '502 patent entitled "Methods and Compositions For Administration of Iron," on October 25, 2022 to inventors Mary Jane Helenek, Marc L. Tokars, and Richard P. Lawrence. American Regent is the current assignee of the '502 patent and has

the right to enforce it.  The '502 patent expires on January 8, 2027.  The '502 patent claims, *inter alia*, methods of treating iron deficiency anemia and functional iron deficiency by the administration of an iron carboxymaltose complex.  A true and correct copy of the '502 patent is attached hereto as **Exhibit F**.

## NDA NO. 203565 AND INJECTAFER®

33.  American Regent is the owner of New Drug Application ("NDA") No. 203565 for Injectafer® (ferric carboxymaltose), which the FDA approved on July 25, 2013.  The Orange Book lists the NDA holder as "American Regent, Inc.," in accordance with the name change from "Luitpold Pharmaceuticals, Inc." to "American Regent, Inc.," effective January 2, 2019.

34.  In conjunction with NDA No. 203565, American Regent listed with the FDA, inter alia, the '109, '702, and '612 patents.  American Regent subsequently timely listed the '260, '091, and '502 patents with the FDA after those patents issued.  All six patents—the '109, '702, '612, '260, '091, and '502 patents—are currently listed in the Orange Book for Injectafer®.

35.  Injectafer® is covered by one or more claims of each of the '109, '702, '612, '260, '091, and '502 patents.

36.  Injectafer® is currently approved to treat iron deficiency anemia in certain patients and iron deficiency in adult patients with heart failure and New York Heart Association class II/III to improve exercise capacity.  A true and correct copy of the current Injectafer® label is attached as **Exhibit G**.

## THE MSN DEFENDANTS' INFRINGING ANDA SUBMISSION

37.  Plaintiffs and/or Plaintiffs' counsel received a letter from the MSN Defendants dated March 12, 2025, purporting to be a "Notice of Paragraph IV Certification Under 21 U.S.C. § 355(j)(2)(B) (§ 505(j)(2)(B)) of Federal Food, Drug and Cosmetic Act) and 21 C.F.R. § 314.95

of U.S. Patent Nos. 7,754,702; 7,612,109; 8,895,612; 11,364,260; 11,433,091; and 11,478,502 in

ANDA No. 219580 for generic Ferric Carboxymaltose Injection, 750mg iron/15ml (50mg

iron/ml); 100mg iron/2ml (50mg iron/ml); 500mg iron/10ml (50mg iron/ml); and 1 gm iron/20ml

(50mg iron/ml) doses." ("MSN's Notice Letter").

38.     MSN's Notice Letter states that the MSN Defendants are seeking approval to

engage in the commercial manufacture, use, and/or sale of MSN's ANDA Products before the

expiration of the '109, '702, '612, '260, '091, and '502 patents.

39.     On information and belief, the MSN Defendants submitted ANDA No. 219580 to

FDA under Section 505(j) of the Act, 21 U.S.C. § 355(j), seeking approval to, and intending to,

manufacture, use, import, offer to sell, and/or sell MSN's ANDA Products, either by itself or

through its parent corporation, subsidiaries, and/or affiliates, throughout the United States before

the expiration of the '109, '702, '612, '260, '091, and '502 patents.

40.     On information and belief, each of MSN's ANDA Products contains ferric

carboxymaltose.

41.     On information and belief, each of the MSN Defendants has made, and continues

to make, substantial preparation in the United States to manufacture, use, import, offer to sell,

and/or sell MSN's ANDA Products, either by itself or through its parent corporation,

subsidiaries, and/or affiliates, before the expiration of '702 patent.

42.     By filing ANDA No. 219580, and as indicated in MSN's Notice Letter, the MSN

Defendants have represented to the FDA that MSN's ANDA Products have the same active

ingredient as Injectafer®, have the same dosage forms and strengths as Injectafer®, and are

bioequivalent to Injectafer®.

43.     On information and belief, the MSN Defendants are seeking approval to market

MSN's ANDA Products for the same approved indications as Injectafer®.

44.     MSN's Notice Letter states that it has attached a "detailed statement of the legal and factual bases of MSN's position for the paragraph IV certification for U.S. Patent Nos. 7,754,702; 7,612,109; 8,895,612; 11,364,260; 11,433,091; and 11,478,502" and "MSN has submitted an updated paragraph IV certification to the FDA, stating that in MSN's opinion and to the best of their knowledge, U.S. Patent Nos. 7,612,109; 8,895,612; 11,364,260; 11,433,091; and 11,478,502, are invalid, unenforceable and/ or will not be infringed by the commercial manufacture, use or sale of the drug product described in MSN's ANDA."

45.     Plaintiffs and/or Plaintiffs' counsel had previously also received a letter from the MSN Defendants dated October 11, 2024, purporting to be a "Notice of Paragraph IV Certification Under 21 U.S.C. § 355(j)(2)(B) (§ 505(f)(2)(B)) of Federal Food, Drug and Cosmetic Act) and 21 C.F.R. § 314.95 of U.S. Patent No. 7,754,702 in ANDA No. 219580 for generic Ferric Carboxymaltose Injection, 750mg iron/l5ml (50mg iron/ml); 100mg iron/2ml (50mg iron/ml); 500mg iron/10ml (50mg iron/ml); and 1gm iron/20ml (50mg iron/ml) doses." Plaintiffs timely filed an action asserting the '702 patent, which is currently pending.  *See, e.g.*, *American Regent, Inc. f/k/a Luitpold Pharmaceuticals, Inc. v. MSN Laboratories Private Limited et al.*, Civil Action No. 24-10674 (D.N.J.)

## COUNT I (INFRINGEMENT OF THE '109 PATENT)

46.     Plaintiffs allege, and incorporate in full herein, each of the preceding paragraphs 1–45.

47.     The claims of the '109 patent are presumed valid under 35 U.S.C. § 282.

48.     Under 35 U.S.C. § 271(e)(2)(A), MSN has infringed at least one claim of the '109 patent by submitting, or causing to be submitted to the FDA, ANDA No. 219580 seeking approval to engage in the commercial manufacture, use, or sale of MSN's ANDA Products

before the expiration date of the '109 patent. On information and belief, the product described in ANDA No. 219580 would infringe, either literally or under the doctrine of equivalents, at least one claim of the '109 patent under 35 U.S.C. § 271(e)(2)(A).

49.     In MSN's Notice Letter, MSN did not provide any allegation that MSN's ANDA Products do not fall within the scope of certain claims of the '109 patent, and therefore admit infringement of at least one claim of the '109 patent.

50.     On information and belief, based on MSN's Notice Letter, the absence of any allegation that MSN's ANDA Products do not fall within the scope of claims of the '109 patent in MSN's Notice Letter, the fact that MSN has represented to the FDA that MSN's ANDA Products are bioequivalent, pharmaceutically equivalent, and therapeutically equivalent to Injectafer®, and the fact that, pursuant to 21 C.F.R. § 314.94, MSN is required to substantially copy the FDA-approved Injectafer® labeling, MSN's ANDA Products comprise an aqueous solution of ferric carboxymaltose which is formulated for parenteral application, wherein the ferric carboxymaltose, an iron carbohydrate complex, has a weight average molecular weight of 80,000 to 300,000 daltons, and satisfies all of the limitations of one or more claim of the '109 patent.

51.     On information and belief, MSN intends to engage in the commercial manufacture, use, offer for sale, sale, marketing, distributing, and/or importation of MSN's ANDA Products prior to the expiration of the '109 patent immediately and imminently upon final approval of ANDA No. 219580. The commercial manufacture, use, offer for sale, sale, marketing, distributing, and/or importation of MSN's ANDA Products prior to the expiration of the '109 patent would infringe one or more claims of the '109 patent.

52.     On information and belief, upon FDA approval of MSN's ANDA Products, MSN

will infringe at least one claim of the '109 patent under 35 U.S.C. § 271(a) either literally or under the doctrine of equivalents, by making, using, importing, offering to sell, and/or selling MSN's ANDA Products in the United States, and/or will induce and/or contribute to infringement of one or more claims of the '109 patent under 35 U.S.C. §§ 271(b) and/or (c), unless enjoined by the Court.

53.     On information and belief, MSN has knowledge of the '109 patent and has filed ANDA No. 219580 seeking authorization to engage in the commercial manufacture, use, or sale of MSN's ANDA Products in the United States.  On information and belief, if the FDA approves ANDA No. 219580, healthcare professionals and/or patients will directly infringe under 35 U.S.C. § 271(a), either literally or under the doctrine of equivalents, at least one claim of the '109 patent by the use MSN's ANDA Products according to MSN's provided instructions and/or label.

54.     On information and belief, MSN knows and intends that healthcare professionals and/or patients will use MSN's ANDA Products according to MSN's provided instructions and/or label in an infringing manner, and will therefore induce infringement of one or more claims of the '109 patent with the requisite intent under 35 U.S.C. § 271(b).

55.     Upon information and belief, upon approval, MSN will take active steps to encourage the use of MSN's ANDA Products by healthcare professionals and/or patients with the knowledge and intent that it will be used by healthcare professionals and/or patients in a manner that infringes at least one claim of the '109 patent for the pecuniary benefit of MSN. Upon information and belief, MSN will thus induce infringement of at least one claim of the '109 patent with the requisite intent under 35 U.S.C. § 271(b).  Upon information and belief, MSN will have actual knowledge of the '109 patent and will actively induce infringement of the

'109 patent immediately and imminently upon approval of its ANDA.

56.     On information and belief, if the FDA approves ANDA No. 219580, MSN's ANDA Products will be specifically labeled for use in practicing at least one claim of the '109 patent, wherein MSN's ANDA Products are a material part of the claimed invention, wherein MSN knows and intends that healthcare professionals and/or patients will use MSN's ANDA Products in accordance with the instructions and/or label provided by MSN in practicing at least one claim of the '109 patent, and wherein MSN's ANDA Products are not a staple article or commodity of commerce suitable for substantial non-infringing use.   Upon information and belief, MSN will thus contribute to the infringement of at least one claim of the '109 patent under 35 U.S.C. § 271(c).

57.     Upon information and belief, MSN's actions relating to ANDA No. 219580 complained of herein were done by and for the benefit of MSN.

58.     If MSN's marketing and sale of MSN's ANDA Products prior to the expiration of the '109 patent is not enjoined, Plaintiffs will suffer substantial and irreparable harm for which there is no adequate remedy at law.

### COUNT II (INFRINGEMENT OF THE '702 PATENT)

59.     Plaintiffs allege, and incorporate in full herein, each of the preceding paragraphs 1–58.

60.     Claims 4–9, 16–22, 24, 26, 31–40, and 44–57 of the '702 patent are presumed valid under 35 U.S.C. § 282.

61.     Under 35 U.S.C. § 271(e)(2)(A), MSN has infringed at least one claim of the '702 patent by submitting, or causing to be submitted to the FDA, ANDA No. 219580 seeking approval to engage in the commercial manufacture, use, or sale of MSN's ANDA Products before the expiration date of the '702 patent.  On information and belief, the product described in

ANDA No. 219580 would infringe, either literally or under the doctrine of equivalents, at least one claim of the '702 patent under 35 U.S.C. § 271(e)(2)(A).

62.     In MSN's Notice Letter, MSN did not provide any allegation that MSN's ANDA Products do not fall within the scope of certain claims of the '702 patent, and therefore admit infringement of at least one claim of the '702 patent.

63.     On information and belief, based on MSN's Notice Letter, the absence of any allegation that MSN's ANDA Products do not fall within the scope of the claims of the '702 patent in MSN's Notice Letter, the fact that MSN has represented to the FDA that MSN's ANDA Products are bioequivalent, pharmaceutically equivalent, and therapeutically equivalent to Injectafer®, and the fact that, pursuant to 21 C.F.R. § 314.94, MSN is required to substantially copy the FDA-approved Injectafer® labeling, MSN's ANDA Products comprise an iron carboxymaltose complex having a molecular weight of about 100,000 daltons to about 350,000 daltons, and will be used in a method of treating iron deficiency anemia, whereby MSN's ANDA Products will be administered intravenously in about 15 minutes or less to a subject in need thereof in a single dosage unit of at least about 0.6 grams of elemental iron, and the use of MSN's ANDA Products will satisfy all of the limitations of one or more claims of the '702 patent.

64.     On information and belief, MSN intends to engage in the commercial manufacture, use, offer for sale, sale, marketing, distributing, and/or importation of MSN's ANDA Products prior to the expiration of the '702 patent immediately and imminently upon final approval of ANDA No. 219580.  The commercial manufacture, use, offer for sale, sale, marketing, distributing, and/or importation of MSN's ANDA Products prior to the expiration of the '702 patent would infringe one or more claims of the '702 patent.

65.     On information and belief, upon FDA approval of MSN's ANDA Products, MSN

- 16 -

will induce and/or contribute to the infringement of one or more claims of the '702 patent under 35 U.S.C. §§ 271(b) and/or (c), unless enjoined by the Court.

66.    On information and belief, MSN has knowledge of the '702 patent and has filed ANDA No. 219580 seeking authorization to engage in the commercial manufacture, use, or sale of MSN's ANDA Products in the United States.  On information and belief, if the FDA approves ANDA No. 219580, healthcare professionals and/or patients will directly infringe under 35 U.S.C. § 271(a), either literally or under the doctrine of equivalents, at least one claim of the '702 patent by the use MSN's ANDA Products according to MSN's provided instructions and/or label.

67.    On information and belief, MSN knows and intends that healthcare professionals and/or patients will use MSN's ANDA Products according to MSN's provided instructions and/or label in an infringing manner, and will therefore induce infringement of one or more claims of the '702 patent with the requisite intent under 35 U.S.C. § 271(b).

68.    Upon information and belief, upon approval, MSN will take active steps to encourage the use of MSN's ANDA Products by healthcare professionals and/or patients with the knowledge and intent that it will be used by healthcare professionals and/or patients in a manner that infringes at least one claim of the '702 patent for the pecuniary benefit of MSN. Upon information and belief, MSN will thus induce infringement of at least one claim of the '702 patent with the requisite intent under 35 U.S.C. § 271(b).  Upon information and belief, MSN will have actual knowledge of the '702 patent and will actively induce infringement of the '702 patent immediately and imminently upon approval of its ANDA.

69.    On information and belief, if the FDA approves ANDA No. 219580, MSN's ANDA Products will be specifically labeled for use in practicing at least one claim of the '702

patent, wherein MSN's ANDA Products are a material part of the claimed invention, wherein

MSN knows and intends that healthcare professionals and/or patients will use MSN's ANDA

Products in accordance with the instructions and/or label provided by MSN in practicing at least

one claim of the '702 patent, and wherein MSN's ANDA Products are not a staple article or

commodity of commerce suitable for substantial non-infringing use.   Upon information and

belief, MSN will thus contribute to the infringement of at least one claim of the '702 patent

under 35 U.S.C. § 271(c).

70.    Upon information and belief, MSN's actions relating to ANDA No. 219580

complained of herein were done by and for the benefit of MSN.

71.    If MSN's marketing and sale of MSN's ANDA Products prior to the expiration of

the '702 patent is not enjoined, Plaintiffs will suffer substantial and irreparable harm for which

there is no adequate remedy at law.

## COUNT III (INFRINGEMENT OF THE '612 PATENT)

72.    Plaintiffs allege, and incorporate in full herein, each of the preceding paragraphs

1–71.

73.    The claims of the '612 patent are presumed valid under 35 U.S.C. § 282.

74.    Under 35 U.S.C. § 271(e)(2)(A), MSN has infringed at least one claim of the '612

patent by submitting, or causing to be submitted to the FDA, ANDA No. 219580 seeking

approval to engage in the commercial manufacture, use, or sale of MSN's ANDA Products

before the expiration date of the '612 patent.  On information and belief, the product described in

ANDA No. 219580 would infringe, either literally or under the doctrine of equivalents, at least

one claim of the '612 patent under 35 U.S.C. § 271(e)(2)(A).

75.    On information and belief, based on MSN's Notice Letter, the absence of any

allegation that MSN's ANDA Products do not fall within the scope of the claims of the '612

patent in MSN's Notice Letter, the fact that MSN has represented to the FDA that MSN's ANDA Products are bioequivalent, pharmaceutically equivalent, and therapeutically equivalent to Injectafer®, and the fact that, pursuant to 21 C.F.R. § 314.94, MSN is required to substantially copy the FDA-approved Injectafer® labeling, MSN's ANDA Products comprise an iron carboxymaltose complex having a substantially non-immunogenic carbohydrate component and substantially no cross reactivity with anti-dextran antibodies, and will be used in a method of treating iron deficiency anemia associated with chronic kidney disease and/or heavy uterine bleeding, whereby MSN's ANDA Products will be administered in about 15 minutes or less to a subject in need thereof in a single dosage unit of at least about 0.6 grams of elemental iron, and the use of MSN's ANDA Products will satisfy all of the limitations of one or more claims of the '612 patent.

76.     On information and belief, MSN intends to engage in the commercial manufacture, use, offer for sale, sale, marketing, distributing, and/or importation of MSN's ANDA Products prior to the expiration of the '612 patent immediately and imminently upon final approval of ANDA No. 219580.  The commercial manufacture, use, offer for sale, sale, marketing, distributing, and/or importation of MSN's ANDA Products prior to the expiration of the '612 patent would infringe one or more claims of the '612 patent.

77.     On information and belief, upon FDA approval of MSN's ANDA Products, MSN will induce and/or contribute to the infringement of one or more claims of the '612 patent under 35 U.S.C. §§ 271(b) and/or (c), unless enjoined by the Court.

78.     On information and belief, MSN has knowledge of the '612 patent and has filed ANDA No. 219580 seeking authorization to engage in the commercial manufacture, use, or sale of MSN's ANDA Products in the United States.  On information and belief, if the FDA approves

ANDA No. 219580, healthcare professionals and/or patients will directly infringe under 35 U.S.C. § 271(a), either literally or under the doctrine of equivalents, at least one claim of the '612 patent by the use MSN's ANDA Products according to MSN's provided instructions and/or label.

79. On information and belief, MSN knows and intends that healthcare professionals and/or patients will use MSN's ANDA Products according to MSN's provided instructions and/or label in an infringing manner, and will therefore induce infringement of one or more claims of the '612 patent with the requisite intent under 35 U.S.C. § 271(b).

80. Upon information and belief, upon approval, MSN will take active steps to encourage the use of MSN's ANDA Products by healthcare professionals and/or patients with the knowledge and intent that it will be used by healthcare professionals and/or patients in a manner that infringes at least one claim of the '612 patent for the pecuniary benefit of MSN. Upon information and belief, MSN will thus induce infringement of at least one claim of the '612 patent with the requisite intent under 35 U.S.C. § 271(b). Upon information and belief, MSN will have actual knowledge of the '612 patent and will actively induce infringement of the '612 patent immediately and imminently upon approval of its ANDA.

81. On information and belief, if the FDA approves ANDA No. 219580, MSN's ANDA Products will be specifically labeled for use in practicing at least one claim of the '612 patent, wherein MSN's ANDA Products are a material part of the claimed invention, wherein MSN knows and intends that healthcare professionals and/or patients will use MSN's ANDA Products in accordance with the instructions and/or label provided by MSN in practicing at least one claim of the '612 patent, and wherein MSN's ANDA Products are not a staple article or commodity of commerce suitable for substantial non-infringing use. Upon information and

belief, MSN will thus contribute to the infringement of at least one claim of the '612 patent under 35 U.S.C. § 271(c).

82.     Upon information and belief, MSN's actions relating to ANDA No. 219580 complained of herein were done by and for the benefit of MSN.

83.     If MSN's marketing and sale of MSN's ANDA Products prior to the expiration of the '612 patent is not enjoined, Plaintiffs will suffer substantial and irreparable harm for which there is no adequate remedy at law.

## COUNT IV (INFRINGEMENT OF THE '260 PATENT)

84.     Plaintiffs allege, and incorporate in full herein, each of the preceding paragraphs 1–83.

85.     The claims of the '260 patent are presumed valid under 35 U.S.C. § 282.

86.     Under 35 U.S.C. § 271(e)(2)(A), MSN has infringed at least one claim of the '260 patent by submitting, or causing to be submitted to the FDA, ANDA No. 219580 seeking approval to engage in the commercial manufacture, use, or sale of MSN's ANDA Products before the expiration date of the '260 patent.  On information and belief, the product described in ANDA No. 219580 would infringe, either literally or under the doctrine of equivalents, at least one claim of the '260 patent under 35 U.S.C. § 271(e)(2)(A).

87.     On information and belief, based on MSN's Notice Letter, the absence of any allegation that MSN's ANDA Products do not fall within the scope of the claims of the '260 patent in MSN's Notice Letter, the fact that MSN has represented to the FDA that MSN's ANDA Products are bioequivalent, pharmaceutically equivalent, and therapeutically equivalent to Injectafer®, and the fact that, pursuant to 21 C.F.R. § 314.94, MSN is required to substantially copy the FDA-approved Injectafer® labeling, MSN's ANDA Products comprise an iron carboxymaltose complex having a substantially non-immunogenic carbohydrate component and

substantially no cross reactivity with anti-dextran antibodies, and will be used in a method of treating iron deficiency or dysfunctional iron metabolism associated with cardiomyopathy, whereby MSN's ANDA Products will be administered intravenously in about 15 minutes or less to a subject in need thereof in a single dosage unit of at least about 0.6 grams of elemental iron, and the use of MSN's ANDA Products will satisfy all of the limitations of one or more claims of the '260 patent.

88.    On information and belief, MSN intends to engage in the commercial manufacture, use, offer for sale, sale, marketing, distributing, and/or importation of MSN's ANDA Products prior to the expiration of the '260 patent immediately and imminently upon final approval of ANDA No. 219580.  The commercial manufacture, use, offer for sale, sale, marketing, distributing, and/or importation of MSN's ANDA Products prior to the expiration of the '260 patent would infringe one or more claims of the '260 patent.

89.    On information and belief, upon FDA approval of MSN's ANDA Products, MSN will induce and/or contribute to the infringement of one or more claims of the '260 patent under 35 U.S.C. §§ 271(b) and/or (c), unless enjoined by the Court.

90.    On information and belief, MSN has knowledge of the '260 patent and has filed ANDA No. 219580 seeking authorization to engage in the commercial manufacture, use, or sale of MSN's ANDA Products in the United States.  On information and belief, if the FDA approves ANDA No. 219580, healthcare professionals and/or patients will directly infringe under 35 U.S.C. § 271(a), either literally or under the doctrine of equivalents, at least one claim of the '260 patent by the use MSN's ANDA Products according to MSN's provided instructions and/or label.

91.    On information and belief, MSN knows and intends that healthcare professionals

and/or patients will use MSN's ANDA Products according to MSN's provided instructions and/or label in an infringing manner, and will therefore induce infringement of one or more claims of the '260 patent with the requisite intent under 35 U.S.C. § 271(b).

92.     Upon information and belief, upon approval, MSN will take active steps to encourage the use of MSN's ANDA Products by healthcare professionals and/or patients with the knowledge and intent that it will be used by healthcare professionals and/or patients in a manner that infringes at least one claim of the '260 patent for the pecuniary benefit of MSN. Upon information and belief, MSN will thus induce infringement of at least one claim of the '260 patent with the requisite intent under 35 U.S.C. § 271(b).  Upon information and belief, MSN will have actual knowledge of the '260 patent and will actively induce infringement of the '260 patent immediately and imminently upon approval of its ANDA.

93.     On information and belief, if the FDA approves ANDA No. 219580, MSN's ANDA Products will be specifically labeled for use in practicing at least one claim of the '260 patent, wherein MSN's ANDA Products are a material part of the claimed invention, wherein MSN knows and intends that healthcare professionals and/or patients will use MSN's ANDA Products in accordance with the instructions and/or label provided by MSN in practicing at least one claim of the '260 patent, and wherein MSN's ANDA Products are not a staple article or commodity of commerce suitable for substantial non-infringing use.   Upon information and belief, MSN will thus contribute to the infringement of at least one claim of the '260 patent under 35 U.S.C. § 271(c).

94.     Upon information and belief, MSN's actions relating to ANDA No. 219580 complained of herein were done by and for the benefit of MSN.

95.     If MSN's marketing and sale of MSN's ANDA Products prior to the expiration of

the '260 patent is not enjoined, Plaintiffs will suffer substantial and irreparable harm for which there is no adequate remedy at law.

### COUNT V (INFRINGEMENT OF THE '091 PATENT)

96. Plaintiffs allege, and incorporate in full herein, each of the preceding paragraphs 1–95.

97. The claims of the '091 patent are presumed valid under 35 U.S.C. § 282.

98. Under 35 U.S.C. § 271(e)(2)(A), MSN has infringed at least one claim of the '091 patent by submitting, or causing to be submitted to the FDA, ANDA No. 219580 seeking approval to engage in the commercial manufacture, use, or sale of MSN's ANDA Products before the expiration date of the '091 patent. On information and belief, the product described in ANDA No. 219580 would infringe, either literally or under the doctrine of equivalents, at least one claim of the '091 patent under 35 U.S.C. § 271(e)(2)(A).

99. On information and belief, based on MSN's Notice Letter, the absence of any allegation that MSN's ANDA Products do not fall within the scope of the claims of the '091 patent in MSN's Notice Letter, the fact that MSN has represented to the FDA that MSN's ANDA Products are bioequivalent, pharmaceutically equivalent, and therapeutically equivalent to Injectafer®, and the fact that, pursuant to 21 C.F.R. § 314.94, MSN is required to substantially copy the FDA-approved Injectafer® labeling, MSN's ANDA Products comprise an iron carboxymaltose complex, and will be used in a method of treating anemia, whereby MSN's ANDA Products will be administered intravenously to a human subject in need thereof in a single dosage unit of at least about 0.7 grams of elemental iron in 15 minutes or less, and the use of MSN's ANDA Products will satisfy all of the limitations of one or more claims of the '091 patent.

100. On information and belief, MSN intends to engage in the commercial

manufacture, use, offer for sale, sale, marketing, distributing, and/or importation of MSN's ANDA Products prior to the expiration of the '091 patent immediately and imminently upon final approval of ANDA No. 219580. The commercial manufacture, use, offer for sale, sale, marketing, distributing, and/or importation of MSN's ANDA Products prior to the expiration of the '091 patent would infringe one or more claims of the '091 patent.

101.    On information and belief, upon FDA approval of MSN's ANDA Products, MSN will induce and/or contribute to the infringement of one or more claims of the '091 patent under 35 U.S.C. §§ 271(b) and/or (c), unless enjoined by the Court.

102.    On information and belief, MSN has knowledge of the '091 patent and has filed ANDA No. 219580 seeking authorization to engage in the commercial manufacture, use, or sale of MSN's ANDA Products in the United States. On information and belief, if the FDA approves ANDA No. 219580, healthcare professionals and/or patients will directly infringe under 35 U.S.C. § 271(a), either literally or under the doctrine of equivalents, at least one claim of the '091 patent by the use MSN's ANDA Products according to MSN's provided instructions and/or label.

103.    On information and belief, MSN knows and intends that healthcare professionals and/or patients will use MSN's ANDA Products according to MSN's provided instructions and/or label in an infringing manner, and will therefore induce infringement of one or more claims of the '091 patent with the requisite intent under 35 U.S.C. § 271(b).

104.    Upon information and belief, upon approval, MSN will take active steps to encourage the use of MSN's ANDA Products by healthcare professionals and/or patients with the knowledge and intent that it will be used by healthcare professionals and/or patients in a manner that infringes at least one claim of the '091 patent for the pecuniary benefit of MSN.

Upon information and belief, MSN will thus induce infringement of at least one claim of the '091 patent with the requisite intent under 35 U.S.C. § 271(b).  Upon information and belief, MSN will have actual knowledge of the '091 patent and will actively induce infringement of the '091 patent immediately and imminently upon approval of its ANDA.

105.    On information and belief, if the FDA approves ANDA No. 219580, MSN's ANDA Products will be specifically labeled for use in practicing at least one claim of the '091 patent, wherein MSN's ANDA Products are a material part of the claimed invention, wherein MSN knows and intends that healthcare professionals and/or patients will use MSN's ANDA Products in accordance with the instructions and/or label provided by MSN in practicing at least one claim of the '091 patent, and wherein MSN's ANDA Products are not a staple article or commodity of commerce suitable for substantial non-infringing use.   Upon information and belief, MSN will thus contribute to the infringement of at least one claim of the '091 patent under 35 U.S.C. § 271(c).

106.    Upon information and belief, MSN's actions relating to ANDA No. 219580 complained of herein were done by and for the benefit of MSN.

107.    If MSN's marketing and sale of MSN's ANDA Products prior to the expiration of the '091 patent is not enjoined, Plaintiffs will suffer substantial and irreparable harm for which there is no adequate remedy at law.

## COUNT VI (INFRINGEMENT OF THE '502 PATENT)

108.    Plaintiffs allege, and incorporate in full herein, each of the preceding paragraphs 1–107.

109.    The claims of the '502 patent are presumed valid under 35 U.S.C. § 282.

110.    Under 35 U.S.C. § 271(e)(2)(A), MSN has infringed at least one claim of the '502 patent by submitting, or causing to be submitted to the FDA, ANDA No. 219580 seeking

approval to engage in the commercial manufacture, use, or sale of MSN's ANDA Products before the expiration date of the '502 patent. On information and belief, the product described in ANDA No. 219580 would infringe, either literally or under the doctrine of equivalents, at least one claim of the '502 patent under 35 U.S.C. § 271(e)(2)(A).

111.    On information and belief, based on MSN's Notice Letter, the absence of any allegation that MSN's ANDA Products do not fall within the scope of the claims of the '502 patent in MSN's Notice Letter, the fact that MSN has represented to the FDA that MSN's ANDA Products are bioequivalent, pharmaceutically equivalent, and therapeutically equivalent to Injectafer®, and the fact that, pursuant to 21 C.F.R. § 314.94, MSN is required to substantially copy the FDA-approved Injectafer® labeling, MSN's ANDA Products comprise a polynuclear iron (III)-hydroxide 4(R)-(poly-(1→4)-O-α-D-glucopyranosyl)-oxy-2(R),3(R),5(R),6-tetrahydroxy-hexanoate, and will be used in a method of treating iron deficiency anemia or functional iron deficiency and result in increased transferrin saturation, whereby MSN's ANDA Products will be administered intravenously in about 15 minutes or less to an adult human subject in need thereof in a single dosage unit of at least about 0.6 grams of elemental iron, and the use of MSN's ANDA Products will satisfy all of the limitations of one or more claims of the '502 patent.

112.    On information and belief, MSN intends to engage in the commercial manufacture, use, offer for sale, sale, marketing, distributing, and/or importation of MSN's ANDA Products prior to the expiration of the '502 patent immediately and imminently upon final approval of ANDA No. 219580. The commercial manufacture, use, offer for sale, sale, marketing, distributing, and/or importation of MSN's ANDA Products prior to the expiration of the '502 patent would infringe one or more claims of the '502 patent.

113.    On information and belief, upon FDA approval of MSN's ANDA Products, MSN will induce and/or contribute to the infringement of one or more claims of the '502 patent under 35 U.S.C. §§ 271(b) and/or (c), unless enjoined by the Court.

114.    On information and belief, MSN has knowledge of the '502 patent and has filed ANDA No. 219580 seeking authorization to engage in the commercial manufacture, use, or sale of MSN's ANDA Products in the United States.  On information and belief, if the FDA approves ANDA No. 219580, healthcare professionals and/or patients will directly infringe under 35 U.S.C. § 271(a), either literally or under the doctrine of equivalents, at least one claim of the '502 patent by the use MSN's ANDA Products according to MSN's provided instructions and/or label.

115.    On information and belief, MSN knows and intends that healthcare professionals and/or patients will use MSN's ANDA Products according to MSN's provided instructions and/or label in an infringing manner, and will therefore induce infringement of one or more claims of the '502 patent with the requisite intent under 35 U.S.C. § 271(b).

116.    Upon information and belief, upon approval, MSN will take active steps to encourage the use of MSN's ANDA Products by healthcare professionals and/or patients with the knowledge and intent that it will be used by healthcare professionals and/or patients in a manner that infringes at least one claim of the '502 patent for the pecuniary benefit of MSN.  Upon information and belief, MSN will thus induce infringement of at least one claim of the '502 patent with the requisite intent under 35 U.S.C. § 271(b).  Upon information and belief, MSN will have actual knowledge of the '502 patent and will actively induce infringement of the '502 patent immediately and imminently upon approval of its ANDA.

117.    On information and belief, if the FDA approves ANDA No. 219580, MSN's

ANDA Products will be specifically labeled for use in practicing at least one claim of the '502 patent, wherein MSN's ANDA Products are a material part of the claimed invention, wherein MSN knows and intends that healthcare professionals and/or patients will use MSN's ANDA Products in accordance with the instructions and/or label provided by MSN in practicing at least one claim of the '502 patent, and wherein MSN's ANDA Products are not a staple article or commodity of commerce suitable for substantial non-infringing use.   Upon information and belief, MSN will thus contribute to the infringement of at least one claim of the '502 patent under 35 U.S.C. § 271(c).

118.    Upon information and belief, MSN's actions relating to ANDA No. 219580 complained of herein were done by and for the benefit of MSN.

119.    If MSN's marketing and sale of MSN's ANDA Products prior to the expiration of the '502 patent is not enjoined, Plaintiffs will suffer substantial and irreparable harm for which there is no adequate remedy at law.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests that this Court grant the following relief:

1.    A judgment that the claims of the '109, '702, '612, '260, '091, and '502 patents are not invalid or unenforceable, and are infringed by the MSN Defendants' submission of ANDA No. 219580 under 35 U.S.C. §271(e)(2)(A), and that the MSN Defendants' making, using, offering to sell, or selling in the United States, or importing into the United States, MSN's ANDA Products will infringe the '109, '702, '612, '260, '091, and '502 patents under 35 U.S.C. §§ 271(b), (c), and/or (e);

2.    An order pursuant to 35 U.S.C. § 271(e)(4)(A) providing that the effective date of any approval by the FDA of ANDA No. 219580 shall be a date that is not earlier than the latest expiration date of the '109, '702, '612, '260, '091, and '502 patents, including any extensions

and/or additional periods of exclusivity to which Plaintiff is or becomes entitled;

3.      An order permanently enjoining each of the MSN Defendants and its parent corporation, affiliates, subsidiaries, and each of its officers, agents, servants, employees, and those acting in privity or concert with them, from making, using, offering to sell, or selling in the United States, or importing into the United States MSN's ANDA Products until after the last expiration date of the '109, '702, '612, '260, '091, and '502 patents, including any extensions and/or additional periods of exclusivity to which Plaintiff is or becomes entitled, in accordance with 35 U.S.C. § 271(e)(4)(B) and 35 U.S.C. § 283;

4.      Damages or other monetary relief to Plaintiff if the MSN Defendants engage in commercial manufacture, use, offers to sell, sale, or importation in or into the United States of MSN's ANDA Products prior to the latest expiration date of the '109, '702, '612, '260, '091, and '502 patents, including any extensions and/or additional periods of exclusivity to which Plaintiff is or becomes entitled, in accordance with 35 U.S.C. § 271(e)(4)(C); and

5.      Such further and additional relief as this Court deems just and proper, including any appropriate relief under 35 U.S.C. § 285.

Dated: April 25, 2025

Respectfully submitted,

**McCARTER & ENGLISH, LLP**


By: _/s/ Cynthia S. Betz_____
Cynthia S. Betz
Mark M. Makhail
Four Gateway Center
100 Mulberry Street
4 Gateway Center
Newark, NJ 07102
973-622-4444
cbetz@mccarter.com
mmakhail@mccarter.com

Of Counsel:

Jane M. Love, Ph.D. (*pro hac vice* forthcoming)
Robert Trenchard (*pro hac vice* forthcoming)
Allyson E. Parks (*pro hac vice* forthcoming)
Emil Nachman (*pro hac vice* forthcoming)
Spencer W. Vaughan (*pro hac vice* forthcoming)
**GIBSON, DUNN & CRUTCHER LLP**
200 Park Avenue
New York, NY 10166-0193
212-351-4000
jlove@gibsondunn.com
rtrenchard@gibsondunn.com
aparks@gibsondunn.com
enachman@gibsondunn.com
svaughan@gibsondunn.com

*Attorneys for Plaintiff American Regent, Inc.*

## LOCAL RULE 11.2 CERTIFICATION

Pursuant to Local Civil Rule 11.2, I hereby certify that the matter in controversy is not the subject of any other action pending in any court or of any pending arbitration or administrative proceeding, except as provided below.

United States Patent Nos. 7,612,109 ("the '109 patent"); 7,754,702 ("the '702 patent"); and 8,895,612 ("the '612 patent") were the subject of now-closed proceedings before this Court including those cases consolidated under the matter *VIFOR (INTERNATIONAL) AG et al v. MYLAN LABORATORIES LTD*. et al., 3:19-cv-13955-FLW-DEA. The Defendants in this matter were not involved in those cases.

United States Patent No. 7,754,702 ("the '702 patent") is currently the subject of proceedings before this Court in *AMERICAN REGENT, INC. F/K/A LUITPOLD PHARMACEUTICALS, INC. v. MSN LABORATORIES PRIVATE LIMITED et al.*, 3:34-cv-10675. The Defendants in this matter are the same Defendants in this case.

United States Patent No. 7,612,109 ("the '109 patent"); 7,754,702 ("the '702 patent"); 8,895,612 ("the '612 patent"); 11,364,260 ("the '260 patent"); 11,433,091 ("the '091 patent"); and 11,478,502 ("the '502 patent") are currently the subject of proceedings before this Court in *VIFOR (INTERNATIONAL) AG et al v. DR REDDY'S LABORATORIES, LTD. et al.*, 3:24-cv-06833-GC-JBD. The Defendants in this matter are not parties in that case, but the Defendants have filed a motion to consolidate with that case.

United States Patent No. 7,612,109 ("the '109 patent"); 7,754,702 ("the '702 patent"); 8,895,612 ("the '612 patent"); 11,364,260 ("the '260 patent"); 11,433,091 ("the '091 patent"); and 11,478,502 ("the '502 patent") are currently the subject of proceedings before this Court in *VIFOR (INTERNATIONAL) AG et al v. APOTEX INC. et al.*, 1:25-cv-00211-UNA (D. Del.). The Defendants in this matter are not involved in that case.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated: April 25, 2025                    /s/ Cynthia S. Betz
                                         Cynthia S. Betz



# EXHIBIT 5

William P. Deni, Jr.
Charles H. Chevalier
J. Brugh Lower
**GIBBONS P.C.**
One Gateway Center
Newark, New Jersey 07102
Tel: (973) 596-4500
Fax: (973) 596-0545

*Attorneys for Plaintiffs*
*Vifor (International) AG and*
*American Regent, Inc.*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| VIFOR (INTERNATIONAL) AG and AMERICAN REGENT, INC.,<br><br>        Plaintiffs,<br><br>v.<br><br>MYLAN LABORATORIES LTD.,<br><br>        Defendant. | Civil Action No. 19-13955<br><br>*Document Electronically Filed* |

**COMPLAINT FOR PATENT INFRINGEMENT**

Plaintiffs Vifor (International) AG ("Vifor") and American Regent, Inc. ("American Regent") (collectively, "Plaintiffs"), by their attorneys, hereby allege as follows:

**NATURE OF THE ACTION**

1.      This is an action for patent infringement arising under the patent laws of the United States, Title 35, United States Code, against Mylan Laboratories Ltd. ("Mylan"). This action relates to Abbreviated New Drug Application ("ANDA") No. 212572, filed by Mylan with the U.S. Food and Drug Administration ("FDA") for approval to market a generic version of Plaintiffs' Injectafer®, ferric carboxymaltose injection (750 mg/15 ml) ("Mylan's ANDA

Product") prior to the expiration of United States Patent Nos. 7,612,109 ("the '109 patent");

7,754,702 ("the '702 patent"); 8,895,612 ("the '612 patent"); and 9,376,505 ("the '505 patent").

The '109, '702, '612, and '505 patents are listed in FDA's Approved Drug Products with

Therapeutic Equivalence Evaluations ("Orange Book") for Injectafer®.

## THE PARTIES

2.    Plaintiff Vifor is a company organized and existing under the laws of Switzerland,

having a principal place of business at Rechenstraße 37, CH-9001, St. Gallen, Switzerland.

3.    Vifor is engaged in the business of creating, developing, and bringing to market

revolutionary drug products, including treatments for iron deficiency anemia.

4.    Plaintiff American Regent is a corporation organized and existing under the laws

of the State of New York, with a principal place of business at 5 Ramsey Road, Shirley, New

York 11967.  American Regent was formerly known as Luitpold Pharmaceuticals, Inc., until

January 2, 2019, when its New York Certificate of Incorporation was amended to change the

name of the corporation to American Regent, Inc.  American Regent is a subsidiary of Daiichi

Sankyo, Inc, which is located at 211 Mt. Airy Road, Basking Ridge, New Jersey 07920.

5.    Vifor and American Regent developed Injectafer®.  American Regent licenses

Injectafer® from Vifor, and American Regent markets, distributes, and sells injectable

pharmaceutical drug products, including Injectafer®, in this judicial district and throughout the

United States.

6.    On information and belief, Defendant Mylan is a company organized and existing

under the laws of India, with a principal place of business at Plot No. 564/A/22, Road No. 92,

Jubilee Hills 500034, Hyderabad, India.

7.     On information and belief, Mylan is a generic pharmaceutical company that develops and manufactures generic pharmaceutical products that are marketed and sold throughout the United States.

## JURISDICTION AND VENUE

8.     This action arises under the patent laws of the United States, 35 U.S.C. §§ 100, et seq., and this Court has jurisdiction over the subject matter of this action under 28 U.S.C. §§ 1331 and 1338(a).

9.     On information and belief, this Court has personal jurisdiction over Mylan, under the New Jersey state long arm statute and consistent with due process of law, because it regularly does or solicits business in New Jersey, engages in other persistent courses of conduct in New Jersey, and/or derives substantial revenue from services or things used or consumed in New Jersey, demonstrating that Mylan has systematic and continuous contacts with this judicial district.

10.     On information and belief, Mylan purposefully has conducted and continues to conduct business in this judicial district by manufacturing, importing, marketing, and distributing pharmaceutical products, including generic drug products, either by itself or through its parent corporation, subsidiaries and/or affiliates, throughout the United States, including in this judicial district.

11.     On information and belief, Mylan is subject to personal jurisdiction in this judicial district through its pursuit of regulatory approval for Mylan's ANDA Product for the commercial manufacture, use, and/or sale of Mylan's ANDA Product, if approved, in this judicial district and to residents of this judicial district.  Through at least these activities, Mylan has purposely

availed itself of the rights and benefits of New Jersey law such that it should reasonably anticipate being haled into court in this judicial district.

12.     On information and belief, Mylan has been, and continues to be, wholly responsible for the drafting, submission, request for approval, and maintenance of ANDA No. 212572.  Mylan's "Notice of Paragraph IV Certification" dated May 7, 2019 ("Mylan's Notice Letter") and sent to Plaintiffs pursuant to § 505(j)(2)(B)(ii) of the Federal Food, Drug, and Cosmetic Act and § 314.95 of the Code of Federal Regulations, identified "Mylan Laboratories Ltd." as the entity which submitted ANDA No. 212572 to the FDA and the entity which seeks FDA approval of its ANDA prior to the expiration of the '109, '702, '612, and '505 patents.

13.     On information and belief, if ANDA No. 212572 is approved, Mylan will import, market, distribute, offer for sale, and/or sell Mylan's ANDA Product, either by itself or through its parent corporation, subsidiaries and/or affiliates, in the United States, including in New Jersey, and will derive substantial revenue from the use or consumption of Mylan's ANDA Product in the state of New Jersey.

14.     On information and belief, if ANDA No. 212572 is approved, Mylan's ANDA Product will be marketed, distributed, offered for sale, and/or sold in New Jersey; prescribed by physicians practicing in New Jersey; administered by healthcare professionals located within New Jersey; and/or used by patients in New Jersey, all of which will have a substantial effect on New Jersey.

15.     If ANDA No. 212572 is approved, Vifor and American Regent will be harmed by the marketing, distribution, offer for sale, and/or sale of Mylan's ANDA Product, including in New Jersey.

16.     On information and belief, Mylan has affirmatively availed itself of the jurisdiction of this Court by filing counterclaims in this judicial district.  *See, e.g., AstraZeneca AB et al. v. Mylan Pharmaceuticals Inc. et al.*, Civil Action No. 13-04022 (D.N.J. Apr. 28, 2014), ECF No. 51 at 30.

17.     Alternatively, this Court has personal jurisdiction over Mylan pursuant to Fed. R. Civ. P. 4(k)(2), to the extent it is not subject to personal jurisdiction in the courts of any state, because Mylan is a foreign entity, Plaintiffs' claims arise under federal patent law, and the exercise of jurisdiction satisfies due process requirements, at least because, upon information and belief,  Mylan has systematic and continuous contacts throughout the United States by manufacturing, importing, marketing, and/or distributing pharmaceutical products, including generic drug products, either by itself or through its parent corporation, subsidiaries and/or affiliates.

18.     On information and belief, venue is proper in this judicial district under 28 U.S.C. §§ 1391 and 1400(b) for at least the reason that Mylan is a foreign corporation not residing in any United States district and may be sued in any judicial district that has personal jurisdiction, including this judicial district.  Mylan has previously admitted, that as a foreign entity, venue is proper against it in New Jersey.  *Valeant Pharm. N. Am. LLC v. Mylan Pharm. Inc.*, Civil Action No. 18-14305, ECF No. 21 at 6 n.1 ("MLL [Mylan Laboratories Ltd.] is incorporated in India. D.I. 1 ¶ 6. Under *In re HTC Corp.*, 889 F. 3d 1349 (Fed. Cir. 2018), venue for foreign corporations is governed by the general venue statute, which provides that 'a defendant not resident in the United States may be sued in any judicial district.' 28 U.S.C. § 1391(c)(3). The Mylan Defendants do not dispute that venue is proper over MLL as a foreign corporation in any judicial district ….").

**PATENTS-IN-SUIT**

19.     The U.S. Patent and Trademark Office ("PTO") issued the '109 patent, entitled "Water-Soluble Iron-Carbohydrate Complexes, Production Thereof, and Medicaments Containing Said Complexes," on November 3, 2009 to inventors Peter Geisser, Erik Philipp, and Walter Richle.  Vifor is the assignee of the '109 patent and has the right to enforce it.  The '109 patent expires on February 5, 2024, excluding any patent term extension.  The '109 patent claims, *inter alia*, compositions and methods of making iron carbohydrate complexes.  A true and correct copy of the '109 patent is attached hereto as **Exhibit A**.

20.     The PTO issued the '702 patent entitled "Methods and Compositions For Administration of Iron," on July 13, 2010 to inventors Mary Jane Helenek, Marc L. Tokars, and Richard P. Lawrence.  At the time of its issue, the '702 patent was assigned to Luitpold Pharmaceuticals, Inc., and on January 11, 2019, the assignment records for the '702 patent were amended to reflect that Luitpold Pharmaceuticals, Inc. had changed its name to American Regent, Inc.  The Change of Name of the assignee for the '702 patent is recorded by the PTO at Reel 048067, Frame 0271.  American Regent is the current assignee of the '702 patent and has the right to enforce it.  The '702 patent expires on February 15, 2028.  The '702 patent claims, *inter alia*, methods of treating iron deficiency anemia by administering an iron carbohydrate complex.  A true and correct copy of the '702 patent is attached hereto as **Exhibit B**.

21.     The PTO issued the '612 patent entitled "Methods and Compositions For Administration of Iron," on November 25, 2014 to inventors Mary Jane Helenek, Marc L. Tokars, and Richard P. Lawrence.  At the time of its issue, the '612 patent was assigned to Luitpold Pharmaceuticals, Inc., and on January 11, 2019, the assignment records for the '612 patent were amended to reflect that Luitpold Pharmaceuticals, Inc. had changed its name to

American Regent, Inc.  The Change of Name of the assignee for the '612 patent is recorded by the PTO at Reel 048067, Frame 0271.  American Regent is the current assignee of the '612 patent and has the right to enforce it.  The '612 patent expires on January 8, 2027.  The '612 patent claims, *inter alia*, methods of treating iron deficiency anemia by the administration of an iron carboxymaltose complex.  A true and correct copy of the '612 patent is attached hereto as **Exhibit C**.

22.     The PTO issued the '505 patent entitled "Aqueous Iron Carbohydrate Complexes, Their Production, and Medicaments Containing Them," on June 28, 2016 to inventors Peter Geisser, Erik Philipp, and Walter Richle.  Vifor is the assignee of the '505 patent and has the right to enforce it.  The '505 patent expires on October 20, 2023.  The '505 patent claims, *inter alia*, compositions and methods of making iron carbohydrate complexes comprising at least one oxidized maltodextrin.  A copy of the '505 patent is attached hereto as **Exhibit D**.

23.     American Regent is the owner of NDA No. 203565 for Injectafer® (ferric carboxymaltose) which the FDA approved on July 25, 2013.  The Orange Book lists the NDA holder as Luitpold Pharmaceuticals, Inc.  Luitpold Pharmaceuticals, Inc. changed its name to American Regent, Inc., effective January 2, 2019.  The FDA has been informed of this name change.  In conjunction with NDA No. 203565, the '109, '702, '612, and '505 patents are listed in the Orange Book.

**MYLAN'S INFRINGING ANDA SUBMISSION**

24.     Plaintiffs reallege, and incorporate in full herein, each of the preceding paragraphs 1-23.

- 7 -

25.     Plaintiffs received a letter from Mylan dated May 7, 2019, purporting to be a Notice of Paragraph IV Certification for ANDA No. 212572 pursuant to 21 U.S.C. § 355(j)(2)(B)(ii) and 21 § C.F.R. 314.95.

26.     Mylan's Notice Letter states that "Mylan Laboratories Ltd." has submitted to the FDA ANDA No. 212572 seeking to engage in the commercial manufacture, use, and/or sale of Mylan's ANDA Product before the expiration of the '109, '702, '612, and '505 patents.  Mylan's Notice Letter did not identify any other entity that is involved in the preparation, filing, and/or maintenance of ANDA No. 212572.

27.     On information and belief, Mylan submitted ANDA No. 212572 to the FDA under Section 505(j) of the Act, 21 U.S.C. § 355(j), seeking approval to, and intending to, manufacture, use, import, offer to sell, and/or sell Mylan's ANDA Product, either by itself or through its parent corporation, subsidiaries and/or affiliates, throughout the United States before the expiration of the '109, '702, '612, and '505 patents.

28.     By filing ANDA NO. 212572, and as indicated in Mylan's Notice Letter, Mylan has represented to the FDA that Mylan's ANDA Product has the same active ingredient as Injectafer®, has the same dosage form and strength as Injectafer®, and is bioequivalent to Injectafer®.

29.     On information and belief, Mylan is seeking approval to market Mylan's ANDA Product for the same approved indications as Injectafer®.

30.     Mylan's Notice Letter states that it has attached a "detailed statement of the present factual and legal bases for Mylan's belief that the '109, '702, '612, and '505 patents are invalid, unenforceable and/or will not be infringed" pursuant to 21 U.S.C. § 355(j)(2)(B)(iv)(II) and 21 C.F.R. § 314.95(c)(6).  Neither Mylan's Notice Letter nor its attached "Detailed

Statement of the Factual and Legal Bases for Mylan's Paragraph IV Certification Concerning United States Patents Nos. 7,612,109, 7,754,702, 8,895,612, AND 9,376,505" provide any substantive non-infringement allegation with respect to any claim of any of the '109, '702, '612, or '505 patents.

31.     This Complaint is being filed before the expiration of the forty-five days from the date Plaintiffs received Mylan's Notice Letter.

## COUNT I (INFRINGEMENT OF THE '109 PATENT)

32.     Plaintiffs reallege, and incorporate in full herein, each of the preceding paragraphs 1-31.

33.     Under 35 U.S.C. § 271(e)(2)(A), Mylan has infringed at least one claim of the '109 patent, including for example claims 1 through 5, by submitting, or causing to be submitted to the FDA, ANDA No. 212572 seeking approval to manufacture, use, import, offer to sell and/or sell Mylan's ANDA Product before the expiration date of the '109 patent.  On information and belief, the product described in ANDA No. 212572 would infringe, either literally or under the doctrine of equivalents, at least one claim, including for example claims 1 through 5, of the '109 patent under 35 U.S.C. § 271(e)(2)(A).

34.     In Mylan's Notice Letter, Mylan did not provide any substantive non-infringement allegation of any of the claims of the '109 patent, and therefore admits infringement of the '109 patent.

35.     On information and belief, based on Mylan's Notice Letter, the absence of any substantive non-infringement allegation in Mylan's Notice Letter, the fact that Mylan has represented to the FDA that Mylan's ANDA Product is bioequivalent, pharmaceutically equivalent, and therapeutically equivalent to Injectafer®, and the fact that, pursuant to 21 C.F.R.

§ 314.94, Mylan is required to substantially copy the FDA-approved Injectafer® labeling,

Mylan's ANDA Product comprises an aqueous solution of ferric carboxymaltose which is

formulated for parenteral application, wherein the ferric carboxymaltose, an iron carbohydrate

complex, has a weight average molecular weight of 80,000 to 300,000 daltons, and satisfies all

of the limitations of at least claims 1 through 5 of the '109 patent.

36.     On information and belief, upon FDA approval of Mylan's ANDA Product,

Mylan will infringe at least one claim, including for example claims 1 through 5, of the '109

patent under 35 U.S.C. § 271(a) either literally or under the doctrine of equivalents, by making,

using, importing, offering to sell, and/or selling Mylan's ANDA Product in the United States,

and/or will induce infringement of one or more claims of the '109 patent under 35 U.S.C.

§ 271(b), unless enjoined by the Court.

37.     On information and belief, Mylan has knowledge of the '109 patent and has filed

ANDA No. 212572 seeking authorization to commercially manufacture, use, offer for sale,

and/or sell Mylan's ANDA Product in the United States.  On information and belief, if the FDA

approves ANDA No. 212572, healthcare professionals and/or patients will directly infringe

under 35 U.S.C. § 271(a), either literally or under the doctrine of equivalents, at least one claim

of the '109 patent, including for example claims 1 through 5, by the use Mylan's ANDA Product

according to Mylan's provided instructions and/or label.

38.     On information and belief, Mylan knows and intends that health care

professionals and/or patients will use Mylan's ANDA Product according to Mylan's provided

instructions and/or label in an infringing manner, and will therefore induce infringement of one

or more claims of the '109 patent with the requisite intent under 35 U.S.C. § 271(b).

39. Upon information and belief, upon approval, Mylan will take active steps to encourage the use of Mylan's ANDA Product by healthcare professionals and/or patients with the knowledge and intent that it will be used by healthcare professionals and/or patients in a manner that infringes at least one claim, including for example claims 1 through 5, of the '109 patent for the pecuniary benefit of Mylan. Upon information and belief, Mylan will thus induce infringement of at least one claim of the '109 patent with the requisite intent under 35 U.S.C. § 271(b).

40. Upon information and belief, Mylan's actions relating to Mylan's ANDA No. 212572 complained of herein were done by and for the benefit of Mylan.

41. If Mylan's marketing and sale of Mylan's ANDA Product prior to the expiration of the '109 patent is not enjoined, Plaintiffs will suffer substantial and irreparable harm for which there is no adequate remedy at law.

## <u>COUNT II (INFRINGEMENT OF THE '702 PATENT)</u>

42. Plaintiffs reallege, and incorporate in full herein, each of the preceding paragraphs 1-31.

43. Under 35 U.S.C. § 271(e)(2)(A), Mylan has infringed at least one claim of the '702 patent, including for example claims 17, 24, and 47, by submitting, or causing to be submitted to the FDA, ANDA No. 212572 seeking approval to manufacture, use, import, offer to sell and/or sell Mylan's ANDA Product before the expiration date of the '702 patent. On information and belief, the product described in ANDA No. 212572 would infringe, either literally or under the doctrine of equivalents, at least one claim including for example claims 17, 24, and 47 of the '702 patent under 35 U.S.C. § 271(e)(2)(A).

44.     In Mylan's Notice Letter, Mylan did not provide any substantive non-infringement allegation of any of the claims of the '702 patent, and therefore admits infringement of the '702 patent.

45.     On information and belief, based on Mylan's Notice Letter, the absence of any substantive non-infringement allegation in Mylan's Notice Letter, the fact that Mylan has represented to the FDA that Mylan's ANDA Product is bioequivalent, pharmaceutically equivalent, and therapeutically equivalent to Injectafer®, and the fact that, pursuant to 21 C.F.R. § 314.94, Mylan is required to substantially copy the FDA-approved Injectafer® labeling, Mylan's ANDA Product is an iron carboxymaltose complex having a molecular weight of about 100,000 daltons to about 350,000 daltons, and will be used in a method of treating iron deficiency anemia, whereby Mylan's ANDA Product will be administered intravenously  in about 15 minutes or less to a subject in need thereof in a single dosage unit of at least about 0.6 grams of elemental iron, and the use of Mylan's ANDA Product will satisfy all of the limitations of at least claims 17, 24,  and 47 of the '702 patent.

46.     On information and belief, upon FDA approval of Mylan's ANDA Product, Mylan will induce and/or contribute to the infringement of one or more claims, including for example claims 17, 24, and 47, of the '702 patent under 35 U.S.C. §§ 271(b) and/or (c), unless enjoined by the Court.

47.     On information and belief, Mylan has knowledge of the '702 patent and has filed ANDA No. 212572 seeking authorization to commercially manufacture, use, offer for sale, and sell Mylan's ANDA Product in the United States.  On information and belief, if the FDA approves ANDA No. 212572, healthcare professionals and/or patients will directly infringe under 35 U.S.C. § 271(a), either literally or under the doctrine of equivalents, at least one claim

of the '702 patent, including for example claims 17, 24, and 47, by the use Mylan's ANDA

Product according to Mylan's provided instructions and/or label.

48.     On information and belief, Mylan knows and intends that health care

professionals and/or patients will use Mylan's ANDA Product according to Mylan's provided

instructions and/or label in an infringing manner, and will therefore induce infringement of one

or more claims of the '702 patent with the requisite intent under 35 U.S.C. § 271(b).

49.     Upon information and belief, upon approval, Mylan will take active steps to

encourage the use of Mylan's ANDA Product by healthcare professionals and/or patients with

the knowledge and intent that it will be used by healthcare professionals and/or patients in a

manner that infringes at least one claim, including for example claims 17, 24, and 47, of the '702

patent for the pecuniary benefit of Mylan.  Upon information and belief, Mylan will thus induce

infringement of at least one claim of the '702 patent with the requisite intent under 35 U.S.C. §

271(b).

50.     On information and belief, if the FDA approves ANDA No. 212572, Mylan's

ANDA Product will be specifically labeled for use in practicing at least one claim including for

example claims 17, 24, and 47 of the '702 patent, wherein Mylan's ANDA Product is a material

part of the claimed invention, wherein Mylan knows and intends that healthcare professionals

and/or patients will use Mylan's ANDA Product in accordance with the instructions and/or label

provided by Mylan in practicing at least one claim, including for example claims 17, 24, and 47

of the '702 patent, and wherein Mylan's ANDA Product is not a staple article or commodity of

commerce suitable for substantial non-infringing use.  Upon information and belief, Mylan will

thus contribute to the infringement of at least one claim of the '702 patent under 35 U.S.C. §

271(c).

51.     Upon information and belief, Mylan's actions relating to Mylan's ANDA No. 212572 complained of herein were done by and for the benefit of Mylan.

52.     If Mylan's marketing and sale of Mylan's ANDA Product prior to the expiration of the '702 patent is not enjoined, Plaintiffs will suffer substantial and irreparable harm for which there is no adequate remedy at law.

## COUNT III (INFRINGEMENT OF THE '612 PATENT)

53.     Plaintiffs reallege, and incorporate in full herein, each of the preceding paragraphs 1-31.

54.     Under 35 U.S.C. § 271(e)(2)(A), Mylan has infringed at least one claim of the '612 patent, including for example claims 2, 4, and 5, by submitting, or causing to be submitted to the FDA, ANDA No. 212572 seeking approval to manufacture, use, import, offer to sell and/or sell Mylan's ANDA Product before the expiration date of the '612 patent.  On information and belief, the product described in ANDA No. 212572 would infringe, either literally or under the doctrine of equivalents, at least one claim including for example claims 2, 4, and 5 of the '612 patent under 35 U.S.C. § 271(e)(2)(A).

55.     In Mylan's Notice Letter, Mylan did not provide any substantive non-infringement allegation of any of the claims of the '612 patent, and therefore admits infringement of the '612 patent.

56.     On information and belief, based on Mylan's Notice Letter, the absence of any substantive non-infringement allegation in Mylan's Notice Letter, the fact that Mylan has represented to the FDA that Mylan's ANDA Product is bioequivalent, pharmaceutically equivalent, and therapeutically equivalent to Injectafer®, and the fact that, pursuant to 21 C.F.R. § 314.94, Mylan is required to substantially copy the FDA-approved Injectafer® labeling,

Mylan's ANDA Product is an iron carboxymaltose complex having a substantially non-immunogenic carbohydrate component and substantially no cross reactivity with anti-dextran antibodies, and will be used in a method of treating iron deficiency anemia associated with chronic kidney disease and/or heavy uterine bleeding, whereby Mylan's ANDA Product will be administered in about 15 minutes or less to a subject in need thereof in a single dosage unit of at least about 0.6 grams of elemental iron, and the use of Mylan's ANDA Product will satisfy all of the limitations of at least claims 2, 4, and 5 of the '702 patent.

57.    On information and belief, upon FDA approval of Mylan's ANDA Product, Mylan will induce and/or contribute to the infringement of one or more claims, including for example claims 2, 4, and 5 of the '612 patent under 35 U.S.C. §§ 271(b) and/or (c), unless enjoined by the Court.

58.    On information and belief, Mylan has knowledge of the '612 patent and has filed ANDA No. 212572 seeking authorization to commercially manufacture, use, offer for sale, and/or sell Mylan's ANDA Product in the United States.  On information and belief, if the FDA approves ANDA No. 212572, health care professionals and/or patients will directly infringe under 35 U.S.C. § 271(a), either literally or under the doctrine of equivalents, at least one claim of the '612 patent, including for example claims 2, 4, and 5, by the use Mylan's ANDA Product according to Mylan's provided instructions and/or label.

59.    On information and belief, Mylan knows and intends that healthcare professionals and/or patients will use Mylan's ANDA Product according to Mylan's provided instructions and/or label in an infringing manner, and will therefore induce infringement of one or more claims of the '612 patent with the requisite intent under 35 U.S.C. § 271(b).

60.     Upon information and belief, upon approval, Mylan will take active steps to encourage the use of Mylan's ANDA Product by healthcare professionals and/or patients with the knowledge and intent that it will be used by healthcare professionals and/or patients in a manner that infringes at least one claim, including for example claims 2, 4, and 5, of the '612 patent for the pecuniary benefit of Mylan.  Upon information and belief, Mylan will thus induce infringement of at least one claim of the '612 patent with the requisite intent under 35 U.S.C. § 271(b).

61.     On information and belief, if the FDA approves ANDA No. 212572, Mylan's ANDA Product will be specifically labeled for use in practicing at least one claim including for example claims 2, 4, and 5, of the '612 patent, wherein Mylan's ANDA Product is a material part of the claimed invention, wherein Mylan knows and intends that healthcare professionals and/or patients will use Mylan's ANDA Product in accordance with the instructions and/or label provided by Mylan in practicing at least one claim, including for example claims 2, 4, and 5, of the '612 patent, and wherein Mylan's ANDA Product is not a staple article or commodity of commerce suitable for substantial non-infringing use.  Upon information and belief, Mylan will thus contribute to the infringement of at least one claim of the '612 patent under 35 U.S.C. § 271(c).

62.     Upon information and belief, Mylan's actions relating to Mylan's ANDA No. 212572 complained of herein were done by and for the benefit of Mylan.

63.     If Mylan's marketing and sale of Mylan's ANDA Product prior to the expiration of the '612 patent is not enjoined, Plaintiffs will suffer substantial and irreparable harm for which there is no adequate remedy at law.

## COUNT IV (INFRINGEMENT OF THE '505 PATENT)

64.     Plaintiffs reallege, and incorporate in full herein, each of the preceding paragraphs 1-31.

65.     In Mylan's Notice Letter, Mylan did not provide any substantive non-infringement allegation of any of the claims of the '505 patent, and therefore admits infringement of the '505 patent.

66.     On information and belief, based on Mylan's Notice Letter, the absence of any substantive non-infringement allegation in Mylan's Notice Letter, the fact that Mylan has represented to the FDA that Mylan's ANDA Product is bioequivalent, pharmaceutically equivalent, and therapeutically equivalent to Injectafer®, and the fact that, pursuant to 21 C.F.R. § 314.94, Mylan is required to substantially copy the FDA-approved Injectafer® labeling, Mylan's ANDA Product is an aqueous solution comprising an iron (III) carbohydrate complex comprising at least one oxidized maltodextrin, wherein the iron (III) carbohydrate complex has a weight average molecular weight of 118,000 to 400,000 daltons, wherein the aqueous solution of the iron (III) carbohydrate has an iron content of between 1% and 20% weight/volume of the solution, and satisfies all of the limitations of at least claims 1, 10, 19, and 28 of the '505 patent.

67.     On information and belief, upon FDA approval of Mylan's ANDA Product, Mylan will infringe at least one claim, including for example claims 1, 10, 19, and 28, of the '505 patent under 35 U.S.C. § 271(a) either literally or under the doctrine of equivalents, by making, using, importing, offering to sell, and/or selling Mylan's ANDA Product in the United States, and/or will induce infringement of one or more claims of the '505 patent under 35 U.S.C. § 271(b), unless enjoined by the Court.

68.     On information and belief, Mylan has knowledge of the '505 patent and has filed ANDA No. 212572 seeking authorization to commercially manufacture, use, offer for sale, and/or sell Mylan's ANDA Product in the United States.  On information and belief, if the FDA approves ANDA No. 212572, healthcare professionals and/or patients will directly infringe under 35 U.S.C. § 271(a), either literally or under the doctrine of equivalents, at least one claim of the '505 patent, including for example claims 1, 10, 19, and 28, by the use of Mylan's ANDA Product according to Mylan's provided instructions and/or label.

69.     On information and belief, Mylan knows and intends that health care professionals and/or patients will use Mylan's ANDA Product according to Mylan's provided instructions and/or label in an infringing manner, and will therefore induce infringement of one or more claims of the '505 patent with the requisite intent under 35 U.S.C. § 271(b).

70.     Upon information and belief, upon approval, Mylan will take active steps to encourage the use of Mylan's ANDA Product by healthcare professionals and/or patients with the knowledge and intent that it will be used by healthcare professionals and/or patients in a manner that infringes at least one claim, including for example claims 1, 10, 19, and 28, of the '505 patent for the pecuniary benefit of Mylan.  Upon information and belief, Mylan will thus induce infringement of at least one claim of the '505 patent with the requisite intent under 35 U.S.C. § 271(b).

71.     Upon information and belief, Mylan's actions relating to Mylan's ANDA No. 212572 complained of herein were done by and for the benefit of Mylan.

72.     If Mylan's marketing and sale of Mylan's ANDA Product prior to the expiration of the '505 patent is not enjoined, Plaintiffs will suffer substantial and irreparable harm for which there is no adequate remedy at law.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs respectfully request that this Court grant the following relief:

1.     A judgment that the claims of the '109, '702, '612, and '505 patents are not invalid or unenforceable, and are infringed by Mylan's submission of ANDA No. 212572 under 35 U.S.C. §271(e)(2)(A), and that Mylan's making, using, offering to sell, or selling in the United States, or importing into the United States, Mylan's ANDA Product will infringe the '109, '702, '612, and '505 patents under 35 U.S.C. §§ 271(a), (b), and/or (c);

2.     An order pursuant to 35 U.S.C. § 271(e)(4)(A) providing that the effective date of any approval by the FDA of ANDA No. 212572 shall be a date that is not earlier than the latest expiration date of the '109, '702, '612, and '505 patents, including any extensions and/or additional periods of exclusivity to which Plaintiffs are or become entitled;

3.     An order permanently enjoining Mylan, its parent corporation, affiliates, subsidiaries, and each of its officers, agents, servants, employees, and those acting in privity or concert with them, from making, using, offering to sell, or selling in the United States, or importing into the United States Mylan's ANDA Product until after the last expiration date of the '109, '702, '612, and '505 patents, including any extensions and/or additional periods of exclusivity to which Plaintiffs are or become entitled, in accordance with 35 U.S.C. § 271(e)(4)(B) and 35 U.S.C. § 283;

4.     Damages or other monetary relief to Plaintiffs if Mylan engages in commercial manufacture, use, offers to sell, sale, or importation in or into the United States of Mylan's ANDA Product prior to the latest expiration date of the '109, '702, '612, and '505 patents, including any extensions and/or additional periods of exclusivity to which Plaintiffs is or becomes entitled, in accordance with 35 U.S.C. § 271(e)(4)(C); and

- 19 -

5. Such further and additional relief as this Court deems just and proper, including

any appropriate relief under 35 U.S.C. § 285.

Dated:  June 18, 2019
        Newark, New Jersey

Respectfully submitted,

s/ William P. Deni, Jr.
William P. Deni, Jr.
Charles H. Chevalier
J. Brugh Lower
**GIBBONS P.C.**
One Gateway Center
Newark, New Jersey 07102
Tel: (973) 596-4500
Fax: (973) 596-0545
wdeni@gibbonslaw.com
cchevalier@gibbonslaw.com
jlower@gibbonslaw.com

*Attorneys for Plaintiffs*
*Vifor (International) AG and*
*American Regent, Inc.*

Of Counsel:

Barbara R. Rudolph (*pro hac vice* to be submitted)
Robert F. Shaffer (*pro hac vice* to be submitted)
Emily R. Gabranski (*pro hac vice* to be submitted)
Constance P. Lee (*pro hac vice* to be submitted)
**FINNEGAN, HENDERSON, FARABOW,**
**GARRETT & DUNNER, LLP**
901 New York Avenue, NW
Washington, DC 20001-4413
Tel:  (202) 408-4000

M. David Weingarten (*pro hac vice* to be submitted)
**FINNEGAN, HENDERSON, FARABOW,**
**GARRETT & DUNNER, LLP**
271 17th Street, NW
Suite 1400
Atlanta, GA 30363-6209
Tel:  (404) 653-6400



# EXHIBIT 6

William P. Deni, Jr.
Charles H. Chevalier
J. Brugh Lower
**GIBBONS P.C.**
One Gateway Center
Newark, New Jersey 07102
Tel: (973) 596-4500
Fax: (973) 596-0545

*Attorneys for Plaintiffs*
*Vifor (International) AG and*
*American Regent, Inc.*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| VIFOR (INTERNATIONAL) AG and AMERICAN REGENT, INC., | Civil Action No. 19-13955 (FLW) (DEA) (CONSOLIDATED) |
| Plaintiffs, | *Document Electronically Filed* |
| v. | |
| SANDOZ INC., | |
| Defendant. | |

**AMENDED COMPLAINT FOR PATENT INFRINGEMENT AGAINST SANDOZ INC.**

Plaintiffs Vifor (International) AG ("Vifor") and American Regent, Inc. ("American Regent") (collectively, "Plaintiffs"), by their attorneys, through this Amended Complaint, which amends the Complaints filed by Plaintiffs against Sandoz Inc. in Civil Action Nos. 19-16305 and 20-1649 prior to consolidation with Civil Action No. 19-13955, hereby allege as follows:

**NATURE OF THE ACTION**

1.      This is an action for patent infringement arising under the patent laws of the United States, Title 35, United States Code, against Sandoz Inc. ("Sandoz").  This action relates to Abbreviated New Drug Application ("ANDA") No. 211725, filed by Sandoz with the U.S.

Food and Drug Administration ("FDA") for approval to market a generic version of Plaintiffs' Injectafer®, ferric carboxymaltose injection (750 mg/15 ml) ("Sandoz's ANDA Product") prior to the expiration of United States Patent Nos. 7,612,109 ("the '109 patent"); 7,754,702 ("the '702 patent"); 8,895,612 ("the '612 patent"); 9,376,505 ("the '505 patent"); and 10,519,252 ("the '252 patent"). The '109, '702, '612, '505, and '252 patents are listed in FDA's Approved Drug Products with Therapeutic Equivalence Evaluations ("Orange Book") for Injectafer®.

## THE PARTIES

2.      Plaintiff Vifor is a company organized and existing under the laws of Switzerland, having a principal place of business at Rechenstraβe 37, CH-9001, St. Gallen, Switzerland.

3.      Vifor is engaged in the business of creating, developing, and bringing to market revolutionary drug products, including treatments for iron deficiency anemia.

4.      Plaintiff American Regent is a corporation organized and existing under the laws of the State of New York, with a principal place of business at 5 Ramsey Road, Shirley, New York 11967.  American Regent was formerly known as Luitpold Pharmaceuticals, Inc., until January 2, 2019, when its New York Certificate of Incorporation was amended to change the name of the corporation to American Regent, Inc.  American Regent is a subsidiary of Daiichi Sankyo, Inc., which is located at 211 Mt. Airy Road, Basking Ridge, New Jersey 07920.

5.      Vifor and American Regent developed Injectafer®.  American Regent licenses Injectafer® from Vifor, and American Regent markets, distributes, and sells injectable pharmaceutical drug products, including Injectafer®, in this judicial district and throughout the United States.  American Regent has contracted with Daiichi Sankyo, Inc., through a Marketing Services Agreement, to market Injectafer® in this judicial district and throughout the United States.

6. On information and belief, Defendant Sandoz is a company organized and existing under the laws of the state of Colorado with its principal place of business at 100 College Road West, Princeton, New Jersey 08540.

7. On information and belief, Sandoz is a generic pharmaceutical company that develops and manufactures generic pharmaceutical products that are marketed and sold throughout the United States.

## JURISDICTION AND VENUE

8. This action arises under the patent laws of the United States, 35 U.S.C. §§ 100, et seq., and this Court has jurisdiction over the subject matter of this action under 28 U.S.C. §§ 1331, 1338(a), 2201 and 2202.

9. On information and belief, this Court has personal jurisdiction over Sandoz, under the New Jersey state long arm statute and consistent with due process of law, because Sandoz maintains its principal place of business in New Jersey. Sandoz has previously admitted that it has a principal place of business in New Jersey. *See, e.g., Celgene Corp. v. Sandoz Inc.*, Civil Action No. 3:18-11026 (D.N.J. Sept. 25, 2018), ECF No. 18 at ¶ 3; *Genentech, Inc., et al. v. Sandoz Inc., et al.*, Civil Action No. 1:17-13507 (D.N.J. Jan. 19, 2018), ECF No. 12 at ¶ 12.

10. On information and belief, Sandoz is subject to personal jurisdiction in New Jersey because it regularly does or solicits business in New Jersey, engages in other persistent courses of conduct in New Jersey, and/or derives substantial revenue from services or things used or consumed in New Jersey, demonstrating that Sandoz has systematic and continuous contacts with this judicial district.

11. On information and belief, Sandoz purposefully has conducted and continues to conduct business in this judicial district by manufacturing, importing, marketing, and distributing pharmaceutical products, including generic drug products, either by itself or through its parent

corporation, subsidiaries and/or affiliates, throughout the United States, including in this judicial district.

12.     On information and belief, Sandoz is registered to do business in the State of New Jersey under Entity Identification Number 0100097265, and Sandoz is also licensed to do business with the New Jersey Department of Health as a "Manufacturer and Wholesale[r]" of pharmaceuticals in the State of New Jersey (Registration Number 5003732).

13.     On information and belief, Sandoz is subject to personal jurisdiction in this judicial district through its pursuit of regulatory approval for Sandoz's ANDA Product for the commercial manufacture, use, and/or sale of Sandoz's ANDA Product, if approved, in this judicial district and to residents of this judicial district.  Through at least these activities, Sandoz has purposely availed itself of the rights and benefits of New Jersey law such that it should reasonably anticipate being haled into court in this judicial district.

14.     On information and belief, Sandoz has been, and continues to be, wholly responsible for the drafting, submission, request for approval, and maintenance of ANDA No. 211725.  Sandoz's "Notice of Paragraph IV Certification" dated July 10, 2019 ("Sandoz's Notice Letter") and sent to Plaintiffs pursuant to § 505(j)(2)(B)(ii) of the Federal Food, Drug, and Cosmetic Act and § 314.95 of the Code of Federal Regulations, identified "Sandoz Inc." as the entity which submitted ANDA No. 211725 to the FDA and the entity which seeks FDA approval of ANDA No. 211725 prior to the expiration of the '109, '702, '612, and '505 patents.

15.     On information and belief, if ANDA No. 211725 is approved, Sandoz will import, market, distribute, offer for sale, and/or sell Sandoz's ANDA Product in the United States, including in New Jersey, and will derive substantial revenue from the use or consumption of Sandoz's ANDA Product in the state of New Jersey.

16.     On information and belief, if ANDA No. 211725 is approved, Sandoz's ANDA

Product will be marketed, distributed, offered for sale, and/or sold in New Jersey; prescribed by

physicians practicing in New Jersey; administered by healthcare professionals located within

New Jersey; and/or used by patients in New Jersey, all of which will have a substantial effect on

New Jersey.

17.     On information and belief, if ANDA No. 211725 is approved, Sandoz will import,

market, distribute, offer for sale, and/or sell Sandoz's ANDA Product, either by itself or through

its parent corporation, subsidiaries and/or affiliates, in the United States, including in New

Jersey, and will derive substantial revenue from the use or consumption of Sandoz's ANDA

Product in the state of New Jersey.

18.     If ANDA No. 211725 is approved, Vifor and American Regent will be harmed by

the marketing, distribution, offer for sale, and/or sale of Sandoz's ANDA Product, including in

New Jersey.

19.     On information and belief, venue is proper in this judicial district under 28 U.S.C.

§§ 1391 and 1400(b) at least because Sandoz has committed an act of infringement in New

Jersey and Sandoz has a regular and established place of business in New Jersey.

20.     On information and belief, Sandoz has committed acts of infringement under the

meaning of 28 U.S.C. § 1400(b) by submitting ANDA No. 211725 to the FDA, by taking steps

indicating its intent to market Sandoz's ANDA Product in New Jersey, and by the acts that it

non-speculatively intends to  take in New Jersey if its ANDA receives final FDA approval.

21.     On information and belief, Sandoz has taken steps in New Jersey, including

preparing ANDA No. 211725 and communicating with the FDA regarding ANDA No. 211725,

that indicate its intent to market Sandoz's ANDA product.  As set forth above, on information

and belief, if ANDA No. 211725 is approved, Sandoz intends to commit acts of patent

infringement in New Jersey, including marketing, distributing, offering for sale, and/or selling

Sandoz's ANDA Product.

22.     On information and belief, Sandoz Inc. has a regular and established place of

business in New Jersey under the meaning of 28 U.S.C. § 1400(b) because, *inter alia*, its

principal place of business is in New Jersey.  As set forth above, on information and belief,

Sandoz Inc. maintains regular and established places of business in New Jersey, including

offices, laboratories, and/or facilities at 100 College Road West, Princeton, NJ 08540 and One

Health Plaza, Bldg. 435, East Hanover, NJ 07936.

## PATENTS-IN-SUIT

23.     The U.S. Patent and Trademark Office ("PTO") issued the '109 patent, entitled

"Water-Soluble Iron-Carbohydrate Complexes, Production Thereof, and Medicaments

Containing Said Complexes," on November 3, 2009 to inventors Peter Geisser, Erik Philipp, and

Walter Richle.  Vifor is the assignee of the '109 patent and has the right to enforce it.  The '109

patent expires on February 5, 2024, excluding any patent term extension.  The '109 patent

claims, *inter alia*, compositions and methods of making iron carbohydrate complexes.  A true

and correct copy of the '109 patent is attached hereto as **Exhibit A**.

24.     The PTO issued the '702 patent entitled "Methods and Compositions For

Administration of Iron," on July 13, 2010 to inventors Mary Jane Helenek, Marc L. Tokars, and

Richard P. Lawrence.  At the time of its issue, the '702 patent was assigned to Luitpold

Pharmaceuticals, Inc., and on January 11, 2019, the assignment records for the '702 patent were

amended to reflect that Luitpold Pharmaceuticals, Inc. had changed its name to American

Regent, Inc.  The Change of Name of the assignee for the '702 patent is recorded by the PTO at

Reel 048067, Frame 0271.  American Regent is the current assignee of the '702 patent and has

the right to enforce it.  The '702 patent expires on February 15, 2028.  The '702 patent claims,

*inter alia*, methods of treating iron deficiency anemia by administering an iron carbohydrate

complex.  A true and correct copy of the '702 patent is attached hereto as **Exhibit B**.

25.     The PTO issued the '612 patent entitled "Methods and Compositions For

Administration of Iron," on November 25, 2014 to inventors Mary Jane Helenek, Marc L.

Tokars, and Richard P. Lawrence.  At the time of its issue, the '612 patent was assigned to

Luitpold Pharmaceuticals, Inc., and on January 11, 2019, the assignment records for the '612

patent were amended to reflect that Luitpold Pharmaceuticals, Inc. had changed its name to

American Regent, Inc.  The Change of Name of the assignee for the '612 patent is recorded by

the PTO at Reel 048067, Frame 0271.  American Regent is the current assignee of the '612

patent and has the right to enforce it.  The '612 patent expires on January 8, 2027.  The '612

patent claims, *inter alia*, methods of treating iron deficiency anemia by the administration of an

iron carboxymaltose complex.  A true and correct copy of the '612 patent is attached hereto as

**Exhibit C**.

26.     The PTO issued the '505 patent entitled "Aqueous Iron Carbohydrate Complexes,

Their Production, and Medicaments Containing Them," on June 28, 2016 to inventors Peter

Geisser, Erik Philipp, and Walter Richle.  Vifor is the assignee of the '505 patent and has the

right to enforce it.  The '505 patent expires on October 20, 2023.  The '505 patent claims, *inter

alia*, compositions and methods of making iron carbohydrate complexes comprising at least one

oxidized maltodextrin.  A copy of the '505 patent is attached hereto as **Exhibit D**.

27.     The PTO issued the '252 patent, entitled "Aqueous Iron Carbohydrate

Complexes, Their Production and Medicaments Containing Them," on December 21, 2019 to

inventors Peter Geisser, Erik Philipp, and Walter Richle. Vifor is the assignee of the '252 patent and has the right to enforce it. The '252 patent expires on October 20, 2023. The '252 patent claims, *inter alia*, iron carbohydrate complexes, compositions comprising said complexes, and methods of treating iron deficiency anemia by administering the claimed iron carbohydrate complexes. A true and correct copy of the '252 patent is attached hereto as **Exhibit E**.

28. American Regent is the owner of NDA No. 203565 for Injectafer® (ferric carboxymaltose) which the FDA approved on July 25, 2013. The Orange Book lists the NDA holder as American Regent, Inc., in accordance with the name change from Luitpold Pharmaceuticals, Inc. to American Regent, Inc., effective January 2, 2019. In conjunction with NDA No. 203565, American Regent listed with the FDA the '109, '702, '612, and '505 patents. American Regent subsequently timely listed the '252 patent with the FDA after that patent issued. All five patents—the '109, '702, '612, '505, and '252 patents—are currently listed in the Orange Book for Injectafer®. The '252 patent expires on or before the other Orange Book listed patents for Injectafer®.

**SANDOZ'S INFRINGING ANDA SUBMISSION**

29. Plaintiffs reallege, and incorporate in full herein, each of the preceding paragraphs 1-28.

30. Plaintiffs received a letter from Sandoz dated July 10, 2019, purporting to be a "Notice of Certification of Invalidity, Unenforceability, and/or Non-Infringement for U.S. Patent Nos. 7,612,109; 7,754,702; 8,895,612; 9,376,505; and Pursuant to § 505(j)(2)(B)(iv) of the Federal Food, Drug, and Cosmetic Act" for ANDA No. 211725 pursuant to 21 U.S.C. § 355(j)(2)(B) and 21 § C.F.R. 314.95.

31. Sandoz's Notice Letter states that "Sandoz Inc." has submitted to the FDA ANDA No. 211725 seeking approval to engage in the commercial manufacture, use, and/or sale of Sandoz's ANDA Product before the expiration of the '109, '702, '612, and '505 patents. On information and belief, Sandoz also seeks approval to engage in the commercial manufacture, use, and/or sale of Sandoz's ANDA Product before the expiration of the '252 patent. Sandoz's Notice Letter did not identify any other entity that is involved in the preparation, filing, and/or maintenance of ANDA No. 211725.

32. On information and belief, Sandoz submitted ANDA No. 211725 to the FDA under Section 505(j) of the Act, 21 U.S.C. § 355(j), seeking approval to, and intending to, manufacture, use, import, offer to sell, and/or sell Sandoz's ANDA Product, either by itself or through its parent corporation, subsidiaries and/or affiliates, throughout the United States before the expiration of the '109, '702, '612, and '505 patents.

33. Sandoz has made, and continues to make, substantial preparation in the United States to manufacture, use, import, offer to sell, and/or sell Sandoz's ANDA Product, either by itself or through its parent corporation, subsidiaries and/or affiliates, before the expiration of the '252 patent.

34. By filing ANDA No. 211725, and as indicated in Sandoz's Notice Letter, Sandoz has represented to the FDA that Sandoz's ANDA Product has the same active ingredient as Injectafer®, has the same dosage form and strength as Injectafer®, and is bioequivalent to Injectafer®.

35. On information and belief, Sandoz is seeking approval to market Sandoz's ANDA Product for the same approved indications as Injectafer®.

36.     Sandoz's Notice Letter states that it has attached a "[d]etailed statement of the legal and factual bases for the Paragraph IV certifications" and "has certified to FDA, that…the '109, '702, '612, and '505 patents are invalid, unenforceable and/or will not be infringed" pursuant to 21 U.S.C. § 355(j)(2)(B)(iv)(II) and 21 C.F.R. § 314.95(c)(6).

37.     Plaintiffs filed a complaint for patent infringement of the '109, '702, '612, and '505 patents before the expiration of the forty-five days from the date Plaintiffs received Sandoz's Notice Letter.  *Vifor (International) AG, et al. v. Sandoz Inc.*, Civil Action No. 19-16305, ECF No. 1 (D.N.J. Aug. 2, 2019). The '252 patent had not issued at the time.

38.     On December 31, 2019, the PTO issued the '252 patent.  Plaintiffs timely notified the FDA on January 17, 2020, and the '252 patent was listed in the Orange Book for Injectafer®.

39.     On January 24, 2020, after the '252 patent was listed in the Orange Book, Plaintiffs' outside counsel notified Sandoz's outside counsel of the listing.

40.     On February 4, 2020, Sandoz's outside counsel represented that Sandoz intends to submit a Paragraph IV certification for the '252 patent.

## COUNT I (INFRINGEMENT OF THE '109 PATENT)

41.     Plaintiffs reallege, and incorporate in full herein, each of the preceding paragraphs 1-40.

42.     Under 35 U.S.C. § 271(e)(2)(A), Sandoz has infringed at least one claim of the '109 patent, including for example claims 1 through 5, by submitting, or causing to be submitted to the FDA, ANDA No. 211725 seeking approval to engage in the commercial manufacture, use or sale of Sandoz's ANDA Product before the expiration date of the '109 patent.  On information and belief, the product described in ANDA No. 211725 would infringe, either literally or under

the doctrine of equivalents, at least one claim, including for example claims 1 through 5, of the '109 patent under 35 U.S.C. § 271(e)(2)(A).

43.     In Sandoz's Notice Letter, Sandoz did not provide any allegation that Sandoz's ANDA Product does not fall within the scope of any of the claims of the '109 patent, and therefore admits infringement of the '109 patent.

44.     On information and belief, based on Sandoz's Notice Letter, the absence of any allegation that Sandoz's ANDA Product does not fall within the scope of any of the claims of the '109 patent in Sandoz's Notice Letter, the fact that Sandoz has represented to the FDA that Sandoz's ANDA Product is bioequivalent, pharmaceutically equivalent, and therapeutically equivalent to Injectafer®, and the fact that, pursuant to 21 C.F.R. § 314.94, Sandoz is required to substantially copy the FDA-approved Injectafer® labeling, Sandoz's ANDA Product comprises an aqueous solution of ferric carboxymaltose which is formulated for parenteral application, wherein the ferric carboxymaltose, an iron carbohydrate complex, has a weight average molecular weight of 80,000 to 300,000 daltons, and satisfies all of the limitations of at least claims 1 through 5 of the '109 patent.

45.     On information and belief, upon FDA approval of Sandoz's ANDA Product, Sandoz will infringe at least one claim, including for example claims 1 through 5, of the '109 patent under 35 U.S.C. § 271(a) either literally or under the doctrine of equivalents, by making, using, importing, offering to sell, and/or selling Sandoz's ANDA Product in the United States, and/or will induce infringement of one or more claims of the '109 patent under 35 U.S.C. § 271(b), unless enjoined by the Court.

46.     On information and belief, Sandoz has knowledge of the '109 patent and has filed ANDA No. 211725 seeking authorization to engage in the commercial manufacture, use or sale

of Sandoz's ANDA Product in the United States. On information and belief, if the FDA approves ANDA No. 211725, healthcare professionals and/or patients will directly infringe under 35 U.S.C. § 271(a), either literally or under the doctrine of equivalents, at least one claim of the '109 patent, including for example claims 1 through 5, by the use Sandoz's ANDA Product according to Sandoz's provided instructions and/or label.

47.     On information and belief, Sandoz knows and intends that health care professionals and/or patients will use Sandoz's ANDA Product according to Sandoz's provided instructions and/or label in an infringing manner, and will therefore induce infringement of one or more claims of the '109 patent with the requisite intent under 35 U.S.C. § 271(b).

48.     Upon information and belief, upon approval, Sandoz will take active steps to encourage the use of Sandoz's ANDA Product by healthcare professionals and/or patients with the knowledge and intent that it will be used by healthcare professionals and/or patients in a manner that infringes at least one claim, including for example claims 1 through 5, of the '109 patent for the pecuniary benefit of Sandoz. Upon information and belief, Sandoz will thus induce infringement of at least one claim of the '109 patent with the requisite intent under 35 U.S.C. § 271(b).

49.     Upon information and belief, Sandoz's actions relating to Sandoz's ANDA No. 211725 complained of herein were done by and for the benefit of Sandoz.

50.     If Sandoz's marketing and sale of Sandoz's ANDA Product prior to the expiration of the '109 patent is not enjoined, Plaintiffs will suffer substantial and irreparable harm for which there is no adequate remedy at law.

## COUNT II (INFRINGEMENT OF THE '702 PATENT)

51.     Plaintiffs reallege, and incorporate in full herein, each of the preceding paragraphs 1-50.

52.     Under 35 U.S.C. § 271(e)(2)(A), Sandoz has infringed at least one claim of the '702 patent, including for example claims 17, 24, and 47, by submitting, or causing to be submitted to the FDA, ANDA No. 211725 seeking approval to manufacture, use, import, offer to sell and/or sell Sandoz's ANDA Product before the expiration date of the '702 patent.  On information and belief, the product described in ANDA No. 211725 would infringe, either literally or under the doctrine of equivalents, at least one claim including for example claims 17, 24, and 47 of the '702 patent under 35 U.S.C. § 271(e)(2)(A).

53.     In Sandoz's Notice Letter, Sandoz did not provide any allegation that Sandoz's ANDA Product does not fall within the scope of several claims of the '702 patent, including for example claims 17, 24, and 47, and therefore admits infringement of such claims of the '702 patent.

54.     On information and belief, based on Sandoz's Notice Letter, the absence of any allegation that Sandoz's ANDA product does not fall within the scope of several claims of the '702 patent, including for example claims 17, 24, and 47, in Sandoz's Notice Letter, the fact that Sandoz has represented to the FDA that Sandoz's ANDA Product is bioequivalent, pharmaceutically equivalent, and therapeutically equivalent to Injectafer®, and the fact that, pursuant to 21 C.F.R. § 314.94, Sandoz is required to substantially copy the FDA-approved Injectafer® labeling, Sandoz's ANDA Product is an iron carboxymaltose complex having a molecular weight of about 100,000 daltons to about 350,000 daltons, and will be used in a method of treating iron deficiency anemia, whereby Sandoz's ANDA Product will be

administered intravenously in about 15 minutes or less to a subject in need thereof in a single dosage unit of at least about 0.6 grams of elemental iron, and the use of Sandoz's ANDA Product will satisfy all of the limitations of at least claims 17, 24, and 47 of the '702 patent.

55.     On information and belief, upon FDA approval of Sandoz's ANDA Product, Sandoz will induce and/or contribute to the infringement of one or more claims, including for example claims 17, 24, and 47, of the '702 patent under 35 U.S.C. §§ 271(b) and/or (c), unless enjoined by the Court.

56.     On information and belief, Sandoz has knowledge of the '702 patent and has filed ANDA No. 211725 seeking authorization to engage in the commercial manufacture, use or sale of Sandoz's ANDA Product in the United States.  On information and belief, if the FDA approves ANDA No. 211725, healthcare professionals and/or patients will directly infringe under 35 U.S.C. § 271(a), either literally or under the doctrine of equivalents, at least one claim of the '702 patent, including for example claims 17, 24, and 47, by the use Sandoz's ANDA Product according to Sandoz's provided instructions and/or label.

57.     On information and belief, Sandoz knows and intends that health care professionals and/or patients will use Sandoz's ANDA Product according to Sandoz's provided instructions and/or label in an infringing manner, and will therefore induce infringement of one or more claims of the '702 patent with the requisite intent under 35 U.S.C. § 271(b).

58.     Upon information and belief, upon approval, Sandoz will take active steps to encourage the use of Sandoz's ANDA Product by healthcare professionals and/or patients with the knowledge and intent that it will be used by healthcare professionals and/or patients in a manner that infringes at least one claim, including for example claims 17, 24, and 47, of the '702 patent for the pecuniary benefit of Sandoz.  Upon information and belief, Sandoz will thus

induce infringement of at least one claim of the '702 patent with the requisite intent under 35 U.S.C. § 271(b).

59.     On information and belief, if the FDA approves ANDA No. 211725, Sandoz's ANDA Product will be specifically labeled for use in practicing at least one claim including for example claims 17, 24, and 47 of the '702 patent, wherein Sandoz's ANDA Product is a material part of the claimed invention, wherein Sandoz knows and intends that healthcare professionals and/or patients will use Sandoz's ANDA Product in accordance with the instructions and/or label provided by Sandoz in practicing at least one claim, including for example claims 17, 24, and 47 of the '702 patent, and wherein Sandoz's ANDA Product is not a staple article or commodity of commerce suitable for substantial non-infringing use.  Upon information and belief, Sandoz will thus contribute to the infringement of at least one claim of the '702 patent under 35 U.S.C. § 271(c).

60.     Upon information and belief, Sandoz's actions relating to Sandoz's ANDA No. 211725 complained of herein were done by and for the benefit of Sandoz.

61.     If Sandoz's marketing and sale of Sandoz's ANDA Product prior to the expiration of the '702 patent is not enjoined, Plaintiffs will suffer substantial and irreparable harm for which there is no adequate remedy at law.

## COUNT III (INFRINGEMENT OF THE '612 PATENT)

62.     Plaintiffs reallege, and incorporate in full herein, each of the preceding paragraphs 1-61.

63.     Under 35 U.S.C. § 271(e)(2)(A), Sandoz has infringed at least one claim of the '612 patent, including for example claims 2 and 4, by submitting, or causing to be submitted to the FDA, ANDA No. 211725 seeking approval to engage in the commercial manufacture, use or

sale of Sandoz's ANDA Product before the expiration date of the '612 patent. On information

and belief, the product described in ANDA No. 211725 would infringe, either literally or under

the doctrine of equivalents, at least one claim including for example claims 2 and 4 of the '612

patent under 35 U.S.C. § 271(e)(2)(A).

64.    In Sandoz's Notice Letter, Sandoz did not provide any allegation that Sandoz's

ANDA Product does not fall within the scope of several claims of the '612 patent, including for

example for claims 2 and 4, and therefore admits infringement of such claims of the '612 patent.

65.    On information and belief, based on Sandoz's Notice Letter, the absence of any

allegation that Sandoz's ANDA product does not fall within the scope of several claims of the

'612 patent, including for example claims 2 and 4 in Sandoz's Notice Letter, the fact that Sandoz

has represented to the FDA that Sandoz's ANDA Product is bioequivalent, pharmaceutically

equivalent, and therapeutically equivalent to Injectafer®, and the fact that, pursuant to 21 C.F.R.

§ 314.94, Sandoz is required to substantially copy the FDA-approved Injectafer® labeling,

Sandoz's ANDA Product is an iron carboxymaltose complex having a substantially non-

immunogenic carbohydrate component and substantially no cross reactivity with anti-dextran

antibodies, and will be used in a method of treating iron deficiency anemia associated with

chronic kidney disease and/or heavy uterine bleeding, whereby Sandoz's ANDA Product will be

administered in about 15 minutes or less to a subject in need thereof in a single dosage unit of at

least about 0.6 grams of elemental iron, and the use of Sandoz's ANDA Product will satisfy all

of the limitations of at least claims 2 and 4 of the '612 patent.

66.    On information and belief, upon FDA approval of Sandoz's ANDA Product,

Sandoz will induce and/or contribute to the infringement of one or more claims, including for

example claims 2 and 4 of the '612 patent under 35 U.S.C. §§ 271(b) and/or (c), unless enjoined by the Court.

67.     On information and belief, Sandoz has knowledge of the '612 patent and has filed ANDA No. 211725 seeking authorization to engage in the commercial manufacture, use or sale of Sandoz's ANDA Product in the United States.  On information and belief, if the FDA approves ANDA No. 211725, health care professionals and/or patients will directly infringe under 35 U.S.C. § 271(a), either literally or under the doctrine of equivalents, at least one claim of the '612 patent, including for example claims 2 and 4, by the use Sandoz's ANDA Product according to Sandoz's provided instructions and/or label.

68.     On information and belief, Sandoz knows and intends that healthcare professionals and/or patients will use Sandoz's ANDA Product according to Sandoz's provided instructions and/or label in an infringing manner, and will therefore induce infringement of one or more claims of the '612 patent with the requisite intent under 35 U.S.C. § 271(b).

69.     Upon information and belief, upon approval, Sandoz will take active steps to encourage the use of Sandoz's ANDA Product by healthcare professionals and/or patients with the knowledge and intent that it will be used by healthcare professionals and/or patients in a manner that infringes at least one claim, including for example claims 2 and 4 of the '612 patent for the pecuniary benefit of Sandoz.  Upon information and belief, Sandoz will thus induce infringement of at least one claim of the '612 patent with the requisite intent under 35 U.S.C. § 271(b).

70.     On information and belief, if the FDA approves ANDA No. 211725, Sandoz's ANDA Product will be specifically labeled for use in practicing at least one claim including for example claims 2 and 4, of the '612 patent, wherein Sandoz's ANDA Product is a material part

of the claimed invention, wherein Sandoz knows and intends that healthcare professionals and/or patients will use Sandoz's ANDA Product in accordance with the instructions and/or label provided by Sandoz in practicing at least one claim, including for example claims 2 and 4, of the '612 patent, and wherein Sandoz's ANDA Product is not a staple article or commodity of commerce suitable for substantial non-infringing use.  Upon information and belief, Sandoz will thus contribute to the infringement of at least one claim of the '612 patent under 35 U.S.C. § 271(c).

71.    Upon information and belief, Sandoz's actions relating to Sandoz's ANDA No. 211725 complained of herein were done by and for the benefit of Sandoz.

72.    If Sandoz's marketing and sale of Sandoz's ANDA Product prior to the expiration of the '612 patent is not enjoined, Plaintiffs will suffer substantial and irreparable harm for which there is no adequate remedy at law.

## COUNT IV (INFRINGEMENT OF THE '505 PATENT)

73.    Plaintiffs reallege, and incorporate in full herein, each of the preceding paragraphs 1-72.

74.    In Sandoz's Notice Letter, Sandoz did not provide any allegation that Sandoz's ANDA Product does not fall within the scope of several claims of the '505 patent, including for example claims 1, 10, 19, and 28, and therefore admits infringement of such claims of the '505 patent.

75.    On information and belief, based on Sandoz's Notice Letter, the absence of any allegation that Sandoz's ANDA product does not fall within the scope of several claims of the '505 patent, including for example claims 1,10, 19, and 28 in Sandoz's Notice Letter, the fact that Sandoz has represented to the FDA that Sandoz's ANDA Product is bioequivalent,

pharmaceutically equivalent, and therapeutically equivalent to Injectafer®, and the fact that, pursuant to 21 C.F.R. § 314.94, Sandoz is required to substantially copy the FDA-approved Injectafer® labeling, Sandoz's ANDA Product is an aqueous solution comprising an iron (III) carbohydrate complex comprising at least one oxidized maltodextrin, wherein the iron (III) carbohydrate complex has a weight average molecular weight of 118,000 to 400,000 daltons, wherein the aqueous solution of the iron (III) carbohydrate has an iron content of between 1% and 20% weight/volume of the solution, and satisfies all of the limitations of at least claims 1, 10, 19, and 28 of the '505 patent.

76.     On information and belief, upon FDA approval of Sandoz's ANDA Product, Sandoz will infringe at least one claim, including for example claims 1, 10, 19, and 28, of the '505 patent under 35 U.S.C. § 271(a) either literally or under the doctrine of equivalents, by making, using, importing, offering to sell, and/or selling Sandoz's ANDA Product in the United States, and/or will induce infringement of one or more claims of the '505 patent under 35 U.S.C. § 271(b), unless enjoined by the Court.

77.     On information and belief, Sandoz has knowledge of the '505 patent and has filed ANDA No. 211725 seeking authorization to engage in the commercial manufacture, use or sale of Sandoz's ANDA Product in the United States.  On information and belief, if the FDA approves ANDA No. 211725, healthcare professionals and/or patients will directly infringe under 35 U.S.C. § 271(a), either literally or under the doctrine of equivalents, at least one claim of the '505 patent, including for example claims 1, 10, 19, and 28, by the use of Sandoz's ANDA Product according to Sandoz's provided instructions and/or label.

78.     On information and belief, Sandoz knows and intends that health care professionals and/or patients will use Sandoz's ANDA Product according to Sandoz's provided

instructions and/or label in an infringing manner, and will therefore induce infringement of one or more claims of the '505 patent with the requisite intent under 35 U.S.C. § 271(b).

79.      Upon information and belief, upon approval, Sandoz will take active steps to encourage the use of Sandoz's ANDA Product by healthcare professionals and/or patients with the knowledge and intent that it will be used by healthcare professionals and/or patients in a manner that infringes at least one claim, including for example claims 1, 10, 19, and 28, of the '505 patent for the pecuniary benefit of Sandoz.  Upon information and belief, Sandoz will thus induce infringement of at least one claim of the '505 patent with the requisite intent under 35 U.S.C. § 271(b).

80.      Upon information and belief, Sandoz's actions relating to Sandoz's ANDA No. 211725 complained of herein were done by and for the benefit of Sandoz.

81.      If Sandoz's marketing and sale of Sandoz's ANDA Product prior to the expiration of the '505 patent is not enjoined, Plaintiffs will suffer substantial and irreparable harm for which there is no adequate remedy at law.

**COUNT V** ████████████████████

82.      Plaintiffs reallege, and incorporate in full herein, each of the preceding paragraphs 1-81.

83.   ████████████████████████████
███

84.   ████████████████████████████
████████████████████████████████
███████████████████████

85.     Plaintiffs received a letter from Sandoz dated July 10, 2019, purporting to be a Notice of Paragraph IV Certification for ANDA No. 211725 pursuant to 21 U.S.C. § 355(j)(2)(B)(ii).

86.     Sandoz's Notice Letter states that "Sandoz Inc." has submitted to the FDA ANDA No. 211725 seeking to engage in the commercial manufacture, use, and/or sale of Sandoz's ANDA Product before the expiration of the '109 patent.

87.     Sandoz has made, and continues to make, substantial preparation in the United States to manufacture, use, import, offer to sell, and/or sell Sandoz's ANDA Product, either by itself or through its parent corporation, subsidiaries and/or affiliates, before the expiration of the '109 patent.

88.     On information and belief,



89.     On information and belief,

90.     On information and belief,

91. On information and belief, ████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████████

██████████████████████████████████████████████████████

█████████████████████████████████████████████████████

████████████████████████████████████████████████████████

██████████████

92. ████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████

█████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████

**COUNT VI (INFRINGEMENT OF
THE '252 PATENT UNDER § 271(e)(2)(A))**

93. Plaintiffs reallege, and incorporate in full herein, each of the preceding paragraphs 1-92.

94. Under 35 U.S.C. § 271(e)(2)(A), Sandoz has infringed at least one claim of the '252 patent, including for example claims 1, 13, and 18, by submitting, or causing to be submitted to the FDA, ANDA No. 211725 seeking approval to engage in the commercial manufacture, use or sale of Sandoz's ANDA Product before the expiration date of the '252 patent. On information and belief, the product described in ANDA No. 211725 would infringe, either literally or under the doctrine of equivalents, at least one claim, including for example claims 1, 13, and 18 of the '252 patent under 35 U.S.C. § 271(e)(2)(A).

95.     On information and belief, the fact that Sandoz has represented to the FDA that Sandoz's ANDA Product is bioequivalent, pharmaceutically equivalent, and therapeutically equivalent to Injectafer®, and the fact that, pursuant to 21 C.F.R. § 314.94, Sandoz is required to substantially copy the FDA-approved Injectafer® labeling, Sandoz's ANDA Product comprises an aqueous solution of an iron (III) carboxymaltodextrin complex, wherein the iron (III) carboxymaltodextrin is derived from the oxidation of maltodextrin and has a weight average molecular weight of 80 to 400 kilodaltons, and will be used in a method of treating an iron deficiency condition, and satisfies all of the limitations of at least claims 1, 13, and 18 of the '252 patent.

96.     On information and belief, upon FDA approval of Sandoz's ANDA Product, Sandoz will infringe at least one claim, including for example claims 1 and 13 of the '252 patent under 35 U.S.C. § 271(a) either literally or under the doctrine of equivalents, by making, using, importing, offering to sell, and/or selling Sandoz's ANDA Product in the United States.

97.     On information and belief, upon FDA approval of Sandoz's ANDA Product, Sandoz will induce and/or contribute to the infringement of one or more claims, including for example claims 1, 13, and 18 of the '252 patent under 35 U.S.C. §§ 271(b) and/or (c), unless enjoined by the Court.

98.     Sandoz has knowledge of the '252 patent and has filed ANDA No. 211725 seeking authorization to engage in the commercial manufacture, use or sale of Sandoz's ANDA Product in the United States.  On information and belief, if the FDA approves ANDA No. 211725, healthcare providers and/or patients will directly infringe under 35 U.S.C. § 271(a), either literally or under the doctrine of equivalents, at least one claim of the '252 patent,

including for example claims 1, 13, and 18, by the use Sandoz's ANDA Product according to Sandoz's provided instructions and/or label.

99.     On information and belief, Sandoz knows and intends that healthcare providers and/or patients will use Sandoz's ANDA Product according to Sandoz's provided instructions and/or label in an infringing manner, and will therefore induce infringement of one or more claims of the '252 patent with the requisite intent under 35 U.S.C. § 271(b).

100.     Upon information and belief, upon approval, Sandoz will take active steps to encourage the use of Sandoz's ANDA Product by healthcare providers and/or patients with the knowledge and intent that it will be used by healthcare providers and/or patients in a manner that infringes at least one claim, including for example claims 1, 13, and 18 of the '252 patent for the pecuniary benefit of Sandoz.  Upon information and belief, Sandoz will thus induce infringement of at least one claim of the '252 patent with the requisite intent under 35 U.S.C. § 271(b).

101.     Upon information and belief, if the FDA approves ANDA No. 211725, Sandoz's ANDA Product will be specifically labeled for use in practicing at least one claim of the '252 patent, wherein Sandoz's ANDA Product is a material part of the claimed invention, wherein Sandoz knows and intends that healthcare providers and/or patients will use Sandoz's ANDA Product in a manner that infringes at least one claim, including for example claims 1, 13, and 18 of the '252 patent, and wherein Sandoz's ANDA Product is not a staple article or commodity of commerce suitable for substantial non-infringing use.  Upon information and belief, Sandoz will thus contribute to the infringement of at least one claim of the '252 patent under 35 U.S.C. § 271(c).

102.     Upon information and belief, Sandoz's actions relating to Sandoz's ANDA No. 211725 complained of herein were done by and for the benefit of Sandoz.

103.    If Sandoz's marketing and sale of Sandoz's ANDA Product prior to the expiration of the '252 patent is not enjoined, Plaintiffs will suffer substantial and irreparable harm for which there is no adequate remedy at law.

## COUNT VII (DECLARATORY JUDGMENT OF INFRINGEMENT OF THE '252 PATENT)

104.    Plaintiffs reallege, and incorporate in full herein, each of the preceding paragraphs 1-103.

105.    This claim arises under the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202.

106.    There is an actual case or controversy such that the Court may entertain Plaintiffs' request for declaratory relief consistent with Article III of the United States Constitution, and this actual case or controversy requires a declaration of rights by this Court.

107.    Sandoz became aware of the '252 patent at least no later than January 24, 2020, when Plaintiffs sent a letter to Sandoz regarding the timely listing of the '252 patent in the Orange Book for Injectafer®.

108.    On information and belief, Sandoz has made, and will continue to make, substantial preparation in the United States to manufacture, offer to sell, sell and/or import Sandoz's ANDA Product prior to the expiration of the '252 patent, including Sandoz's filing of ANDA No. 211725.

109.    Sandoz's actions, including, but not limited to, the development of Sandoz's ANDA Product, the content of and instructions in Sandoz's proposed label, the filing of ANDA No. 211725, and engaging in litigation to manufacture, offer to sell, sell and/or import Sandoz's ANDA Product prior to patent expiry, indicate a refusal to change the course of its action and

reliably predict that Sandoz will continue to make substantial preparations to manufacture, sell, offer to sell, and/or import Sandoz's ANDA Product.

110.    Any commercial manufacture, use, offer for sale, sale, and/or importation of the Sandoz's ANDA Product prior to the expiration of the '252 patent will directly infringe, contributorily infringe, and/or induce infringement of at least one claim of the '252 patent.

111.    Plaintiffs are entitled to a declaratory judgment that future commercial manufacture, use, offer for sale, sale, and/or importation of the Sandoz ANDA Product prior to the expiration of the '252 patent will constitute direct infringement, contributory infringement, and/or active inducement of infringement of the '252 patent.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs respectfully request that this Court grant the following relief:

1.      A judgment that the claims of the '109, '702, '612, '505, and '252 patents are not invalid or unenforceable, and are infringed by Sandoz's submission of ANDA No. 211725 under 35 U.S.C. §271(e)(2)(A), and that Sandoz's making, using, offering to sell, or selling in the United States, or importing into the United States, Sandoz's ANDA Product will infringe the '109, '702, '612, '505, and '252 patents under 35 U.S.C. §§ 271(a), (b), and/or (c);

2.      An order pursuant to 35 U.S.C. § 271(e)(4)(A) providing that the effective date of any approval by the FDA of ANDA No. 211725 shall be a date that is not earlier than the latest expiration date of the '109, '702, '612,'505 , and '252 patents, including any extensions and/or additional periods of exclusivity to which Plaintiffs are or become entitled;

3.      An order permanently enjoining Sandoz, its parent corporation, affiliates, subsidiaries, and each of its officers, agents, servants, employees, and those acting in privity or concert with them, from making, using, offering to sell, or selling in the United States, or importing

into the United States Sandoz's ANDA Product until after the last expiration date of the '109, '702, '612, '505, and '252 patents, including any extensions and/or additional periods of exclusivity to which Plaintiffs are or become entitled, in accordance with 35 U.S.C. § 271(e)(4)(B) and 35 U.S.C. § 283;

4.      Damages or other monetary relief to Plaintiffs if Sandoz engages in commercial manufacture, use, offers to sell, sale, or importation in or into the United States of Sandoz's ANDA Product prior to the latest expiration date of the '109, '702, '612, '505, and '252 patents, including any extensions and/or additional periods of exclusivity to which Plaintiffs is or becomes entitled, in accordance with 35 U.S.C. § 271(e)(4)(C);

5.      A declaration issued under 28 U.S.C. § 2201 that if Sandoz, its parent corporation, affiliates, subsidiaries, and each of its officers, agents, servants, employees, and those acting or attempting to act in privity or concert with them, engage in the importation, offer for sale, sale, or use within the United States of Sandoz's ANDA Product prior to the expiration of the '109 patent, it will constitute an act of infringement under 35 U.S.C. § 271(g);

6.      A declaration issued under 28 U.S.C. § 2201 that if Sandoz, its parent corporation, affiliates, subsidiaries, and each of its officers, agents, servants, employees, and those acting or attempting to act in privity or concert with them, engage in the commercial manufacture, use, offer for sale, sale, and/or importation of Sandoz's ANDA Product prior to the expiration of the '252 patent, it will constitute an act of infringement of the '252 patent; and

7.      Such further and additional relief as this Court deems just and proper, including any appropriate relief under 35 U.S.C. § 285.

Dated: April 23, 2020
      Newark, New Jersey

Respectfully submitted,

s/ William P. Deni, Jr.
William P. Deni, Jr.
Charles H. Chevalier
J. Brugh Lower
**GIBBONS P.C.**
One Gateway Center
Newark, New Jersey 07102
Tel: (973) 596-4500
Fax: (973) 596-0545
wdeni@gibbonslaw.com
cchevalier@gibbonslaw.com
jlower@gibbonslaw.com

*Attorneys for Plaintiffs*
*Vifor (International) AG and*
*American Regent, Inc.*

Of Counsel:

Barbara R. Rudolph (*pro hac vice*)
Robert F. Shaffer (*pro hac vice*)
Constance P. Lee (*pro hac vice*)
C. Collette Corser (*pro hac vice*)
**FINNEGAN, HENDERSON, FARABOW,**
**GARRETT & DUNNER, LLP**
901 New York Avenue, NW
Washington, DC 20001-4413
Tel: (202) 408-4000

M. David Weingarten (*pro hac vice*)
**FINNEGAN, HENDERSON, FARABOW,**
**GARRETT & DUNNER, LLP**
271 17th Street, NW
Suite 1400
Atlanta, GA 30363-6209
Tel: (404) 653-6400

Emily R. Gabranksi (*pro hac vice*)
**FINNEGAN, HENDERSON, FARABOW,**
**GARRETT & DUNNER, LLP**
Two Seaport Lane
Boston, MA 02210-2001
Tel: (617) 646-1600



**EXHIBIT 7**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| AMERICAN REGENT, INC., | Civ. No. 24-10674 (GC)(JBD) |
| Plaintiff, | |
| v. | **PRETRIAL SCHEDULING ORDER** |
| MSN LABORATORIES PRIVATE LIMITED, *et al.*, | |
| Defendants. | |

  This matter having come before the Court for an initial conference pursuant to Fed. R. Civ. P. 16; Cynthia S. Betz, Esq. and Mark M. Makhail, Esq., appearing on behalf of plaintiff; Rebekah Conroy, Esq., appearing on behalf of defendants; the Court having recognized the commonality of issues between this matter and *Vifor (International) AG, et al. v. Dr. Reddy's Laboratories, Ltd., et al.*, Civ. No. 24-6833 (GC)(JBD) and having set certain deadlines with the participation of counsel; and for good cause shown,

  **IT IS** on this 3rd day of March 2025,

  **ORDERED** that all parties and their counsel shall work in good faith and diligently to coordinate, where possible, discovery in this case with discovery in *Vifor*; and it is further

  **ORDERED** that the Court ADOPTS the following pretrial schedule, which shall be as follows:

| Event | Deadline |
|---|---|
| Initial written discovery requests | March 12, 2025 |
| Parties to Submit Proposed Discovery Confidentiality Order | March 14, 2025 |
| Parties exchange Fed. R. Civ. P.26(a)(1) disclosures | March 19, 2025 |
| Plaintiffs to serve "Disclosure of Asserted Claims" (L. Pat. R. 3.6(b)) | March 26, 2025 |
| Parties meet pursuant to Fed. R. Civ. P. 26(f) and Civ. L. R. 26.1(b) and 26.1(d) | March 28, 2025 |
| Defendants to serve "Invalidity Contentions" and "Noninfringement Contentions," and to produce underlying documents (L. Pat. R. 3.6(c)-(f)) | April 25, 2025 |
| Plaintiffs to serve "Disclosure of Infringement Contentions" and "Responses to Invalidity Contentions," and to produce underlying documents (L. Pat. R. 3.6(g)-(i)) | May 30, 2025 |
| Parties to exchange claim terms to be construed (L. Pat. R. 4.1) | June 13, 2025 |
| Parties to exchange "Preliminary Claim Constructions" (L. Pat. R. 4.2(a)-(b)) | June 27, 2025 |

| Event | Deadline |
|---|---|
| Parties to exchange identification of intrinsic and extrinsic evidence opposing other party's constructions, including expert witness opinions, if any (L. Pat. R. 4.2(c)) | July 11, 2025 |
| Parties to file Joint Claim Construction and Prehearing Statement (L. Pat. R. 4.3) | July 18, 2025 |
| Completion of fact discovery relating to claim construction, including depositions of nonexpert witnesses identified prior to claim construction exchanges (L. Pat. R. 4.4) | August 1, 2025 |
| Parties to file Opening Markman Briefs (L. Pat. R. 4.5(a)) | August 29, 2025 |
| Deadline to amend pleadings without leave of the Court | September 5, 2025 |
| Completion of Expert Discovery Relating to Opening Markman Briefs (L. Pat. R. 4.5(b)) | September 19, 2025 |
| Substantial completion of document production | September 26, 2025 |
| Parties to file Responsive *Markman* Briefs (if needed) (L. Pat. R. 4.5(c)) | October 17, 2025 |
| Parties to submit proposed Claim Construction Hearing schedule | October 31, 2025 |
| *Markman* Hearing | TBD |

| Event | Deadline |
|---|---|
| Deadline for motion to amend pleadings or to add parties | December 12, 2025 |
| Close of Fact Discovery | December 19, 2025 |
| Parties to exchange Opening Expert Reports on issues for which that party bears the burden of proof | February 6, 2026 |
| Parties to exchange Rebuttal Expert Reports | March 27, 2026 |
| Parties to exchange Reply Expert Reports | April 24, 2026 |
| Close of Expert Discovery | May 22, 2026 |
| Pretrial Order | TBD |
| Final Pretrial Conference | TBD |
| Trial | TBD |
| Expiration of 30 Month Stay | April 12, 2027 |

**IT IS FUTHERED ORDERED** that the Court will hold a telephone status conference before the undersigned on **May 29, 2025** at **3:00 p.m.**  No later than three (3) business days prior to the telephone status conference, the parties shall file a joint status letter via CM/ECF, not to exceed three (3) pages, that summarizes the status of discovery and identifies any issues ripe for discussion with the Court. The Court will circulate dial-in information in advance of the conference to all parties; and it is further

ORDERED that counsel shall confer in good faith in an attempt to resolve any discovery or case management disputes before raising them with the Court. Any such dispute shall be brought to the Court's attention pursuant to paragraph 5 of the Court's Civil Case Management Order, available at (https://www.njd.uscourts.gov/content/j-brendan-day).  **No discovery motion will be entertained absent leave of Court and counsel's full compliance with L. Civ. R. 37.1(a)(1); *see also* L. Civ. R. 16.1(f)**; and it is further

ORDERED that a settlement conference will be conducted by the undersigned, at the Clarkson S. Fisher United States Courthouse, Trenton, New Jersey on **a date to be determined. Counsel and parties with full authority to settle the case are to be present.**  Any failure in this regard shall result in the imposition of sanctions; and it is further

ORDERED that pursuant to paragraphs 9 and 11 of the Court's Civil Case Management Order, no later than **5 business days in advance**, each party shall submit to Chambers via email at jbd_orders@njd.uscourts.gov a confidential letter, on an *ex parte* basis, not to exceed five pages in total, summarizing the relevant facts, the respective legal positions, the status of the case, and the party's position of settlement, including any settlement discussions that have taken place in anticipation of the settlement conference; and it is further

ORDERED that since all dates set forth herein are established with the assistance and knowledge of the parties, there will be no extensions except for good cause shown and by leave of Court, even with consent of all parties; and it is further

ORDERED that the Court may, from time to time, schedule conferences as may be required, either on its own motion or at the request of counsel; and it is further

ORDERED that failure to appear at subsequent conferences, or to comply with this Order or any subsequent order of the Court, may result in the imposition of sanctions.

J. BRENDAN DAY
UNITED STATES MAGISTRATE JUDGE



# EXHIBIT 8

**Comparison of Districts Within the First Circuit — 12-Month Period Ending March 31, 2025**

| | | | ME | MA | NH | RI | PR |
|---|---|---|---|---|---|---|---|
| **Overall Caseload Statistics** | Filings | | 682 | 4,238 | 593 | 715 | 1,940 |
| | Terminations | | 678 | 3,635 | 1,807 | 688 | 2,208 |
| | Pending | | 576 | 5,751 | 1,483 | 857 | 2,563 |
| | Percent Change in Total Filings Current Year | Over Last Year | 5.6 | -2.4 | -6.2 | 7.4 | -0.3 |
| | | Over 2020 | -24.0 | 5.1 | -64.2 | -17.0 | -22.3 |
| Number of Judgeships | | | 3 | 13 | 3 | 3 | 7 |
| Vacant Judgeship Months [1] | | | 2.8 | 0.0 | 0.0 | 0.0 | 0.0 |
| **Actions per Judgeship** | **Filings** | Total | 227 | 326 | 198 | 238 | 277 |
| | | Civil | 156 | 271 | 141 | 187 | 91 |
| | | Criminal Felony | 50 | 38 | 35 | 34 | 140 |
| | | Supervised Release Hearings | 22 | 18 | 21 | 17 | 46 |
| | Pending Cases | | 192 | 442 | 494 | 286 | 366 |
| | Weighted Filings [1] | | 217 | 330 | 196 | 245 | 293 |
| | Terminations | | 226 | 280 | 602 | 229 | 315 |
| | Trials Completed | | 19 | 8 | 10 | 8 | 10 |
| **Median Time (Months)** | From Filing to Disposition | Criminal Felony | 13.6 | 21.6 | 13.0 | 21.2 | 19.2 |
| | | Civil [1] | 7.4 | 7.4 | 50.1 | 8.6 | 14.3 |
| | From Filing to Trial [1] (Civil Only) | | - | 28.2 | - | - | - |
| **Other** | Number (and %) of Civil Cases Over 3 Years Old [1] | | 18 / 4.7 | 367 / 7.5 | 597 / 48.6 | 100 / 15.2 | 176 / 17.9 |
| | Average Number of Felony Defendants Filed per Case | | 1.1 | 1.5 | 1.3 | 1.4 | 2.0 |
| | Jurors | Avg. Present for Jury Selection | 76.4 | 61.3 | 64.9 | 41.0 | 46.6 |
| | | Percent Not Selected or Challenged | 41.3 | 38.3 | 37.2 | 47.2 | 33.4 |

NOTE: Criminal data in this profile count defendants rather than cases and therefore will not match previously published numbers.

[1] See "Explanation of Selected Terms."

Page 1

**Comparison of Districts Within the Second Circuit — 12-Month Period Ending March 31, 2025**

| | | | CT | NY,N | NY,E | NY,S | NY,W | VT |
|---|---|---|---|---|---|---|---|---|
| **Overall Caseload Statistics** | Filings | | 2,582 | 2,266 | 9,159 | 11,664 | 2,804 | 1,828 |
| | Terminations | | 2,482 | 2,442 | 9,290 | 11,574 | 2,926 | 1,815 |
| | Pending | | 2,576 | 2,328 | 13,321 | 16,680 | 3,304 | 876 |
| | Percent Change in Total Filings Current Year | Over Last Year | 8.8 | -11.0 | -11.9 | -10.3 | -2.7 | 32.9 |
| | | Over 2020 | -4.2 | -5.1 | 9.0 | -19.2 | -23.0 | 223.5 |
| Number of Judgeships | | | 8 | 5 | 15 | 28 | 4 | 2 |
| Vacant Judgeship Months [1] | | | 10.2 | 2.6 | 0.0 | 5.7 | 3.0 | 0.0 |
| **Actions per Judgeship** | **Filings** | Total | 323 | 453 | 611 | 417 | 701 | 914 |
| | | Civil | 264 | 351 | 556 | 366 | 521 | 769 |
| | | Criminal Felony | 31 | 75 | 38 | 25 | 87 | 96 |
| | | Supervised Release Hearings | 28 | 28 | 17 | 26 | 93 | 50 |
| | Pending Cases | | 322 | 466 | 888 | 596 | 826 | 438 |
| | Weighted Filings [1] | | 293 | 368 | 552 | 465 | 519 | 458 |
| | Terminations | | 310 | 488 | 619 | 413 | 732 | 908 |
| | Trials Completed | | 10 | 9 | 16 | 18 | 7 | 13 |
| **Median Time (Months)** | From Filing to Disposition | Criminal Felony | 18.4 | 8.0 | 30.4 | 16.4 | 12.9 | 15.5 |
| | | Civil [1] | 7.4 | 8.3 | 6.1 | 5.9 | 8.3 | 2.4 |
| | From Filing to Trial [1] (Civil Only) | | 48.7 | 51.9 | 45.2 | 33.6 | - | - |
| **Other** | Number (and %) of Civil Cases Over 3 Years Old [1] | | 140 | 184 | 2,055 | 3,232 | 539 | 45 |
| | | | 6.8 | 10.5 | 19.7 | 25.8 | 20.5 | 7.9 |
| | Average Number of Felony Defendants Filed per Case | | 1.6 | 1.1 | 1.5 | 1.3 | 1.1 | 1.5 |
| | Jurors | Avg. Present for Jury Selection | 65.9 | 39.3 | 74.8 | 89.4 | 98.0 | 56.7 |
| | | Percent Not Selected or Challenged | 27.0 | 5.4 | 39.6 | 53.0 | 44.0 | 44.1 |

NOTE: Criminal data in this profile count defendants rather than cases and therefore will not match previously published numbers.

[1] See "Explanation of Selected Terms."

**Page 2**

**Comparison of Districts Within the Third Circuit — 12-Month Period Ending March 31, 2025**

| | | | DE | NJ | PA,E | PA,M | PA,W | VI |
|---|---|---|---|---|---|---|---|---|
| **Overall Caseload Statistics** | Filings | | 1,583 | 12,385 | 9,844 | 2,902 | 3,386 | 206 |
| | Terminations | | 1,609 | 10,641 | 7,811 | 2,890 | 3,659 | 254 |
| | Pending | | 2,280 | 84,117 | 9,787 | 3,489 | 3,841 | 561 |
| | Percent Change in Total Filings Current Year | Over Last Year | -6.4 | -56.1 | 18.0 | 8.4 | -12.3 | -3.3 |
| | | Over 2020 | -35.7 | -39.1 | 16.9 | 3.0 | -3.6 | -37.0 |
| Number of Judgeships | | | 4 | 17 | 22 | 6 | 10 | 2 |
| Vacant Judgeship Months [1] | | | 0.0 | 8.1 | 0.0 | 13.4 | 0.0 | 1.4 |
| **Actions per Judgeship** | **Filings** | Total | 396 | 729 | 447 | 484 | 339 | 103 |
| | | Civil | 366 | 679 | 418 | 399 | 275 | 62 |
| | | Criminal Felony | 25 | 36 | 21 | 69 | 43 | 37 |
| | | Supervised Release Hearings | 5 | 13 | 9 | 16 | 21 | 5 |
| | Pending Cases | | 570 | 4,948 | 445 | 582 | 384 | 281 |
| | Weighted Filings [1] | | 598 | 600 | 341 | 461 | 296 | - |
| | Terminations | | 402 | 626 | 355 | 482 | 366 | 127 |
| | Trials Completed | | 26 | 7 | 7 | 23 | 22 | 17 |
| **Median Time (Months)** | From Filing to Disposition | Criminal Felony | 17.3 | 14.1 | 19.7 | 21.7 | 20.7 | 19.9 |
| | | Civil [1] | 10.0 | 8.6 | 4.9 | 8.3 | 6.9 | 12.7 |
| | From Filing to Trial [1] (Civil Only) | | 33.0 | 62.4 | 23.7 | 51.9 | - | - |
| **Other** | Number (and %) of Civil Cases Over 3 Years Old [1] | | 354 | 52,652 | 2,016 | 239 | 326 | 148 |
| | | | 17.1 | 63.5 | 23.2 | 9.9 | 10.9 | 45.0 |
| | Average Number of Felony Defendants Filed per Case | | 1.3 | 1.1 | 1.3 | 1.3 | 1.4 | 1.3 |
| | Jurors | Avg. Present for Jury Selection | 39.1 | 100.3 | 48.4 | 53.4 | 57.4 | 91.6 |
| | | Percent Not Selected or Challenged | 31.8 | 41.6 | 38.2 | 30.9 | 30.1 | 41.1 |

NOTE: Criminal data in this profile count defendants rather than cases and therefore will not match previously published numbers.

[1] See "Explanation of Selected Terms."

**Comparison of Districts Within the Fourth Circuit — 12-Month Period Ending March 31, 2025**

| | | | MD | NC,E | NC,M | NC,W | SC | VA,E | VA,W | WV,N | WV,S |
|---|---|---|---|---|---|---|---|---|---|---|---|
| **Overall Caseload Statistics** | Filings | | 4,618 | 3,725 | 1,722 | 2,158 | 8,763 | 5,198 | 1,687 | 1,068 | 1,121 |
| | Terminations | | 4,621 | 2,707 | 1,719 | 2,156 | 7,931 | 4,822 | 1,711 | 1,068 | 1,093 |
| | Pending | | 4,921 | 5,598 | 1,395 | 1,655 | 13,407 | 4,298 | 1,519 | 1,029 | 2,288 |
| | Percent Change in Total Filings Current Year | Over Last Year | 6.1 | -2.4 | -4.7 | -6.8 | 3.1 | 9.1 | 4.3 | -14.4 | 8.6 |
| | | Over 2020 | 0.5 | 17.9 | -16.1 | -1.2 | 73.5 | 15.5 | -6.5 | -14.1 | -24.5 |
| Number of Judgeships | | | 10 | 4 | 4 | 5 | 10 | 11 | 4 | 3 | 5 |
| Vacant Judgeship Months [1] | | | 8.0 | 0.0 | 3.0 | 3.4 | 9.8 | 0.0 | 0.0 | 0.0 | 0.0 |
| **Actions per Judgeship** | **Filings** | Total | 462 | 931 | 431 | 432 | 876 | 473 | 422 | 356 | 224 |
| | | Civil | 407 | 735 | 273 | 299 | 785 | 375 | 345 | 203 | 168 |
| | | Criminal Felony | 32 | 135 | 83 | 75 | 56 | 66 | 50 | 109 | 43 |
| | | Supervised Release Hearings | 23 | 62 | 74 | 58 | 35 | 32 | 27 | 44 | 13 |
| | Pending Cases | | 492 | 1,400 | 349 | 331 | 1,341 | 391 | 380 | 343 | 458 |
| | Weighted Filings [1] | | 404 | 863 | 349 | 368 | 670 | 418 | 347 | 326 | 191 |
| | Terminations | | 462 | 677 | 430 | 431 | 793 | 438 | 428 | 356 | 219 |
| | Trials Completed | | 14 | 26 | 18 | 19 | 12 | 17 | 22 | 13 | 10 |
| **Median Time (Months)** | From Filing to Disposition | Criminal Felony | 19.8 | 12.4 | 9.2 | 15.1 | 13.8 | 7.9 | 12.3 | 12.2 | 9.2 |
| | | Civil [1] | 7.1 | 8.2 | 7.4 | 6.5 | 12.0 | 5.3 | 9.3 | 9.7 | 11.1 |
| | From Filing to Trial [1] (Civil Only) | | 51.3 | - | - | 24.8 | 32.5 | 11.9 | 26.0 | - | - |
| **Other** | Number (and %) of Civil Cases Over 3 Years Old [1] | | 415 | 221 | 48 | 55 | 2,040 | 343 | 55 | 44 | 1,092 |
| | | | 10.8 | 4.8 | 5.3 | 4.9 | 16.5 | 10.9 | 4.7 | 8.7 | 54.8 |
| | Average Number of Felony Defendants Filed per Case | | 1.4 | 1.2 | 1.3 | 1.2 | 1.5 | 1.2 | 1.4 | 1.4 | 1.2 |
| | Jurors | Avg. Present for Jury Selection | 57.3 | 40.5 | 29.0 | 50.2 | 51.1 | 52.4 | 50.1 | 61.1 | 38.4 |
| | | Percent Not Selected or Challenged | 30.6 | 31.8 | 42.8 | 42.0 | 36.0 | 33.5 | 44.2 | 29.2 | 13.7 |

NOTE: Criminal data in this profile count defendants rather than cases and therefore will not match previously published numbers.

[1] See  "Explanation of Selected Terms."

Comparison of Districts Within the Fifth Circuit — 12-Month Period Ending March 31, 2025

| | | | LA,E | LA,M | LA,W | MS,N | MS,S | TX,N | TX,E | TX,S | TX,W |
|---|---|---|---|---|---|---|---|---|---|---|---|
| **Overall Caseload Statistics** | Filings | | 2,489 | 1,196 | 2,216 | 1,011 | 2,119 | 7,633 | 4,809 | 15,416 | 14,243 |
| | Terminations | | 9,136 | 1,544 | 3,267 | 1,031 | 2,042 | 7,171 | 4,600 | 14,823 | 14,489 |
| | Pending | | 10,419 | 1,602 | 2,979 | 724 | 4,124 | 6,069 | 6,589 | 14,942 | 10,028 |
| | Percent Change in Total Filings Current Year | Over Last Year | -64.5 | -36.6 | -3.9 | -6.1 | -49.5 | 7.0 | 14.4 | 10.2 | 12.4 |
| | | Over 2020 | -75.1 | 5.1 | 0.7 | 1.8 | -27.4 | 0.2 | 17.4 | -22.8 | -10.7 |
| | Number of Judgeships | | 12 | 3 | 7 | 3 | 6 | 12 | 8 | 19 | 13 |
| | Vacant Judgeship Months [1] | | 29.9 | 0.0 | 12.0 | 0.3 | 0.0 | 12.0 | 0.0 | 20.3 | 23.9 |
| **Actions per Judgeship** | Filings | Total | 207 | 399 | 317 | 337 | 353 | 636 | 601 | 811 | 1,096 |
| | | Civil | 174 | 358 | 261 | 261 | 271 | 482 | 490 | 372 | 364 |
| | | Criminal Felony | 27 | 35 | 45 | 60 | 62 | 112 | 110 | 359 | 621 |
| | | Supervised Release Hearings | 6 | 6 | 11 | 16 | 20 | 42 | 0 | 81 | 111 |
| | Pending Cases | | 868 | 534 | 426 | 241 | 687 | 506 | 824 | 786 | 771 |
| | Weighted Filings [1] | | 204 | 398 | 306 | 390 | 341 | 598 | 853 | 628 | 770 |
| | Terminations | | 761 | 515 | 467 | 344 | 340 | 598 | 575 | 780 | 1,115 |
| | Trials Completed | | 6 | 19 | 12 | 17 | 32 | 18 | 13 | 13 | 17 |
| **Median Time (Months)** | From Filing to Disposition | Criminal Felony | 14.0 | 10.5 | 11.6 | 11.1 | 11.3 | 9.0 | 23.8 | 4.7 | 5.8 |
| | | Civil [1] | 18.4 | 11.6 | 19.9 | 6.0 | 9.3 | 5.5 | 7.4 | 7.8 | 7.6 |
| | From Filing to Trial [1] (Civil Only) | | 23.9 | - | 29.3 | - | 19.0 | 23.7 | 25.9 | 26.3 | 33.4 |
| **Other** | Number (and %) of Civil Cases Over 3 Years Old [1] | | 7,275 73.3 | 58 4.3 | 759 29.1 | 13 2.4 | 74 2.0 | 465 11.1 | 247 6.3 | 368 5.6 | 433 10.0 |
| | Average Number of Felony Defendants Filed per Case | | 1.4 | 1.3 | 1.4 | 1.2 | 1.2 | 1.3 | 1.6 | 1.1 | 1.1 |
| | Jurors | Avg. Present for Jury Selection | 45.9 | 43.3 | 35.1 | 32.3 | 55.4 | 48.8 | 49.7 | 44.7 | 50.5 |
| | | Percent Not Selected or Challenged | 35.2 | 36.5 | 31.1 | 27.4 | 46.9 | 44.4 | 48.3 | 37.5 | 43.5 |

NOTE: Criminal data in this profile count defendants rather than cases and therefore will not match previously published numbers.

[1] See  "Explanation of Selected Terms."

**Comparison of Districts Within the Sixth Circuit — 12-Month Period Ending March 31, 2025**

| | | | KY,E | KY,W | MI,E | MI,W | OH,N | OH,S | TN,E | TN,M | TN,W |
|---|---|---|---|---|---|---|---|---|---|---|---|
| **Overall Caseload Statistics** | Filings | | 1,687 | 1,688 | 4,563 | 2,009 | 5,309 | 4,926 | 1,805 | 2,190 | 2,174 |
| | Terminations | | 1,620 | 1,821 | 4,444 | 2,164 | 4,059 | 3,242 | 1,779 | 2,010 | 1,918 |
| | Pending | | 1,788 | 1,754 | 5,015 | 1,374 | 7,525 | 27,886 | 1,920 | 2,361 | 2,868 |
| | Percent Change in Total Filings Current Year | Over Last Year | 2.6 | -2.1 | 5.3 | -2.1 | 34.9 | -23.5 | 3.2 | 4.8 | 22.9 |
| | | Over 2020 | -25.2 | -17.8 | -5.4 | 2.9 | -9.0 | -41.4 | -22.5 | 6.0 | -1.6 |
| | Number of Judgeships | | 5.5 | 4.5 | 15 | 4 | 11 | 8 | 5 | 4 | 5 |
| | Vacant Judgeship Months [1] | | 1.9 | 0.0 | 9.0 | 0.0 | 9.0 | 0.0 | 9.0 | 0.0 | 3.0 |
| **Actions per Judgeship** | Filings | Total | 307 | 375 | 304 | 502 | 483 | 616 | 361 | 548 | 435 |
| | | Civil | 194 | 266 | 238 | 418 | 350 | 526 | 224 | 436 | 299 |
| | | Criminal Felony | 83 | 85 | 45 | 54 | 56 | 63 | 115 | 52 | 72 |
| | | Supervised Release Hearings | 30 | 24 | 21 | 31 | 76 | 27 | 22 | 59 | 64 |
| | Pending Cases | | 325 | 390 | 334 | 344 | 684 | 3,486 | 384 | 590 | 574 |
| | Weighted Filings [1] | | 305 | 365 | 288 | 451 | 375 | 538 | 401 | 527 | 385 |
| | Terminations | | 295 | 405 | 296 | 541 | 369 | 405 | 356 | 503 | 384 |
| | Trials Completed | | 13 | 16 | 10 | 14 | 13 | 29 | 9 | 17 | 22 |
| **Median Time (Months)** | From Filing to Disposition | Criminal Felony | 10.0 | 14.1 | 15.4 | 9.1 | 13.3 | 14.7 | 15.0 | 27.3 | 13.6 |
| | | Civil [1] | 8.2 | 8.5 | 7.9 | 7.3 | 7.7 | 8.5 | 9.7 | 7.4 | 9.0 |
| | From Filing to Trial [1] (Civil Only) | | - | - | 35.6 | 36.5 | 35.8 | - | 32.4 | 31.7 | 23.9 |
| **Other** | Number (and %) of Civil Cases Over 3 Years Old [1] | | 125 | 116 | 408 | 33 | 3,225 | 16,928 | 64 | 60 | 171 |
| | | | 12.5 | 9.8 | 10.5 | 2.8 | 47.7 | 62.8 | 5.8 | 3.3 | 9.6 |
| | Average Number of Felony Defendants Filed per Case | | 1.3 | 1.5 | 1.2 | 1.1 | 1.4 | 1.4 | 1.5 | 1.2 | 1.3 |
| | Jurors | Avg. Present for Jury Selection | 48.0 | 62.3 | 73.7 | 46.8 | 49.9 | 75.6 | 42.1 | 43.2 | 83.5 |
| | | Percent Not Selected or Challenged | 28.3 | 36.7 | 57.0 | 50.5 | 42.3 | 62.9 | 30.1 | 18.9 | 59.6 |

NOTE: Criminal data in this profile count defendants rather than cases and therefore will not match previously published numbers.

[1] See "Explanation of Selected Terms."

**Page 6**

**Comparison of Districts Within the Seventh Circuit — 12-Month Period Ending March 31, 2025**

| | | | IL,N | IL,C | IL,S | IN,N | IN,S | WI,E | WI,W |
|---|---|---|---|---|---|---|---|---|---|
| **Overall Caseload Statistics** | Filings | | 15,483 | 1,907 | 2,634 | 2,511 | 3,915 | 2,227 | 1,195 |
| | Terminations | | 13,708 | 1,941 | 2,178 | 2,374 | 4,336 | 2,306 | 1,085 |
| | Pending | | 23,073 | 1,868 | 7,756 | 2,616 | 10,733 | 2,137 | 1,226 |
| | Percent Change in Total Filings Current Year | Over Last Year | -17.4 | 13.4 | -39.0 | -2.1 | 4.8 | 2.8 | 8.2 |
| | | Over 2020 | 52.3 | -0.2 | 37.4 | -13.5 | -41.8 | -15.4 | -15.3 |
| Number of Judgeships | | | 22 | 4 | 4 | 5 | 5 | 5 | 2 |
| Vacant Judgeship Months [1] | | | 14.4 | 0.0 | 0.0 | 0.0 | 9.0 | 3.0 | 0.0 |
| **Actions per Judgeship** | **Filings** | Total | 704 | 477 | 659 | 502 | 783 | 445 | 598 |
| | | Civil | 670 | 381 | 553 | 432 | 715 | 361 | 498 |
| | | Criminal Felony | 22 | 50 | 66 | 54 | 65 | 58 | 60 |
| | | Supervised Release Hearings | 11 | 46 | 40 | 16 | 3 | 26 | 40 |
| | Pending Cases | | 1,049 | 467 | 1,939 | 523 | 2,147 | 427 | 613 |
| | Weighted Filings [1] | | 714 | 403 | 503 | 454 | 645 | 403 | 520 |
| | Terminations | | 623 | 485 | 545 | 475 | 867 | 461 | 543 |
| | Trials Completed | | 9 | 22 | 15 | 16 | 11 | 6 | 27 |
| **Median Time (Months)** | From Filing to Disposition | Criminal Felony | 31.3 | 21.3 | 15.1 | 15.0 | 16.6 | 14.4 | 8.3 |
| | | Civil [1] | 7.6 | 7.7 | 13.4 | 8.5 | 12.3 | 6.5 | 7.3 |
| | From Filing to Trial [1] (Civil Only) | | 58.6 | 49.8 | - | 43.0 | 32.9 | 32.2 | - |
| **Other** | Number (and %) of Civil Cases Over 3 Years Old [1] | | 2,389 | 124 | 969 | 135 | 6,255 | 109 | 39 |
| | | | 11.2 | 8.2 | 13.1 | 6.3 | 60.9 | 6.8 | 4.0 |
| | Average Number of Felony Defendants Filed per Case | | 1.3 | 1.2 | 1.2 | 1.1 | 1.2 | 1.4 | 1.1 |
| | Jurors | Avg. Present for Jury Selection | 62.0 | 36.2 | 39.1 | 38.6 | 32.1 | 30.9 | 23.6 |
| | | Percent Not Selected or Challenged | 47.5 | 46.0 | 25.8 | 38.6 | 36.1 | 39.6 | 14.7 |

NOTE: Criminal data in this profile count defendants rather than cases and therefore will not match previously published numbers.

[1] See "Explanation of Selected Terms."

**Comparison of Districts Within the Eighth Circuit — 12-Month Period Ending March 31, 2025**

| | | | AR,E | AR,W | IA,N | IA,S | MN | MO,E | MO,W | NE | ND | SD |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Overall Caseload Statistics** | Filings | | 2,319 | 1,141 | 1,017 | 1,227 | 5,520 | 3,555 | 2,713 | 1,428 | 830 | 1,316 |
| | Terminations | | 2,362 | 1,122 | 985 | 1,287 | 3,633 | 3,685 | 2,802 | 1,316 | 772 | 1,296 |
| | Pending | | 2,635 | 1,132 | 702 | 756 | 11,207 | 2,874 | 2,483 | 1,507 | 960 | 1,071 |
| | Percent Change in Total Filings Current Year | Over Last Year | 1.2 | 6.9 | 3.6 | -2.2 | 11.1 | -1.6 | -4.7 | 0.3 | 8.1 | -2.0 |
| | | Over 2020 | -18.3 | -9.4 | -5.8 | -9.9 | 42.1 | -31.2 | -14.7 | -5.4 | 1.6 | -6.5 |
| Number of Judgeships | | | 5 | 3 | 2 | 3 | 7 | 8 | 6 | 3 | 2 | 3 |
| Vacant Judgeship Months [1] | | | 0.0 | 12.0 | 0.0 | 0.0 | 8.6 | 35.9 | 0.0 | 3.0 | 0.0 | 3.0 |
| **Actions per Judgeship** | **Filings** | Total | 464 | 380 | 509 | 409 | 789 | 444 | 452 | 476 | 415 | 439 |
| | | Civil | 331 | 289 | 201 | 193 | 674 | 246 | 283 | 295 | 141 | 122 |
| | | Criminal Felony | 95 | 67 | 189 | 115 | 63 | 125 | 114 | 121 | 196 | 187 |
| | | Supervised Release Hearings | 38 | 24 | 120 | 101 | 52 | 74 | 55 | 60 | 79 | 130 |
| | Pending Cases | | 527 | 377 | 351 | 252 | 1,601 | 359 | 414 | 502 | 480 | 357 |
| | Weighted Filings [1] | | 421 | 345 | 447 | 354 | 651 | 426 | 427 | 408 | 420 | 430 |
| | Terminations | | 472 | 374 | 493 | 429 | 519 | 461 | 467 | 439 | 386 | 432 |
| | Trials Completed | | 16 | 10 | 55 | 71 | 9 | 25 | 16 | 13 | 28 | 43 |
| **Median Time (Months)** | From Filing to Disposition | Criminal Felony | 22.7 | 12.6 | 9.7 | 10.6 | 14.0 | 14.3 | 19.9 | 13.2 | 15.5 | 10.5 |
| | | Civil [1] | 10.9 | 8.9 | 7.2 | 8.3 | 8.7 | 6.9 | 7.0 | 8.3 | 9.9 | 10.3 |
| | From Filing to Trial [1] (Civil Only) | | 32.3 | - | - | - | 42.6 | - | 35.8 | - | - | - |
| **Other** | Number (and %) of Civil Cases Over 3 Years Old [1] | | 66 | 30 | 12 | 13 | 4,976 | 86 | 135 | 57 | 38 | 62 |
| | | | 4.1 | 4.1 | 3.6 | 3.0 | 47.0 | 5.5 | 10.5 | 5.7 | 13.6 | 14.2 |
| | Average Number of Felony Defendants Filed per Case | | 1.6 | 1.2 | 1.2 | 1.3 | 1.3 | 1.2 | 1.3 | 1.3 | 1.7 | 1.2 |
| | Jurors | Avg. Present for Jury Selection | 49.7 | 49.2 | 53.2 | 39.1 | 55.7 | 48.4 | 56.9 | 33.8 | 34.8 | 41.8 |
| | | Percent Not Selected or Challenged | 45.1 | 44.7 | 48.6 | 26.4 | 52.0 | 29.5 | 38.1 | 9.6 | 16.6 | 21.1 |

NOTE: Criminal data in this profile count defendants rather than cases and therefore will not match previously published numbers.

[1] See  "Explanation of Selected Terms."

**Page 8**

**Comparison of Districts Within the Ninth Circuit — 12-Month Period Ending March 31, 2025**

| | | | AK | AZ | CA,N | CA,E | CA,C | CA,S | HI | ID | MT | NV | OR | WA,E | WA,W | GU | NMI |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Overall Caseload Statistics** | Filings | | 528 | 18,447 | 11,552 | 6,035 | 18,654 | 7,942 | 862 | 1,109 | 1,424 | 3,450 | 2,997 | 1,598 | 3,884 | 112 | 55 |
| | Terminations | | 469 | 9,097 | 12,532 | 6,070 | 18,009 | 7,018 | 944 | 1,019 | 1,268 | 3,548 | 3,077 | 1,487 | 3,677 | 121 | 59 |
| | Pending | | 773 | 8,217 | 13,820 | 7,697 | 13,927 | 4,912 | 765 | 1,279 | 1,275 | 4,266 | 3,023 | 1,192 | 3,213 | 355 | 102 |
| | Percent Change in Total Filings Current Year | Over Last Year | -9.6 | 43.9 | 44.4 | 7.0 | 3.9 | 8.7 | -2.3 | -5.9 | 17.2 | 0.5 | 2.7 | -1.4 | 8.7 | 21.7 | -23.6 |
| | | Over 2020 | -7.7 | 48.1 | 14.3 | 14.8 | -0.3 | -19.8 | -21.5 | -1.1 | 13.6 | -8.5 | -9.1 | -29.6 | -2.6 | -53.3 | 7.8 |
| | Number of Judgeships | | 3 | 13 | 14 | 6 | 28 | 13 | 4 | 2 | 3 | 7 | 6 | 4 | 7 | 1 | 1 |
| | Vacant Judgeship Months [1] | | 6.0 | 0.0 | 9.0 | 9.0 | 15.0 | 12.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 |
| **Actions per Judgeship** | Filings | Total | 176 | 1,419 | 825 | 1,006 | 666 | 611 | 216 | 555 | 475 | 493 | 500 | 400 | 555 | 112 | 55 |
| | | Civil | 116 | 388 | 731 | 875 | 594 | 213 | 159 | 332 | 262 | 420 | 358 | 208 | 474 | 38 | 13 |
| | | Criminal Felony | 60 | 925 | 29 | 62 | 40 | 279 | 23 | 148 | 145 | 29 | 89 | 90 | 44 | 35 | 22 |
| | | Supervised Release Hearings | 0 | 106 | 65 | 69 | 33 | 118 | 34 | 76 | 68 | 44 | 53 | 102 | 37 | 39 | 20 |
| | Pending Cases | | 258 | 632 | 987 | 1,283 | 497 | 378 | 191 | 640 | 425 | 609 | 504 | 298 | 459 | 355 | 102 |
| | Weighted Filings [1] | | 207 | 816 | 671 | 842 | 703 | 477 | 188 | 541 | 460 | 433 | 469 | 313 | 498 | - | - |
| | Terminations | | 156 | 700 | 895 | 1,012 | 643 | 540 | 236 | 510 | 423 | 507 | 513 | 372 | 525 | 121 | 59 |
| | Trials Completed | | 9 | 10 | 8 | 15 | 10 | 9 | 6 | 12 | 52 | 10 | 9 | 17 | 13 | 5 | 4 |
| **Median Time (Months)** | From Filing to Disposition | Criminal Felony | 14.7 | 4.9 | 16.3 | 30.0 | 19.3 | 6.0 | 22.6 | 11.6 | 9.5 | 16.1 | 17.5 | 16.8 | 14.5 | 11.4 | 4.6 |
| | | Civil [1] | 11.0 | 6.4 | 20.5 | 8.3 | 3.9 | 5.8 | 5.4 | 10.3 | 9.8 | 8.3 | 9.6 | 6.2 | 6.3 | 34.9 | 8.3 |
| | From Filing to Trial [1] (Civil Only) | | - | 38.3 | 40.2 | 66.8 | 27.8 | 37.3 | - | - | - | 63.8 | 31.7 | - | 25.0 | - | - |
| **Other** | Number (and %) of Civil Cases Over 3 Years Old [1] | | 73 | 165 | 2,291 | 1,103 | 873 | 212 | 41 | 101 | 84 | 555 | 235 | 52 | 140 | 240 | 17 |
| | | | 17.2 | 3.7 | 17.9 | 18.6 | 8.1 | 9.8 | 9.0 | 12.5 | 12.4 | 16.0 | 10.5 | 7.9 | 5.4 | 84.5 | 39.5 |
| | Average Number of Felony Defendants Filed per Case | | 1.2 | 1.0 | 1.3 | 1.4 | 1.5 | 1.2 | 1.2 | 1.2 | 1.2 | 1.3 | 1.3 | 1.4 | 1.5 | 1.2 | 1.8 |
| | Jurors | Avg. Present for Jury Selection | 70.6 | 45.1 | 55.2 | 42.4 | 63.7 | 55.3 | 54.2 | 41.3 | 43.6 | 39.6 | 38.6 | 49.5 | 38.5 | 217.3 | 116.0 |
| | | Percent Not Selected or Challenged | 44.1 | 30.3 | 37.4 | 47.6 | 70.1 | 40.5 | 38.8 | 53.2 | 32.3 | 26.0 | 24.2 | 26.8 | 26.3 | 74.1 | 52.6 |

NOTE: Criminal data in this profile count defendants rather than cases and therefore will not match previously published numbers.

[1] See "Explanation of Selected Terms."

**Page 9**

**Comparison of Districts Within the Tenth Circuit — 12-Month Period Ending March 31, 2025**

| | | | CO | KS | NM | OK,N | OK,E | OK,W | UT | WY |
|---|---|---|---|---|---|---|---|---|---|---|
| **Overall Caseload Statistics** | Filings | | 4,379 | 1,881 | 4,090 | 1,297 | 784 | 2,231 | 2,225 | 652 |
| | Terminations | | 4,074 | 1,799 | 3,863 | 1,399 | 769 | 2,185 | 2,243 | 597 |
| | Pending | | 4,008 | 1,638 | 2,954 | 1,092 | 780 | 1,745 | 2,469 | 1,154 |
| | Percent Change in Total Filings Current Year | Over Last Year | 6.9 | 3.4 | 9.4 | 4.6 | 5.2 | 10.0 | -2.5 | 11.3 |
| | | Over 2020 | -0.2 | -20.3 | -38.3 | 8.6 | 33.8 | 16.6 | -6.9 | 5.2 |
| Number of Judgeships | | | 7 | 6 | 7 | 3.5 | 1.5 | 6 | 5 | 3 |
| Vacant Judgeship Months [1] | | | 0.0 | 12.0 | 0.0 | 1.0 | 0.0 | 0.0 | 8.7 | 0.0 |
| **Actions per Judgeship** | **Filings** | Total | 626 | 314 | 584 | 371 | 523 | 372 | 445 | 217 |
| | | Civil | 542 | 217 | 187 | 185 | 326 | 242 | 251 | 99 |
| | | Criminal Felony | 61 | 66 | 288 | 138 | 161 | 94 | 129 | 72 |
| | | Supervised Release Hearings | 23 | 31 | 110 | 47 | 35 | 36 | 65 | 46 |
| | Pending Cases | | 573 | 273 | 422 | 312 | 520 | 291 | 494 | 385 |
| | Weighted Filings [1] | | 663 | 306 | 392 | 380 | 540 | 357 | 440 | 201 |
| | Terminations | | 582 | 300 | 552 | 400 | 513 | 364 | 449 | 199 |
| | Trials Completed | | 16 | 17 | 14 | 17 | 36 | 23 | 9 | 11 |
| **Median Time (Months)** | From Filing to Disposition | Criminal Felony | 14.9 | 15.5 | 3.2 | 12.3 | 12.4 | 9.4 | 12.8 | 5.5 |
| | | Civil [1] | 7.4 | 7.0 | 7.8 | 6.6 | 7.9 | 6.7 | 9.1 | 8.7 |
| | From Filing to Trial [1] (Civil Only) | | 40.0 | 19.6 | - | - | - | - | - | - |
| **Other** | Number (and %) of Civil Cases Over 3 Years Old [1] | | 199 | 48 | 129 | 90 | 36 | 73 | 187 | 216 |
| | | | 6.0 | 5.0 | 9.5 | 14.1 | 7.1 | 6.3 | 12.5 | 43.1 |
| | Average Number of Felony Defendants Filed per Case | | 1.5 | 1.2 | 1.0 | 1.2 | 1.1 | 1.3 | 1.2 | 1.1 |
| | Jurors | Avg. Present for Jury Selection | 38.9 | 39.8 | 62.3 | 48.2 | 49.9 | 47.4 | 54.1 | 44.9 |
| | | Percent Not Selected or Challenged | 29.2 | 36.8 | 25.1 | 32.7 | 32.8 | 31.2 | 28.8 | 31.1 |

NOTE: Criminal data in this profile count defendants rather than cases and therefore will not match previously published numbers.

[1] See "Explanation of Selected Terms."

**Page 10**

**Comparison of Districts Within the Eleventh Circuit — 12-Month Period Ending March 31, 2025**

| | | | AL,N | AL,M | AL,S | FL,N | FL,M | FL,S | GA,N | GA,M | GA,S |
|---|---|---|---|---|---|---|---|---|---|---|---|
| **Overall Caseload Statistics** | Filings | | 2,668 | 1,273 | 1,042 | 2,520 | 10,969 | 11,082 | 8,040 | 1,722 | 1,463 |
| | Terminations | | 2,486 | 1,111 | 957 | 249,186 | 10,927 | 10,768 | 7,752 | 1,597 | 1,301 |
| | Pending | | 2,922 | 1,446 | 970 | 1,984 | 8,347 | 5,744 | 5,843 | 1,642 | 1,310 |
| | Percent Change in Total Filings Current Year | Over Last Year | 1.7 | 16.3 | 6.2 | -95.8 | 0.9 | -4.8 | 4.3 | 12.9 | 4.4 |
| | | Over 2020 | -8.3 | -8.8 | -39.8 | -95.4 | 0.6 | -12.5 | 3.8 | -10.8 | -17.6 |
| Number of Judgeships | | | 8 | 3 | 3 | 4 | 15 | 18 | 11 | 4 | 3 |
| Vacant Judgeship Months [1] | | | 14.9 | 12.0 | 0.0 | 0.0 | 28.9 | 12.0 | 0.0 | 0.0 | 0.0 |
| **Actions per Judgeship** | **Filings** | Total | 334 | 424 | 347 | 630 | 731 | 616 | 731 | 431 | 488 |
| | | Civil | 241 | 308 | 172 | 528 | 595 | 502 | 668 | 326 | 356 |
| | | Criminal Felony | 59 | 106 | 109 | 75 | 108 | 86 | 43 | 85 | 80 |
| | | Supervised Release Hearings | 33 | 10 | 66 | 28 | 28 | 28 | 20 | 21 | 52 |
| | Pending Cases | | 365 | 482 | 323 | 496 | 556 | 319 | 531 | 411 | 437 |
| | Weighted Filings [1] | | 311 | 440 | 342 | 535 | 698 | 646 | 677 | 396 | 418 |
| | Terminations | | 311 | 370 | 319 | 62,297 | 728 | 598 | 705 | 399 | 434 |
| | Trials Completed | | 18 | 11 | 23 | 20 | 17 | 24 | 18 | 13 | 13 |
| **Median Time (Months)** | From Filing to Disposition | Criminal Felony | 10.3 | 9.9 | 9.7 | 8.5 | 9.8 | 7.1 | 12.9 | 14.3 | 12.0 |
| | | Civil [1] | 8.7 | 8.3 | 8.6 | 47.8 | 5.7 | 3.5 | 4.8 | 8.0 | 6.5 |
| | From Filing to Trial [1] (Civil Only) | | 35.4 | - | - | 17.5 | 25.5 | 21.8 | 34.9 | 33.4 | - |
| **Other** | Number (and %) of Civil Cases Over 3 Years Old [1] | | 357 | 155 | 32 | 125 | 439 | 113 | 143 | 87 | 82 |
| | | | 16.2 | 15.8 | 5.9 | 8.0 | 7.2 | 2.9 | 3.1 | 8.0 | 9.6 |
| | Average Number of Felony Defendants Filed per Case | | 1.1 | 1.5 | 1.5 | 1.2 | 1.3 | 1.4 | 1.2 | 1.8 | 1.6 |
| | Jurors | Avg. Present for Jury Selection | 32.8 | 50.1 | 38.8 | 44.4 | 46.9 | 45.2 | 44.6 | 50.4 | 43.2 |
| | | Percent Not Selected or Challenged | 35.3 | 35.0 | 35.0 | 27.7 | 33.5 | 10.6 | 43.5 | 48.1 | 37.3 |

NOTE: Criminal data in this profile count defendants rather than cases and therefore will not match previously published numbers.

[1] See "Explanation of Selected Terms."



# EXHIBIT 9

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

VIFOR (INTERNATIONAL) AG and
AMERICAN REGENT, INC.,

             Plaintiffs,

    v.

DR. REDDY'S LABORATORIES, LTD.,
and DR. REDDY'S LABORATORIES, INC.,

             Defendants.

Civil Action No. 24-6833

## STIPULATION AND ORDER OF DISMISSAL

Vifor (International) AG and American Regent, Inc. (collectively "**Plaintiffs**") and Dr. Reddy's Laboratories, Ltd. and Dr. Reddy's Laboratories, Inc. (collectively, "**Defendants**"), parties in the above-captioned action, hereby STIPULATE and AGREE as follows:

1.      All claims, counterclaims, and demands in this Action by or against Defendants are hereby dismissed without prejudice and without costs, disbursements, or attorneys' fees to any party.

2.      The parties each expressly waive any right to appeal or otherwise move for relief from this Stipulation and Order; and

3.      This Stipulation and Order shall finally resolve the action between the parties.

Dated: July 14, 2025

/s/ *Cynthia S. Betz*
Cynthia S. Betz
Mark M. Makhail
**McCARTER & ENGLISH, LLP**
Four Gateway Center
100 Mulberry Street
4 Gateway Center
Newark, NJ 07102
973-622-4444
cbetz@mccarter.com
mmakhail@mccarter.com

Of Counsel:

Jane M. Love, Ph.D. (pro hac vice)
Robert Trenchard (pro hac vice)
Allyson E. Parks (pro hac vice)
Emil Nachman (pro hac vice)
Spencer W. Vaughan (pro hac vice)
**GIBSON, DUNN & CRUTCHER LLP**
200 Park Avenue
New York, NY 10166-0193
212-351-4000
jlove@gibsondunn.com
rtrenchard@gibsondunn.com
aparks@gibsondunn.com
enachman@gibsondunn.com
svaughan@gibsondunn.com

*Attorneys for Plaintiffs*
*Vifor (International) AG*
*and American Regent, Inc.*

Dated: July 14, 2025

/s/ *Gregory D. Miller*

Gregory D. Miller
Timothy P. Gonzalez
**RIVKIN RADLER LLP**
25 Main Street
Court Plaza North, Suite 501
Hackensack, New Jersey 07601
Tel: (201) 287-2460
Facsimile: (201) 489-0495
Gregory.Miller@rivkin.com
Timothy.Gonzalez@rivkin.com

Of Counsel:

Shannon M. Bloodworth  (*pro hac vice*)
Brandon M. White (*pro hac vice*)
Maria A. Stubbings  (*pro hac vice*)
**PERKINS COIE LLP**
700 13th Street, NW, Suite 800
Washington, D.C. 20005-3960
Telephone: (202) 654-6200
SBloodworth@perkinscoie.com
MStubbings@perkinscoie.com
BMWhite@perkinscoie.com

Andrew Kalamarides (*pro hac vice*)
**PERKINS COIE LLP**
405 Colorado St. Suite 1700
Austin, TX 78701
Telephone: (737) 256-6100
AKalamarides@perkinscoie.com

Autumn N. Nero (*pro hac vice*)
**PERKINS COIE LLP**
33 East Main Street, Suite 201
Madison, WI 53703-3095
Telephone: (608) 663-7460
ANero@perkinscoie.com

Bryan D. Beel (*pro hac vice*)
**PERKINS COIE LP**
1120 NW Couch Street, Tenth Floor
Portland, Oregon 97209-4128

Telephone: (503) 727-2000
BBeel@perkinscoie.com

*Attorneys for Defendants Dr. Reddy's
Laboratories, Ltd. and Dr. Reddy's
Laboratories, Inc.*

The Clerk of the Court is directed to enter this Stipulation and Order forthwith.

**SO ORDERED:**

This __16th__ day of __July__, 2025.

_____

**Georgette Castner**
**United States District Judge**



# EXHIBIT 10

# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

VIFOR (INTERNATIONAL) AG and
AMERICAN REGENT, INC.,

               Plaintiffs,

    v.

MYLAN LABORATORIES LTD. and
SANDOZ INC.,

               Defendants.

Civil Action No. 19-13955 (FLW) (DEA)
(CONSOLIDATED)

## STIPULATION AND ORDER OF DISMISSAL
## AS TO MYLAN LABORATORIES LTD.

Vifor (International) AG and American Regent, Inc. (collectively "Plaintiffs") and Mylan Laboratories Ltd. ("Defendant"), parties in the above-captioned action, hereby STIPULATE and AGREE as follows:

      1.     All claims, counterclaims, and demands in this action related to Defendant are hereby dismissed without prejudice and without costs, disbursements, or attorneys' fees to any party.

      2.     The parties each expressly waive any right to appeal or otherwise move for relief from this Stipulation and Order; and

      3.     This Stipulation and Order shall finally resolve the action between the parties.

Dated: December 14, 2021

s/ William P. Deni, Jr.
William P. Deni, Jr.
J. Brugh Lower
**GIBBONS P.C.**
One Gateway Center
Newark, New Jersey 07102
Tel: (973) 596-4500
Fax: (973) 596-0545
wdeni@gibbonslaw.com
jlower@gibbonslaw.com

Of Counsel:

Barbara R. Rudolph
Robert F. Shaffer
**FINNEGAN, HENDERSON, FARABOW,
GARRETT & DUNNER, LLP**
901 New York Avenue, NW
Washington, DC 20001-4413
Tel: (202) 408-4000

M. David Weingarten
**FINNEGAN, HENDERSON, FARABOW,
GARRETT & DUNNER, LLP**
271 17th Street, NW
Suite 1400
Atlanta, GA 30363-6209
Tel: (404) 653-6400

*Attorneys for Plaintiffs
Vifor (International) AG
and American Regent, Inc.*

Dated: December 14, 2021

s/ Arnold B. Calmann
Arnold B. Calmann
Jeffrey Soos
Geri L. Albin
**SAIBER LLC**
One Gateway Center
9th Floor, Suite 950
Newark, New Jersey 07102-5311
T: (973) 622-3333
abc@saiber.com
jsoos@saiber.com
galbin@saiber.com

Of Counsel:

Tung-On Kong
Wendy L. Devine
**WILSON SONSINI GOODRICH
& ROSATI P.C.**
One Market Plaza
Spear Tower, Suite 3300
San Francisco, California 94105
T: (415) 947-2000

Nicole W. Stafford
Dennis D. Gregory
**WILSON SONSINI GOODRICH
& ROSATI P.C.**
900 South Capital of Texas Highway
Las Cimas IV
Austin, Texas 78746-5546
T: (512) 338-5426

*Attorneys for Defendant Mylan
Laboratories Ltd.*

The Clerk of the Court is directed to enter this Stipulation and Order forthwith.

**SO ORDERED:**

This  15th  day of  December, 2021.

           /s/ Freda L. Wolfson
          Honorable Freda L. Wolfson
          United States Chief District Judge



# EXHIBIT 11

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

VIFOR (INTERNATIONAL) AG and
AMERICAN REGENT, INC.,

              Plaintiffs,

    v.

MYLAN LABORATORIES LTD. and
SANDOZ INC.,

              Defendants.

Civil Action No. 19-13955 (FLW) (DEA)
(CONSOLIDATED)

## STIPULATION AND ORDER OF DISMISSAL AS TO SANDOZ INC.

Pursuant to Federal Rules of Civil Procedure 41(a)(1)(A)(ii) and 41(c), and by agreement

between Plaintiffs Vifor (International) AG and American Regent, Inc. (collectively,

"Plaintiffs") and Defendant Sandoz Inc. ("Sandoz" or "Defendant"), the Parties hereby stipulate

and agree that all claims, counterclaims, and affirmative defenses asserted by the Parties against

each other in the above-captioned action (the "Action") are hereby dismissed without prejudice

and, except as specifically provided by agreement, without costs, disbursements, or attorneys'

fees to any party. It is further stipulated that the U.S. District Court for the District of New

Jersey retains jurisdiction to enforce and resolve any disputes relating to the Parties' resolution of

the Action.

**SO STIPULATED:**

Dated: December 20, 2021

s/ William P. Deni, Jr.
William P. Deni, Jr.
J. Brugh Lower
**GIBBONS P.C.**
One Gateway Center
Newark, New Jersey 07102
Tel: (973) 596-4500
Fax: (973) 596-0545
wdeni@gibbonslaw.com
jlower@gibbonslaw.com

Of Counsel:

Barbara R. Rudolph
Robert F. Shaffer
**FINNEGAN, HENDERSON, FARABOW, GARRETT & DUNNER, LLP**
901 New York Avenue, NW
Washington, DC 20001-4413
Tel: (202) 408-4000

M. David Weingarten
**FINNEGAN, HENDERSON, FARABOW, GARRETT & DUNNER, LLP**
271 17th Street, NW
Suite 1400
Atlanta, GA 30363-6209
Tel: (404) 653-6400

*Attorneys for Plaintiffs*
*Vifor (International) AG*
*and American Regent, Inc.*

Dated: December 20, 2021

s/ Eric I. Abraham
Eric I. Abraham
(eabraham@hillwallack.com)
HILL WALLACK LLP
21 Roszel Road
Princeton, NJ 08540
Telephone: (609) 924-0808

Mark H. Remus
(mremus@crowell.com)
Laura A. Lydigsen
(llydigsen@crowell.com)
Jason W. Schigelone
(jschigelone@crowell.com)
Adam D. Sussman
(asussman@crowell.com)
Mary LaFleur
(mlafleur@crowell.com)
Kent Walker
(kentwalker@crowell.com)
CROWELL & MORING LLP
455 North Cityfront Plaza Drive, Suite 3600
Chicago, IL 60611-5599
Telephone: (312) 321-4200

Jieun Lee (jieunlee@crowell.com)
CROWELL & MORING LLP
1001 Pennsylvania Ave. NW
Washington, D.C. 20004-2595
Telephone: (202) 624-2500

*Attorneys for Defendant Sandoz Inc.*

**SO ORDERED:**

This  21st  day of  December , 2021

/s/ Freda L. Wolfson
Honorable Freda L. Wolfson
United States Chief District Judge

2